IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

ANDRE DOLBERRY,

                                                    Civil Action No.
                              Plaintiff,            9:11-CV-1018 (DNH/DEP)

              v.

CORRECTION OFFICER JAKOB, *et al.,*

                    Defendants.

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

ANDRE DOLBERRY, *Pro Se*
Albany County Correctional Facility
840 Albany Shaker Rd.
Albany, NY 12211

FOR DEFENDANTS:

HON. ERIC T. SCHNEIDERMAN            ADELE TAYLOR-SCOTT, ESQ.
New York State Attorney General      Assistant Attorney General
The Capitol
Albany, New York 12224


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

*Pro se* plaintiff Andre Dolberry, who is also sometimes known as Andre Duberry and has an extensive litigation history, has commenced this action pursuant to 42 U.S.C. § 1983, alleging that the defendants deprived him of his civil rights while he was incarcerated in a state prison facility.   In his complaint, plaintiff alleges that he was issued false misbehavior reports in retaliation for exercising his First Amendment rights, he was threatened and harassed by corrections officials, his rights to procedural due process and equal protection were violated, and the superintendent of the facility, though not directly involved, was complicit in all of those violations.

Currently pending before the court in connection with the action are cross-motions for summary judgment.   For the reasons set forth below, I recommend that plaintiff's motion for summary judgment be denied, and that plaintiff's complaint in this action be dismissed based upon his material misrepresentation to the court, under oath, that he has not brought any prior actions relating to his imprisonment.

I.    BACKGROUND[1]

Although plaintiff is currently confined elsewhere, his claims in this action arise from his previous incarceration in the Coxsackie Correctional Facility ("Coxsackie"), a prison operated by the New York State Department of Corrections and Community Supervision ("DOCCS").   *See generally* Dkt. No. 1.

Plaintiff's complaint asserts claims against defendant Glenn Saltsman, a corrections officer at Coxsackie, based upon two separate incidents.   The first involved a complaint by an unnamed inmate who reported to defendant Saltsman, on July 5, 2005, that he was being threatened by the plaintiff.   Dkt. No. 45-16 at 1; Dkt. No. 45-21.   Following an investigation by the area supervisor, Sargeant Melendez, who is not a named defendant in this action, defendant Saltsman issued a misbehavior report to plaintiff charging him with violating a prison rule prohibiting inmates from making threats.   Dkt. No. 45-16 at 2; Dkt. No. 45-17; Dkt. No. 45-21 at 22.   Defendant Christopher McDermott, a corrections lieutenant employed by the DOCCS, presided over a Tier II disciplinary hearing, held on July 14,

---

[1]    Ordinarily, when a motion for summary judgment is made, the record before the court is construed with all inferences drawn and ambiguities resolved in non-moving party's favor.   *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003).   In this case, in light of the parties' cross-motions for summary judgment, the court draws "all factual inferences . . . against the party whose motion is under consideration."   *Tindall v. Poultney High Sch. Dist.*, 414 F.3d 281, 284 (2d Cir. 2005) (quotation marks omitted).

2009, stemming from that misbehavior report.[2]  [Dkt. No. 45-19 at 4](#); [Dkt. No. 45-21 at 2](#).  Following the hearing, at which plaintiff was given the opportunity to call witnesses and testify on his behalf, plaintiff was found guilty of threatening another inmate. [3]  [Dkt. No. 45-19 at 4](#); [Dkt. No. 45-21 at 14](#), 19.  As a result of that finding, defendant McDermott sentenced plaintiff to serve thirty days of keeplock confinement, with a corresponding loss of certain privileges.[4]  [Dkt. No. 45-19 at 4](#); [Dkt. No. 45-21 at 14](#), 19.

The second incident involving defendant Saltsman occurred on August 20, 2009, while the corrections officer was making routine rounds at

---

[2]     The DOCCS conducts three types of inmate disciplinary hearings.  *See* 7 N.Y.C.R.R. § 270.3; *see also Hynes v. Squillace*, 143 F.3d 653, 655 n.1 (2d Cir. 1998).  Tier I hearings address the least serious infractions and can result in minor punishments such as the loss of recreation privileges.  *Hynes*, 143 F.3d 655 n.1.  Tier II hearings involve more serious infractions, and can result in penalties which include confinement for a period of time in the facility's special housing unit ("SHU").  *Id.*  Tier III hearings address the most serious violations and can result in unlimited SHU confinement and the loss of "good time" credits.  *Id.*

[3]     Plaintiff requested that several witnesses be called to testify on his behalf; all of them refused to testify.  [Dkt. No. 45-21 at 11-12](#).  Similarly, defendant McDermott offered plaintiff an opportunity to testify, but plaintiff refused.  *Id.* at 12.

[4]     "Keeplock" is a form of confinement through which an "inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates."  *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989); *accord*, *Warburton v. Goord*, 14 F. Supp. 2d 289, 293 (W.D.N.Y. 1998); *Tinsley v. Greene,* No. 95-CV-1765, 1997 WL 160124, at *2 n.2 (N.D.N.Y. Mar. 31, 1997) (Pooler, J., *adopting report and recommendation by* Homer, M.J.) (citing *Green v. Bauvi*, 46 F.3d 189, 192 (2d Cir. 1995)).  "The most significant difference between keeplock and general population inmates is that the former do not leave their cells for out-of-cell programs unless they are a part of mandatory educational programs and general population inmates spend more time out of their cells on weekends."  *Lee v. Coughlin*, 26 F. Supp. 2d 615, 628 (S.D.N.Y. 1998).

the facility. Dkt. No. 45-16 at 2. According to defendant Saltsman, after observing that plaintiff had placed a towel over his lamp, creating a potential fire hazard, he ordered Dolberry to remove the towel. *Id.* at 3. Plaintiff responded by stating, "'This is my cell, I'll keep it the way I want.'" *Id.* Defendants maintain plaintiff complied with defendant Saltsman's request only after he was given two additional direct orders. *Id.* Based upon that incident, defendant Saltsman issued plaintiff a misbehavior report accusing Dolberry of violating three prison rules, including creating a fire hazard, disobeying a direct order, and failing to maintain orderliness of his living quarters. *Id.*; Dkt. No. 45-18; Dkt. No. 1 at 14. There is no record regarding the results of any disciplinary hearing that may have occurred following the issuance of that misbehavior report.

According to defendant Saltsman, at the time both of those misbehavior reports were written, he was not aware of the fact that plaintiff had filed grievances or complaints against him. Dkt. No. 45-16 at 3.

Plaintiff's claims against defendant John Jakob, another corrections officer at Coxsackie, center around several misbehavior reports issued to Dolberry by that defendant between June and October of 2009. *See generally* Dkt. No. 1; Dkt. No. 45-11 at 2. The first of those was issued on July 3, 2009, charging plaintiff with violating several facility rules, by

disobeying a direct order, being out of place, making a false statement, making threats, and committing a movement violation. [Dkt. No. 45-11 at 3](); [Dkt. No. 45-20 at 2](), 3, 13. According to defendant Jakob, that misbehavior report was issued based upon Dolberry's refusal to line up properly following an evening meal on July 3, 2009, and lying about not being in the proper order. [Dkt. No. 45-11 at 3](); [Dkt. No. 45-20 at 13](). Plaintiff alleges that the misbehavior report was issued in retaliation for having filed "grievance complaints on staff on 6/3/09." [Dkt. No. 1 at 12](). Defendant Jakob maintains that, at the time he issued the misbehavior report dated July 3, 2009, he had no knowledge of plaintiff having submitted any written complaints against him. [Dkt. No. 45-11 at 3](). On July 10, 2009, defendant McDermott conducted a Tier II disciplinary hearing to address the charges contained in the July 3, 2009 misbehavior report. [Dkt. No. 45-19 at 2](); [Dkt. No. 45-20 at 2-7](). Defendant McDermott dismissed the charge of making threats immediately upon commencing the hearing. [Dkt. No. 45-20 at 3](). Plaintiff was permitted to, and did, testify on his behalf, and he was given an opportunity to call witnesses. *Id.* at 3-6. At the conclusion of the hearing, defendant McDermott found plaintiff not guilty of disobeying a direct order and providing a false statement. *Id.* at 6, 10. Plaintiff was found guilty, however, of being out of place and a movement violation. *Id.* Defendant

McDermott sentenced plaintiff to twenty days loss of privileges, although the sanction was suspended for sixty days. *Id.* at 6-7, 10.

A second misbehavior report was issued to plaintiff by defendant Jakob on August 23, 2009, accusing Dolberry of additional prison rule infractions, including disobeying a direct order, failing to maintain orderliness of his living quarters, and harassment. [Dkt. No. 45-11 at 3](); [Dkt. No. 46-2 at 18](). That misbehavior report was issued after defendant Jakob ordered plaintiff to remove his locker from the top of plaintiff's desk, and, in response, plaintiff said, "'I'll do what I want. I'm suing your white ass.'" [Dkt. No. 45-11 at 3](); [DKt. No. 46-2 at 18](); *see also* [Dkt. No. 1 at 17](). A Tier II disciplinary hearing was conducted regarding that misbehavior report on September 3, 2009, by Lieutenant Meigs, a DOCCS employee. [Dkt. No. 46-2 at 2-12](). At the hearing, plaintiff was permitted to testify in his defense, but refused an opportunity to call any witnesses on his behalf. *Id.* at 5-6. At the conclusion of the hearing, Lieutenant Meigs found plaintiff guilty of disobeying a direct order, but not guilty on the other charges. *Id.* at 6, 15. As a sanction, plaintiff was sentenced to fifteen days loss of privileges. *Id.*

A third misbehavior report was issued by defendant Jakob to the plaintiff, on September 1, 2009, charging him with being out of place and

failing to comply with the disciplinary sanction, in violation of prison rules.[5]
[Dkt. No. 45-11 at 4](); [Dkt. No. 45-15](); [Dkt. No. 45-22 at 11]().   That misbehavior
report, which plaintiff characterizes as "bogus," [Dkt. No. 1 at 17](), was issued
based upon defendant Jakob's belief that plaintiff had attended outside
recreation despite having been previously issued a disciplinary sanction
that included loss of recreation during that period.   [Dkt. No. 45-11 at 3-4]();
[Dkt. No. 45-15](); [Dkt. No. 45-22 at 11]().   On September 11, 2009, defendant
McDermott conducted a Tier II disciplinary hearing related to that
misbehavior report.   [Dkt. No. 45-19 at 4](); [Dkt. No. 45-22 at 2-5]().   Plaintiff
testified in his defense but declined an opportunity to call any witnesses.
[Dkt. No. 45-22 at 4]().   Defendant McDermott found plaintiff guilty on both
charges, and sentenced him to fourteen days keeplock confinement and a
loss of certain privileges.   *Id.* at 4, 8.

A fourth misbehavior report was authored by defendant Jakob on or
about October 9, 2009, accusing plaintiff of threatening Jakob and his

---

[5]     The copy of this misbehavior report attached as Exhibit D to defendant Jakob's
declaration does not include a charge for being out of place.   [Dkt. No. 45-15]().   Another
copy of that same misbehavior report attached as Exhibit C to defendant McDermott's
declaration, however, includes the out-of-place charge.   [Dkt. No. 45-22 at 11]().   A review
of the complete disciplinary packet arising from this misbehavior report reveals that
defendant Jakob did, in fact, charge plaintiff with being out of place, and defendant
McDermott found plaintiff guilty of the charge.   *See generally* [Dkt. No. 45-22]().   The
discrepancy between the two copies in the record has not been explained by
defendants.

family.  Dkt. No. 45-11 at 4; Dkt. No. 45-25 at 4.    Plaintiff alleges that this misbehavior report was fabricated and retaliatory.    Dkt. No. 1 at 18.    That misbehavior report resulted in a Tier III disciplinary hearing, conducted by defendant Eric Gutwein, a DOCCS hearing officer, on October 15, 2009. Dkt. No. 45-24 at 2; Dkt. No. 45-25 at 1-3.    Following the hearing, defendant Gutwein found the plaintiff guilty of making threats and engaging in violent conduct, and sentenced him to serve a period three months of disciplinary confinement in the facility's special housing unit ("SHU"), to commence on October 23, 2009.[6]    Dkt. No. 45-24 at 3; Dkt. No. 45-25 at 1. That determination was subsequently reversed, however, by the DOCCS central office based upon a procedural error, and plaintiff was released from SHU confinement on November 12, 2009, after serving only twenty-one days of disciplinary confinement.    Dkt. No. 45-24 at 3; Dkt. No. 45-26 at 2; Dkt. No. 45-27.

---

[6]    In New York, SHU cells are utilized for segregating prisoners from general population areas for various reasons including, predominantly, disciplinary purposes. *Lee v. Coughlin*, 26 F. Supp. 2d 615, 618 (S.D.N.Y. 1998) (citing 7 N.Y.C.R.R. §§ 253, 254 301).   The conditions typically experienced by inmates confined in an SHU include two showers per week; one hour of outdoor exercise per day; unlimited legal visits; one non-legal visit per week; access to counselors; access to sick call; cell study programs; and access to library books.   *Husbands v. McClellan*, 990 F. Supp. 214, 218 (W.D.N.Y. 1998) (citing 7 N.Y.C.R.R. § 304).

## II.    PROCEDURAL HISTORY

Plaintiff commenced this action on August 25, 2011, in the Western District of New York.   Dkt. No. 1.   The action was subsequently transferred to this district, and plaintiff was thereafter granted leave to proceed *in forma pauperis.*[7]   Dkt. Nos. 3, 4, and 5.   Plaintiff's complaint, as modified by the court's initial order, Dkt. No. 5, names, as defendants, Corrections Officers Jakob, Saltsman, and Silverman; Coxsackie Superintendent Martuscello; Acting Superintendent Gutwein; and Corrections Lieutenant McDermott. *See generally* Dkt. No. 1.   In it, plaintiff asserts causes of action for the deprivation of procedural due process and equal protection, in violation of the Fourteenth Amendment; unlawful retaliation, in violation of First Amendment; denial of court access, in violation of the First, Fifth, and Fourteenth Amendments; and cruel and unusual punishment, in violation of the Eighth Amendment.   *Id.*

On March 25, 2013, following the close of discovery, plaintiff moved for the entry of summary judgment in his favor.   Dkt. No. 37.   On May 20, 2013, defendants submitted their opposition to that motion, and simultaneously filed a cross-motion for summary judgment seeking

---

[7]    Fortuitously, plaintiff filed his complaint in this action between two periods of incarceration.   Had plaintiff been an inmate when the action was commenced, it appears likely, based upon his litigation history, that he would not have qualified for IFP status in light of the three strikes provision of 28 U.S.C. § 1915(g).   *See* Part III.A. of this report, *post.*

dismissal of plaintiff's complaint on a variety of grounds.   Dkt. Nos. 44-47.

Plaintiff has since responded in opposition to defendants' cross-motion.

Dkt. No. 49.   The parties' cross-motions for summary judgment are now

ripe for determination, and have been referred to me for the issuance of a

report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and

Northern District of New York Local Rule 72.3(c).   *See* Fed. R. Civ. P.

72(b).

III.   DISCUSSION

A.   Plaintiff's Material Misrepresentation to the Court

In his complaint, which was filed utilizing a pre-printed form from the

Western District of New York intended for use in civil rights actions brought

under 42 U.S.C. § 1983, plaintiff was asked the following question: "Have

you begun any other lawsuits in federal court which relate to your

imprisonment?"   Dkt. No. 1 at 3.   In response, defendant answered, "No."

*Id.*   That answer is demonstrably false.   By the time plaintiff had

commenced this action, he had already developed a robust inmate litigation

history, having filed at least seven cases in this circuit, six of which were

dismissed, upon initial review, as frivolous or for failure to state a cause of

action, pursuant to 28 U.S.C. § 1915(e)(2).[8]

---

[8]        According to the Federal Judiciary's Public Access to Court Electronic Records

In failing to disclose his prior litigation history, plaintiff provided misinformation to the court regarding a material issue. As one of my former colleagues has noted regarding the materiality of an inmate-plaintiff's prior litigation history,

> [g]enerally, information about a plaintiff's litigation history is material in prisoner civil rights actions since it enables the Court to determine one or more of the following issues: (1) whether any of the issues in the action have been previously litigated and decided (for purpose of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to being granted *in forma pauperis status* in this action, earned 'three strikes' for purposes of 28 U.S.C. § 1915(g); (3) whether the plaintiff had a record of frivolous litigation sufficient to warrant either (a) what is known as a 'bar order' (i.e., an order barring him from litigating further in that court without meeting certain preconditions) pursuant to 28 U.S.C. § 1651(a), or (b) an order declaring plaintiff to be a 'vexatious' litigator pursuant to 28 U.S.C. § 1927; and (4) whether the plaintiff's litigation experience was so extraordinary that it effectively dispenses with the

---

("PACER"), plaintiff has filed the following seven cases in district courts within this circuit prior to filing the case now before the court: (1) *Dolberry v. Levine*, No. 06-CV-6452, Dkt. No. 8 at 15 (W.D.N.Y. filed Sept. 7, 2006) (dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A); (2) *Dolberry v. Levine*, No. 02-CV-6418, Dkt. No. 368 (W.D.N.Y. filed Aug. 6, 2002) (settled for $3,300.00); (3) *Dolberry v. Dutchess Cnty. Jail*, No. 99-CV-5774, Dkt. No. 3 (S.D.N.Y. filed July 21, 1999) (dismissed pursuant to 28 U.S.C. § 1915(d), the predecessor to section 1915(e)(2)(B)); (4) *Dolberry v. Fernandez*, No. 99-CV-2235, Dkt. No. 3 (S.D.N.Y. filed Mar. 25, 1999) (dismissed because the complaint "lack[ed] an arguable basis either in law or in fact" pursuant to 28 U.S.C. § 1915(e)(2)); (5) *Dolberry v. Dutchess Cnty. Jail*, No. 99-CV-1088, Docket Entry Dated May 26, 1999 (S.D.N.Y. filed Feb. 16, 1999) (dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); (6) *Dolberry v. Dutchess Cnty. Jail*, No. 99-CV-1087, Dkt. No. 5 (S.D.N.Y. filed Feb. 16, 1999) (dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)); (7) *Dolberry v. Fernandez*, No. 98-CV-8572, Dkt. No. 3 (S.D.N.Y. filed Dec. 4, 1998) (dismissed pursuant to 28 U.S.C. § 1915(d), the predecessor to section 1915(e)(2)(B)).

need to afford him special solicitude.

*Chavis v. Curlee*, No. 06-CV-0049, 2008 WL 508694, at *10 (N.D.N.Y. Feb. 21, 2008) (Kahn, J., *adopting report and recommendation by* Lowe, M.J.).[9] While the second of those four articulated rationales does not apply in the case because plaintiff was not a prison inmate when this suit was commenced, the remaining three are valid considerations in this action given plaintiff's history.   Plaintiff's failure to truthfully answer the inquiry concerning his prior litigation history represents a fraud upon the court, and a violation of his obligations under Rule 11 of the Federal Rules of Civil Procedure.[10]

*Pro se* litigants, like any others, are subject to the strictures of Rule 11, and may properly be sanctioned for making material misrepresentations to

---

[9]   All unreported decisions cited to in this report have appended for the convenience of the *pro se* plaintiff.

[10]   That rule provides, in pertinent part, as follows:

> (b) **Representations to the Court**. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . .

> > (3) the factual contentions have evidentiary support or, if specifically so identified, would likely have evidentiary support after a reasonable opportunity and further investigation or discovery[.]

Fed. R. Civ. P. 11(b).

the court. *See, e.g., Manwani v. Brunelle*, No. 95-6080, 1995 WL 732686, at *2 (2d Cir. Dec. 8, 1995) (unpublished) (affirming district court's Rule 11 sanctions issued against a *pro se* litigant). In view of plaintiff's gross and cavalier misrepresentation concerning his litigation history in this and other actions he has filed in this circuit, the imposition of sanctions is clearly warranted.[11]

In their motion, defendants request that the court sanction plaintiff, due to his misrepresentations, by dismissing the complaint in this action. Dkt. No. 46-8 at 23-25. I note, however, that defendants have failed to provide plaintiff with the twenty-one day safe harbor period called for in Rule 11(c)(2), a failure that would, on its own, warrant denial of the motion. *See Fierro v. Gallucci*, 423 F. App'x 17, 18-19 (2d Cir. 2011) (finding that the district court "was required to deny plaintiff's motion for sanctions for failure

---

[11]    In this action, in addition to his initial disclaimer regarding his litigation history, plaintiff has persisted with the assertion that he has no litigation history, including through his denial of defendants' factual assertion, set forth in their local rule 7.1(a)(3) statement of undisputed material facts, that "Plaintiff has filed numerous actions in the United States District Courts, and is a practiced litigator." *Compare* Dkt. No. 45-2 at 1 *with* Dkt. No. 49 at 8.   Moreover, even after filing this action, which unequivocally complains of conditions of prison confinement, plaintiff has continued to falsely represent to district courts in this circuit that he has never filed any actions related to his imprisonment. *See, e.g., Dolberry v. Martin*, No. 13-CV-1539, Dkt. No. 1 at 2 (N.D.N.Y. filed Nov. 19, 2013) (maintaining, in his complaint, that he "has filed no other lawsuit dealing with the same facts involved in this action *or otherwise relating to his imprisonment*" (emphasis added)); *Dolberry v. Martin*, No. 13-CV-1529, Dkt. No. 2 at 5 (N.D.N.Y. filed Nov. 19, 2013) (answering "[n]o" to the question in the verified complaint asking, "Have you ever filed any other lawsuits in any state or federal court relating to your imprisonment?").

to comply with the 21-day 'safe harbor,' which requires Rule 11 motions be served on the opposing party 21 days prior to their filing, in order to afford that party an opportunity to withdraw their allegedly sanctionable claims"). The court, however, is permitted under Rule 11 to impose sanctions *sua sponte* "after notice and a reasonable opportunity to respond." Fed. R. Civ. P. 11(c)(1); *see also* Fed. R. Civ. P. 11(c)(3) ("On its own, the court may order a[] . . . party to show cause why conduct specifically described in the order has not violated Rule 11(b)."). The Second Circuit has held that, to impose sanctions *sua sponte*, courts must first find subjective bad-faith on the party to be sanctioned. *In re Pennie & Edmonds LLP*, 323 F.3d 86, 90 (2d Cir. 2003).[12]

In this case, in light of plaintiff's chronicled history of unabashed

---

[12] *Pennie & Edmonds LLP* specifically addressed "the applicable *mens rea* standard when a trial judge, *sua sponte*, initiates a post-trial Rule 11 sanction proceeding because a lawyer permitted a client to submit a false affidavit at an earlier stage of the litigation." *Pennie & Edmonds*, 323 F.3d at 87. District courts in this circuit have routinely held, post-*Pennie & Edmonds LLP*, however, that the holding of that case is broad enough to apply to sanction proceedings in pre-trial circumstances. *See, e.g., In re Hudson*, No. 10-CV-1352, 2011 WL 867989, at *5 n.5 (N.D.N.Y. 2011) (Scullin, J.) (citing *TVT Records v. Island Def Jam Music Group*, 447 F. Supp. 2d 311, 314-15 (S.D.N.Y. 2006)) (finding that the "holding in *Pennie & Edmonds* is sufficiently broad to govern the . . . instant case * * * where, as here, the attorney personally submitted a false or misleading filing and the court, *sua sponte*, initiated a pre-trial Rule 11 sanction proceeding"); *Castro v. Mitchell*, 727 F. Supp. 2d 302, (S.D.N.Y. 2010) (applying *Pennie & Edmonds LLP* when considering whether to issue *sua sponte* pre-trial sanctions); *see also Muhammad v. Walmart Stores East, L.P.*, 732 F.3d 104, 108-09 (2d Cir. 2013) (reviewing a district court's imposition of pre-trial Rule 11 sanctions under the bad-faith standard set forth in *Pennie & Edmonds LLP*).

misstatements to this and other courts, I find that those misstatements were made in bad faith, and that dismissal of his complaint is warranted.[13]  *See Elijah Bell v. Lasaceli*, No. 08-CV-0278, 2009 WL 1032857, at *4 (W.D.N.Y. Apr. 15, 2009) ("Because Plaintiff has repeatedly misrepresented his litigation history to the Court . . ., the Court finds that he has violated Fed. R. Civ. P. 11 and therefore, this action will dismissed, in the alternative, on that basis."); *Chavis*, 2008 WL 508694, at *11 (adopting recommendation to

---

[13]     The gamesmanship demonstrated by plaintiff's false representation to the court regarding his litigation history in his action does not appear to be isolated.   Three examples are illustrative.   First, plaintiff has identified himself at various times as Andre Dolberry and Andre Duberry.   In his most recent DOCCS incarceration at Coxsackie, plaintiff was listed as Andre Duberry, under department identification number ("DIN") 08-A-0273.   Publically available records, however, reflect that he was previously confined on three separate occasions with the DOCCS under the name Andre Dolberry in 2003 (DIN 03-A-3611), 1999 (DIN 99-A-4612) and 1992 (DIN 92-R-1828).   *See http://nysdoccslookup/doccs.ny.gov* (last visited on February 28, 2014).   A screenshot of that website is included in this report and recommendation as Attachment A.

     As a second example, the court notes that plaintiff's most recent actions filed in this district, Nos. 13-CV-1329, 13-CV-1359, assert identical causes of action (excessive force and failure to protect) against the same six defendants, one of whom is identified by name, the other five identified as "John Doe."   *See generally Martin*, No. 13-CV-1529, Dkt. No. 2; *Martin*, No. 13-CV-1539, Dkt. No. 1.

     By way of a third example, plaintiff's response, pursuant to local rule 7.1(a)(3), to defendants' statement of material facts in this action is haphazard, unsupported, and in violation of the requirements under the pertinent rule.   With few exceptions, plaintiff's denials fail to cite record evidence, as required by rule 7.1(a)(3).   Dkt. No. 49 at 8-10.   His responsive statement sets forth objections without explanations.   *Id.*   Most notably, however, he denies certain fundamental facts that are clearly undisputed.   *Id.*   For example, he denies defendants' factual assertion that "[a]ll of the events alleged in the complaint occurred while plaintiff was incarcerated with the [DOCCS]."   *Compare* Dkt. No. 45-2 at 1 *with* Dkt. No. 49 at 8.   Similarly, plaintiff denies such non-controversial assertions as "all of the events alleged in the complaint occurred at the Coxsackie Correctional Facility between June and November of 2009."   *Id.*   Plaintiff additionally denies that the complaint in this action was filed after his release from incarceration, another seemingly non-controversial fact.   *Compare* Dkt. No. 45-2 at 2 *with* Dkt. No. 49 at 8.

dismiss the case premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the court in his complaint); *see also Muniz v. Goord*, No. 04-CV-0479, 2007 WL 2027912, at *6 n.32 (N.D.N.Y. July 11, 2007) (McAvoy, J., *adopting report and recommendation by* Lowe, M.J.) (adopting recommendation to dismiss the case premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the court in his complaint (collecting cases)); *see also Hoskins v. Dart*, 633 F.3d 541, 543 (7th Cir. 2011) (affirming district court's dismissal of the appellant's case as a sanction for failing to accurately disclose his litigation history); *Greer v. Schriro,* No. 06-15537, 2007 WL 4163413 (9th Cir. 2007) ("The district court did not abuse its discretion in dismissing Greer's action, because she failed to adequately explain misrepresentations, made under penalty of perjury, about her previous litigation history."); *Mathis v. Smith*, 181 F. App'x 808, 810 (11th Cir. 2006) (finding no abuse of discretion by the district court where it dismissed the plaintiff's case in light of his dishonesty); *Joiner v. Delo*, 905 F.2d 206, 208 (8th Cir. 1990) (affirming district court's rule 11 dismissal of plaintiff's claims in light of the plaintiff's "blatant misrepresentation of the circumstances of his medical treatment").

B.   The Parties' Cross-Motions for Summary Judgment

Notwithstanding my recommendation that plaintiff's complaint be dismissed due to his repeated dishonesty with the court, I have analyzed the parties' cross-motions for summary judgment below in the event that recommendation is not adopted.

1.   Legal Standard Governing Motions for Summary Judgment

Summary judgment motions are governed by Rule 56 of the Federal Rules of Civil Procedure.   Under that provision, the entry of summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material facts and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).   A fact is "material" for purposes of this inquiry, if it "might affect the outcome of the suit under the governing law."   *Anderson*, 477 U.S. at 248; *see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing *Anderson*).   A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

A party moving for summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue, and the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4; *Sec. Ins. Co.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material dispute of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). The entry of summary judgment is justified only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *Bldg. Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002); *see also Anderson,* 477 U.S. at 250 (finding summary judgment appropriate only when "there can be but one reasonable conclusion as to the verdict").

2. Plaintiff's Motion for Summary Judgment

Plaintiff has moved for summary judgment in his favor. Dkt. No. 37.

Plaintiff's motion, however, reflects a fundamental misunderstanding of the

law of summary judgment. In his memorandum, Dolberry makes the

following statements:

> [T]here exists a genuine issue of material facts [sic]
> to whether C.O. Jakob's false disciplinary tickets for
> threats against Dolberry was in retaliation, C.O.
> Saltsman['s] tickets were in retaliation, and Supt.
> Martuscello ignored Dolberry's complaints for
> months . . . .
>
> It cannot be argued here the facts are well
> established and settled[.]

Dkt. No. 37-1 at 2. Because plaintiff does not argue, nor has he

established, that no genuine disputes of material fact exists for a factfinder

at trial, he has failed to sustain his burden under Rule 56. Accordingly, I

recommend that plaintiff's motion for summary judgment be denied.

3. Defendants' Motion for Summary Judgment

i. Plaintiff's Procedural Due Process Claim

Among the claims asserted by the plaintiff is a procedural due process

cause of action against defendants McDermott and Gutwein. Dkt. No. 1 at

21-24. That claim appears to stem from five Tier II or Tier III disciplinary

hearings conducted by those defendants, the details of which are listed

below.[14]

| Hearing Date | Type | Hearing Officer | Sanction |
|---|---|---|---|
| 7/10/09 | Tier II | Defendant McDermott | 20 days loss of packages, commissary, telephone, and recreation privileges, initially suspended but later reinstated based upon a subsequent adverse hearing determination within 60 days of that disposition |
| 7/14/09 | Tier II | Defendant McDermott | 30 day of keeplock confinement, with a corresponding loss of commissary, telephone, and package privileges |
| 9/11/09 | Tier II | Defendant McDermott | 14 days of keeplock confinement, with a corresponding loss of packages, commissary, telephone, and recreation privileges |
| 10/15/09 | Tier II | Defendant McDermott | 30 days of keeplock confinement, with a corresponding loss of package, commissary, and telephone privileges |
| 10/15/09-10/23/09 | Tier III | Defendant Gutwein | Three months of SHU confinement.[15] |

To establish a procedural due process claim under section 1983, a plaintiff must show that he (1) possessed an actual liberty interest, and (2)

---

[14] A sixth disciplinary hearing is in disclosed the record, which occurred in connection with a misbehavior report issued to plaintiff by defendant Jakob on August 23, 2009. *See generally* Dkt. No. 46-2. Plaintiff, however, does not assert any causes of action arising from that hearing or against the hearing officer, Lieutenant Meigs, who is not a named defendant in this action. *See generally* Dkt. No. 1.

[15] That determination was later reversed on appeal on procedural grounds. *See* Dkt. No. 45-24 at ¶¶ 14-15 and Exh. B. As a result of that reversal, plaintiff spent only twenty-one days in SHU confinement. *See id.* Exh. C.

was deprived of that interest without being afforded sufficient process. *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000); *Hynes v. Squillace*, 143 F.3d 653, 658 (2d Cir. 1998); *Bedoya v. Coughlin*, 91 F.3d 349, 351-52 (2d Cir. 1996).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court determined that, to establish a liberty interest in the context of a prison disciplinary proceeding resulting in removal of an inmate from the general prison population, a plaintiff must demonstrate that (1) the state actually created a protected liberty interest in being free from segregation, and (2) the segregation would impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."   *Sandin*, 515 U.S. at 483-84; *Tellier*, 280 F.3d at 79-80; *Hynes*, 143 F.3d at 658.   By its regulatory scheme, the State of New York has created a liberty interest in remaining free from disciplinary confinement, thus satisfying the first *Sandin* factor.   *Palmer v. Richards*, 364 F.3d 60, 64 n.2 (2d Cir. 2004) (citing *Welch v. Bartlett*, 196 F.3d 389, 394 n.4 (2d Cir. 1999)).   The issue, then, is whether the allegations related to the conditions of plaintiff's keeplock and SHU confinement rise to the level of an atypical and significant hardship.

Atypicality in a *Sandin* inquiry is normally a question of law.[16]   *Colon*

---

[16]      In cases where there is factual dispute concerning the conditions or duration of

*v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999). "[W]hether the conditions of a segregation amount to an 'atypical and significant hardship' turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation." *Arce v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998) (citing *Brooks v. DiFasi*, 112 F.3d 46, 48-49 (2d Cir. 1997)). In cases involving shorter periods of segregated confinement where the plaintiff has not alleged any unusual conditions, however, a court may not need to undergo a detailed analysis of these considerations. *Arce*, 139 F.3d at 336; *Hynes*, 143 F.3d at 658.

In this case, to the extent that plaintiff's due process claim centers around his confinement in keeplock or the SHU, the lengths of time he spent in either one as a result of a sanction imposed by defendants McDermott and Gutwein are insufficient to give rise to a liberty interest implicating a prisoner's due process rights.[17] The Second Circuit has made clear that

---

confinement, however, it may nonetheless be appropriate to submit those disputes to a jury for resolution. *Colon v. Howard,* 215 F.3d 227, 230-31 (2d Cir. 2000); *Sealey v. Giltner,* 197 F.3d 578, 585 (2d Cir. 1999).

[17] The court recognizes that the Second Circuit has made "clear that duration [of the confinement] is not the only relevant factor." *Ortiz v. McBride*, 323 F.3d 191, 195 (2d Cir. 2003). In this case, however, although plaintiff's allegations with respect to his due process claim against defendants McDermott and Gutwein are not entirely clear, I have not discerned any allegations in plaintiff's complaint suggesting that plaintiff's keeplock or SHU confinement involved constitutionally inadequate conditions of confinement. For that reason, I have analyzed only whether the duration of his confinement implicates

disciplinary confinements of fewer than 101 days and not involving extraordinary circumstances do not constitute atypical and significant hardships. *Palmer v. Richards*, 364 F.3d 60, 65 (2d Cir. 2004) (citing *Sealey*, 197 F.3d at 589). Here, plaintiff's disciplinary confinements, none of which involved anything but "normal" circumstances, endured for no more than thirty days in keeplock and twenty-one days in the SHU confinement beginning on October 23, 2009, and ending on November 12, 2009. Dkt. No. 45-24 at 3; Dkt. No. 45-27. Accordingly, I find that no genuine dispute of material fact exists regarding whether plaintiff's liberty interests were violated, thus implicating his procedural due process rights. *See Palmer*, 364 F.3d at 65-66 ("In the absence of a detailed factual record, we have affirmed dismissal of due process claims only in cases where the period of time spent in SHU was exceedingly short – less than the 30 days that the *Sandin* plaintiff spent in SHU – and there was no indication that the plaintiff endured unusual SHU conditions." (citing *Arce*, 139 F.3d at 335-36; *Hynes*, 143 F.3d at 658-59; *Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir. 1996)). Accordingly, I recommend that plaintiff's due process claim asserted against defendants McDermott and Gutwien be dismissed without examining the sufficiency of the procedural safeguards afforded to him.

---

a liberty interest.

ii.    Plaintiff's Cruel and Unusual Punishment Claims

Throughout plaintiff's complaint are allegations that defendants subjected him to cruel and unusual punishment in violation of the Eighth Amendment.   Although this is anything but clear, it appears that the claim is centered around (1) the actions of defendant Jakob, who allegedly subjected plaintiff to threats, abuse, and harassment; (2) the twenty-one day period of SHU confinement imposed by defendant Gutwein; and (3) the denial by defendant Silverman, another corrections officer stationed at Coxsackie, of a food tray on one occasion.

a.    Eighth Amendment Principles Generally

The Eighth Amendment prohibits punishment that is "incompatible with 'the evolving standards of decency that mark the progress of a maturing society[,]' or 'involve[s] the unnecessary and wanton infliction of pain[.]'"  *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 100-01 (1958) and *Gregg v. Georgia*, 428 U.S. 153, 169-73 (1976) (citations omitted)).   While the Eighth Amendment "'does not mandate comfortable prisons,' neither does it permit inhumane ones." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).

A claim alleging that prison conditions have violated the Eighth

Amendment must satisfy both objective and subjective requirements. *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996). As to the objective prong, "the plaintiff must demonstrate that the conditions of his confinement result in 'unquestioned and serious deprivations of basic human needs.'" *Jolly*, 76 F.3d at 480 (quoting *Anderson v. Coughlin*, 757 F.2d 33, 35 (2d Cir. 2985)); *see also Walker v. Schult*, 717 F.3d. 119, 125 (2d Cir. 2013) ("To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health."). To meet the subjective requirement, "the plaintiff must demonstrate that the defendants imposed those conditions with 'deliberate indifference.'" *Jolly*, 76 F.3d at 480 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *see also Waldo v. Goord,* No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y. Oct. 1, 1998) (Kahn, J., *adopting report and recommendation by* Homer, M.J.). Deliberate indifference exists if an official "knows of and disregards an excessive risk to inmate health or safety; [he] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Waldo*, 1998 WL 713809, at *2; *Davidson*, 920 F. Supp. at 308.

### b. Threats and Harassment

Central to the cruel and unusual claims asserted by the plaintiff in this action is his contention that he was subjected to threats and abuse by defendant Jakob. *See generally* Dkt. No. 1. Defendants seek dismissal of those claims. Dkt. No. 46-8 at 15. Because it is well settled in this circuit that mere verbal threats and harassment not resulting in physical injury do not give rise to an Eighth Amendment violation, I recommend that this claim be dismissed. *See Felder v. Fillion*, 368 F. App'x 253, 256 (2d Cir. 2010) ("The allegation that [the defendant] threatened [the plaintiff] verbally was not a sufficient basis for a claim of Eighth Amendment violation because [the plaintiff] did not present evidence of any injury resulting from those threats." (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986)).

### c. SHU Confinement

Plaintiff's Eighth Amendment claim asserted against defendant Gutwein stems from Gutwein's imposition of a thirty-day disciplinary SHU confinement. As was noted above in connection with plaintiff's due process claim, he has not alleged, nor has he presented evidence suggesting, that the conditions of confinement in the SHU were constitutionally inadequate. In other words, there is nothing in the record to give rise to a dispute of material fact regarding whether the disciplinary

confinement was, objectively, sufficiently serious, or that, subjectively, defendant Gutwein exhibited deliberate indifference to plaintiff's health or safety.   *Farmer*, 511 U.S. at 834.   Accordingly, I recommend that plaintiff's Eighth Amendment claim against defendant Gutwein be dismissed.

### d.   Denial of Food

Another component of plaintiff's Eighth Amendment claim is his contention that he was denied a meal on one isolated occasion by defendant Silverman.   Dkt. No. 1 at 27.   Courts in this circuit have routinely held, however, that the denial of a single meal is constitutionally *de mininis*, and insufficient to support an Eighth Amendment claim.   *Rush v. Fischer*, 923 F. Supp. 2d 545, 555-56 (S.D.N.Y. 2013) (citing *Hankerson v. Nassau Cnty. Corr. Facility*, No. 12-CV-5282, 2012 WL 6055019, at *3 (E.D.N.Y. Dec. 4, 2012); *Scarbrough v. Evans*, No. 11-CV-0131, 2012 WL 4364511, at *5 (N.D.N.Y. May 17, 2012) (Homer, M.J.), *report and recommendation adopted by* 2012 WL 4350792 (Mordue, J.)).   I therefore recommend dismissal of this claim against defendant Silverman.

### iii.   Plaintiff's Denial of Access to the Courts Claim

In his complaint, plaintiff alleges that defendant Jakob's issuance of misbehavior reports to him effectively denied him access to the courts. Dkt. No. 1 at 9, 11, 12, 13, 26.   Defendants seek dismissal of this claim

based on the fact that there is nothing in the record from which a reasonable factfinder could conclude that plaintiff suffered any prejudice in his lawsuits due to defendant Jakob's issuance of misbehavior reports. Dkt. No. 46-8 at 17-18.

Undoubtedly, prisoners have a constitutional right to meaningfully access the courts. *Bounds v. Smith*, 430 U.S. 817, 824 (1977); *accord*, *Lewis v. Casey*, 518 U.S. 343, 350 (1996) ("The right that *Bounds* acknowledged was the (already well-established) right of *access to the courts*." (emphasis in original)). This right is implicated when prison officials "actively interfer[e] with inmates' attempts to prepare legal documents, or file them[.]" *Lewis*, 518 U.S. at 350 (citations omitted). A plaintiff asserting a denial of access to the courts claim must allege that the defendant was "responsible for actions that hindered his efforts to pursue a legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (quotation marks omitted). To establish a denial of access to courts claim, a plaintiff must satisfy two prongs. First, a plaintiff must show that the defendant acted deliberately and maliciously. *Davis*, 320 F.3d at 351. Second, plaintiff must demonstrate that he suffered an actual injury. *Id.*

In this case, there is insufficient record evidence to give rise to a genuine dispute of fact regarding either element of a court-access claim.

One of the two lawsuits referenced in plaintiff's complaint is No. M-75662, which was pending in the New York State courts at the time defendant Jakob issued a misbehavior report to plaintiff on October 9, 2009. [Dkt. No. 1 at 13](#). Publically available records regarding that case reveal that the only defendant named in that case was the State of New York. *Dolberry v. State*, 71 A.D.3d 948 (2d Dep't 2010). Accordingly, without more, I conclude that there is nothing in the record to support the implicit suggestion by the plaintiff that, at the time defendant Jakob issued that misbehavior ticket to plaintiff, he knew plaintiff had a lawsuit pending. Similarly, plaintiff references a case "02CV6418," which corresponds to one of plaintiff's civil rights lawsuits filed in the United States District Court for the Western District of New York. *Dolberry v. Levine*, No. 02-CV-6418 (W.D.N.Y. filed Aug. 6, 2002). Plaintiff has not explained how he suffered any prejudice in connection with that lawsuit, and it is unclear to the court based on publically available records how he suffered prejudice. Indeed, plaintiff settled with the defendants in that case for $3,300.00. *Levine*, No. 02-CV-6418, Dkt. No. 368 (W.D.N.Y.). It is also worth noting that there is nothing in the record to suggest that defendant Jakob, who is not a named-defendant in that case, knew about the lawsuit at any time.

In summary, because no reasonable factfinder could conclude, based

on the record evidence, that defendant Jakob issued misbehavior reports to plaintiff deliberately and maliciously to interfere with his lawsuits or that plaintiff suffered prejudice as a result of the misbehavior reports, I recommend that his First Amendment court access claim be dismissed.

### iv.    Plaintiff's Equal Protection Claim

In his complaint plaintiff alleges, without elaboration, that the defendants deprived him of equal protection.    Dkt. No. 1 at 26, 27. Defendants now argue that plaintiff's equal protection claim is insufficiently stated and not supported by the record.    Dkt. No. 46-8 at 25-26.

The equal protection clause of the Fourteenth Amendment directs state actors to treat similarly situated people alike. *City of Cleburne, Texas v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).    To establish an equal protection cause of action, a plaintiff must prove that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination directed at an identifiable or suspect class. *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995).    The plaintiff must also show "that the disparity in treatment cannot survive the appropriate level of scrutiny which, in the prison setting, means that he must demonstrate that his treatment was not 'reasonably related to any legitimate penological interests.'"    *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005)

(alteration omitted) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

In this instance, plaintiff has not identified, nor does the record disclose, any basis to conclude that he was treated differently than similarly situated individuals. Rather, plaintiff's two allegations giving rise to his equal protection claim, and the only record evidence surrounding that claim, are as follows:

> On several other occasions C.O. Jakob . . . demonstrated racial, bias, prejudice, animosity while conspiring to deprive him of his Equal Protection of the laws under color of law.
>
> [Defendants Jakob and Silverman] acted with racial or other class-based animus in conspiring to deprive the plaintiff of his equal protection of the laws secured by the law.

Dkt. No. 1 at 26, 27. Even assuming, however, that the record gives rise to a dispute of fact regarding whether plaintiff was treated differently than other, similarly situated persons for purposes of an equal protection analysis, there is nothing in the record suggesting any disparity in the conditions experienced by the two (unidentified) groups as a result of purposeful discrimination directed at an identifiable suspect class. Accordingly, I recommend that plaintiff's equal protection claim be dismissed.

v.   Personal Involvement of Defendant Martuscello

Among the defendants named in plaintiff's complaint is Daniel Martuscello, the Superintendent at Coxsackie.   *See, e.g.,* Dkt. No. 1 at 8. Plaintiff does not allege that defendant Martuscello was personally involved in the events giving rise to his claims.   *Id.*   Instead, he contends that Martuscello knew or should have known of the constitutional deprivations alleged based upon complaints and grievances lodged by the plaintiff, but failed to act to remedy the violations.   *Id.*

It is well-established that, as a supervisor, defendant Martuscello cannot be liable for damages under section 1983 solely by virtue of being a supervisor, "and [liability] cannot rest on *respondeat superior*."   *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.   To establish responsibility on the part of a supervisory official for a civil rights violation, a plaintiff must demonstrate that the individual (1) directly participated in the challenged conduct; (2) after learning of the violation through a report or appeal, failed to remedy the wrong; (3) created or allowed to continue a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in managing the subordinates who caused the unlawful event; or (5) failed to act on information indicating that unconstitutional acts were occurring.   *Iqbal v. Hasty*, 490 F.3d 143,

152-53 (2d Cir. 2007), *rev'd on other grounds sub nom. Ashcroft v. Iqbal*, 556 U.S. 554 (2009); *see also Richardson*, 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995); *Wright*, 21 F.3d at 501.

In this case, plaintiff supports his claims against defendant Martuscello with mere allegations that he sent Martuscello letters and complaints regarding the other defendants' unlawful conduct.   Plaintiff has failed to provide any details with respect to those letters.   In contrast to plaintiff's threadbare allegations, defendant Martuscello has submitted an affidavit, in support of defendants' pending motion, averring that plaintiff's letters and complaints were investigated by him or his staff, and has included copies of the pertinent investigatory reports.   Dkt. No. 45-3 at 2; Dkt. Nos. 45-4 – 45-10.   Those reports reflect that defendant Martuscello responded to plaintiff's concerns, and, in certain instances, accepted plaintiff's grievances.   *Id.*   Moreover, it is clear from plaintiff's reply that he has included defendant Martuscello as a defendant in this case based solely upon the acts of Martuscello's subordinates.   Dkt. No. 49 at 6.   In that reply, plaintiff notes the following:

> [W]hatever staff was in charge of the investigation an [sic] withheld data of cons [sic], violations were being violated to Supt. Martuscello should be responsible for not doing his job properly putting Supt. Martuscello in the hot seat making it look like he wasn't doing his job when it was his subordinates,

34

> who I would make pay all lawyers fees and possible
> settlements or payments.

*Id.*

In light of the record now before the court, I conclude that there is an absence of a genuine dispute of fact regarding the personal involvement of defendant Martuscello in any of the allegations giving rise to the claims in this case. Accordingly, I recommend that all of plaintiff's claims against defendant Martuscello be dismissed.

### vi.    Plaintiff's Retaliation Claims

Plaintiff's complaint contains several allegations regarding retaliatory conduct by defendants Jakob, Saltsman, and Sliverman. *See generally* Dkt. No. 1. Many of the allegations are vague and conclusory, and others are more specific. *Id.* Defendants request that plaintiff's retaliation claims be dismissed due to the absence of any record evidence to support the allegations. Dkt. No. 46-8 at 20-23.

A cognizable section 1983 retaliation claim lies when prison officials take adverse action against an inmate that is motivated by the inmate's exercise of a constitutional right, including the free speech provisions of the First Amendment. *See Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir. 2000) ("In general, a section 1983 claim will lie where the government takes negative action against an individual because of his exercise of rights

guaranteed by the Constitution or federal laws.").  The Second Circuit has cautioned, however, that, because of "the ease with which claims of retaliation may be fabricated," courts should "examine prisoners' claims of retaliation with skepticism and particular care."  *Colon*, 58 F.3d at 872; *accord, Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

To establish a claim under section 1983 for unlawful retaliation, a plaintiff must prove that (1) the conduct prompting the retaliatory acts was protected, (2) the defendants took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison officials' decision to take action against the plaintiff.  *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 (1977); *Dillon v. Morano*, 497 F.3d 247, 251 (2d Cir. 2007); *Garrett v. Reynolds*, No. 99-CV-2065, 2003 WL 22299359, at *4 (N.D.N.Y. Oct. 3, 2003) (Sharpe, M.J.).  "[P]rison officials' conduct constitutes an 'adverse action' when it 'would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'"  *Alicea v. Howell*, 387 F. Supp. 2d 227, 237 (W.D.N.Y. 2005) (quoting *Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001)).

Liberally construed, plaintiff's retaliation claims are based on

allegations that, in retaliation for exercising his First Amendment rights by writing and filing grievances and civil lawsuits, defendants Jakob, Saltsman, and Silverman issued misbehavior reports to him. *See generally* Dkt. No. 1. According to plaintiff, some of the misbehavior reports issued were false, while others were simply intended to harass plaintiff. *Id.* at 12-18.

As an initial matter, I recommend that the retaliation claim asserted against defendant Silverman be dismissed because there is no record evidence to support that claim aside from the following allegation contained in plaintiff's complaint:

> Here Duberry asserts [First Amendment ] violations of retaliation claims advancing non conclusory allegations where he was protected by certain rights and C.O. Jakob, Saltsman, Silverman and some un[n]amed other C.O.s took adverse action against Duberry where a causal connection between the protected conduct and the adverse action.

Dkt. No. 1 at 16. Although there are other allegations giving rise to the retaliation claims against defendants Jakob and Saltsman, the foregoing is the only one involving defendant Silverman. Because that allegation does nothing more than advance conclusory and vague factual assertions, and there is no other evidence in the record supporting it, I recommend that the retaliation cause of action asserted against defendant Silverman be dismissed.

With respect to the record evidence that supports plaintiff's retaliation claim against defendants Jakob and Saltsman, defendants have produced evidence that Jakob issued four misbehavior reports against plaintiff during the times relevant to this action, and defendant Saltsman issued two.   Dkt. Nos. 45-12 – 45-13, 45-15, 45-17 – 45-18, 45-25 at 4.   Specifically, misbehavior reports were issued to Dolberry by defendant Jakob on July 3, August 23, September 1, and October 9, 2009, Dkt. Nos. 45-13, 45-15, 45-21 at 22, 45-25 at 4, and by Defendant Saltsman on July 5, and August 20, 2009.   Dkt. No. 45-17, 45-18.   There is conflicting evidence in the record, however, regarding the motivation behind the defendants' issuance of each of the tickets.   Plaintiff alleges that they were issued in retaliation for his filing of grievances or lawsuits against defendants Jakob and Saltsman.   Dkt. No. 1 at 12-18.   Indeed, the record reflects that plaintiff filed at least six grievances or letters with prison officials regarding harassment by defendants Jakob and Saltsman.   Dkt. Nos. 45-4 at 3, 45-5 at 5, 45-6 at 4-5, 45-7 at 8, 45-9 at 8, 45-10 at 6.   Those defendants, on the other hand, purport that they issued each of the misbehavior reports to plaintiff based on plaintiff's failure to obey prison facility rules and regulations.   *See generally* Dkt. Nos. 45-11, 45-16.

It is well settled that the filing of grievances and lawsuits constitutes

protected activity for purposes of a First Amendment retaliation analysis. *See Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001) ("It is undisputed that retaliation by prison officials against an inmate for the filing of a grievance can act as a deprivation of a constitutionally protected right."); *Colon,* 58 F.3d at 872 ("Prisoners, like non-prisoners, have a constitutional right of access to the courts and to petition the government for the redress of grievances."). Moreover, the Second Circuit has determined that a prison official's filing of a false misbehavior report against an inmate out of retaliatory animus constitutes adverse action. *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) ("[The plaintiff] has sufficiently alleged . . . adverse action on the part of the defendants – the filing of false misbehavior reports against [him] and his sentence of three weeks in keeplock – that would deter a prisoner of ordinary firmness from vindicating his . . . constitutional rights through the grievance process and the courts[.]").

The unanswered question in this case, then, is whether the grievances and lawsuits filed by plaintiff against defendants Jakob and Saltsman were the "motivating factor" behind their issuance of the misbehavior reports. In light of the conflicting evidence between the parties regarding the motivation behind the misbehavior reports, I cannot recommend dismissal of the retaliation claims against defendants Jakob

and Saltsman at this juncture.    To do otherwise would require the court to make credibility determinations between the conflicting evidence, which is the task of a factfinder at trial.    The temporal proximity between the grievances and letters authored by plaintiff, which are in the record before the court, and the misbehavior reports issued by defendants Jakob and Saltsman, raise an inference that the misbehavior reports were motivated by plaintiff's filing of grievances.    Plaintiff's letters and grievances are dated between June 27, 2009 and October 9, 2009.    Dkt. Nos. 45-4 at 3, 45-5 at 5, 45-6 at 4-5, 45-7 at 8, 45-8 at 3, 45-9 at 8, 45-10 at 6.    Defendants Jakob and Saltsman, on the other hand, issued misbehavior reports to plaintiff on July 3, 5, August 20, 23, September 1, and October 9, 2009.    Dkt. Nos. 45-17, 45-20, 45-18, 46-2 at 18, 45-15, 45-25 at 4.    Those circumstances, when considered in the light most favorable to the plaintiff, demonstrate triable issues of material fact that must be resolved before plaintiff's retaliation claims can be adjudicated.    Accordingly, I recommend that defendants' motion for summary judgment be denied with respect to the retaliation claims asserted against defendants Jakob and Saltsman.

### vii.    Plaintiff's Conspiracy Claims

Sprinkled throughout plaintiff's complaint are allegations that defendant Jakob and others, including defendant Saltsman, conspired to violate his constitutional rights.   *See, e.g.,* Dkt. No. 1 at 9, 10, 26, 27.   In their motion, defendants seek dismissal of this claim.   Dkt. No. 46-8 at 19-20.

"To prove a [section] 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).   Conclusory, vague or general allegations of a conspiracy to deprive a person of constitutional rights are not sufficient to support a cognizable claim under section 1983.   *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983).

Plaintiff's conspiracy claims are ripe for dismissal in light of the vague and conclusory allegations supporting them, and the fact that some of them relate to claims that are not cognizable under the United States Constitution.   Two examples are illustrative.   First, plaintiff alleges that, after plaintiff was released from one of his keeplock confinements, a fellow inmate, who had previously complained to defendant Jakob alleging that

plaintiff threatened him, "laughed and joked in Duberry's face . . .[,] which

exhibited conspiracy by C.O. Jakob to keeplock Duberry[.]"   Dkt. No. 1 at 9.

This conclusory allegation, which is not supported by any record evidence,

is insufficient to give rise to a genuine dispute of material fact regarding

whether defendant Jakob conspired with anyone to violate plaintiff's

constitutional rights.   *See*, *e.g.*, *Hilson v. Maltese*, No. 09-CV-1373, 2012

WL 6965105, at *6 n.10 (N.D.N.Y. Dec. 14, 2012) (Baxter, M.J.), *report and

recommendation adopted by* 2013 WL 375489 (N.D.N.Y. Jan. 30, 2013)

(Mordue, J.) ("Plaintiff's conclusory assertion . . . is not sufficient to establish

a material issue of fact[.]" (listing cases)).[18]   Second, plaintiff alleges that,

on or about July 5, 2009, defendants Jakob and Saltsman conspired "to

commence the on-going harassment."   Dkt. No. 1 at 13.   Because

prisoners do not have a constitutional right to be free from general

harassment, plaintiff's conspiracy claim in that regard must fail.   *See

O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 413, 426 (S.D.N.Y. 2004)

("In the absence of any claim establishing a violation of civil rights, the court

---

[18]     Plaintiff sets forth similarly vague allegations throughout his complaint.   *See,
e.g.,* Dkt. No. 1 at 10 ("Duberry engaged in protected conduct filing grievances and civil
actions which clearly involves C.O. Jakob causal connections of his conspiracy,
retaliation, threats, harassments, thus other const. violations."), 27 ("Inmate Duberry
was on A/3 B/3 long enough to write a ticket on Duberry, instead he waited for C.O.
Jakob to come in at 3:30PM then wrote a ticket, or conspired with C.O. Jakob on the
ticket by keeplocking Duberry which shows a meeting of the minds.").

must also dismiss claims of conspiracy[.]"); *Singer v. Fulton Cnty. Sheriff's Dep't*, No. 92-CV-1561, 1994 WL 549741, at *5 (N.D.N.Y. Oct. 4, 1994) (Hurd, M.J.), *aff'd* 63 F.3d 110 (2d Cir. 1995) ("Without a [constitutional] violation, there can be no actionable conspiracy.").[19]

Finally, because plaintiff's remaining conspiracy claims stem from constitutional claims that I recommended be dismissed earlier in this report, I recommend the accompanying conspiracy causes of action be dismissed, as well. *See, e.g.,* Dkt. No. 1 at 9, 26 (alleging conspiracy to deny plaintiff access to the courts and equal protection).

For all of these reasons, I recommend that all of plaintiff's conspiracy claims be dismissed.

### viii.   Qualified Immunity

In their motion, defendants claim entitlement to qualified immunity from suit even in the event that plaintiff's claims are not dismissed on their merits at this procedural juncture.   Dkt. No. 46-8 at 26-27.

"Qualified immunity shields government officials from civil damages

---

[19]       Another example of a conspiracy claim that is based on a non-constitutionally cognizable cause of action is plaintiff's allegation that defendants Jakob and Saltsman conspired to have him relocated within the prison facility.   Dkt. No. 1 at 26.   *See Sheehan v. Beyer*, 51 F.3d 1170, 1174 (3d Cir. 1995) ("An inmate does not have a right to be placed in the cell of his choice."); *see also Cagle v. Gravlin*, No. 09-CV-0648, 2010 WL 2088267, at *4 (N.D.N.Y. Apr. 29, 2010) (Lowe, M.J.), *report and recommendation adopted by* 2010 WL 2087437 (N.D.N.Y. May 25, 2010) (Scullin, J.) ("I can find no case holding that a prisoner has a constitutional right either to the cell of his choice or to disobey a direct order.").

liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Sudler v. City of New York*, 689 F.3d 159, 174 (2d Cir. 2012). The law of qualified immunity seeks to strike a balance between "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. Government officials are shielded from liability by qualified immunity when making "reasonable mistakes" concerning the lawfulness of their conduct. *Sudler*, 689 F.3d at 174 (citing *Saucier v. Katz*, 533 U.S. 194, 206 (2001), *abrogated on other grounds by Pearson*, 555 U.S. 223)).

Because qualified immunity is "an immunity from suit rather than a mere defense to liability," *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in the litigation," *Pearson*, 555 U.S. at 231 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

The determination of whether a government official is immune from suit is informed by two factors. *Doninger v. Niehoff*, 642 F.3d 334, 345 (2d

Cir. 2011).  Specifically, the inquiry turns on whether the facts alleged, taken in a light most favorable to the plaintiff, show that the conduct at issue violated a constitutional right, and if so, "whether that right was 'clearly established' at the time of the events at issue." *Nagle v. Marron*, 663 F.3d 100, 114 (2d Cir. 2011) (citing *Saucier*, 533 U.S. at 194, 201, 202); *accord*, *Sira v. Morton*, 380 F.3d 57, 68-69 (2d Cir. 2004).  The Supreme Court has said that an officer's "conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011) (quotation marks and alterations omitted).  However, '[e]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy v. Templeton*, 505 F.3d 161, 169-70 (2d Cir. 2007) (citations omitted).  This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of the defendant's actions]." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The legal principles applicable to First Amendment retaliation claims

were well-developed at the relevant times, including when defendants Jakob and Saltsman issued the misbehavior reports that form the basis for plaintiff's retaliation claims.   I am unable to conclude that reasonable persons in their positions would not have understood that the issuance of misbehavior reports, prompted by the filing of complaints and grievances against them, would not violate plaintiff's clearly established, First Amendment rights.   Accordingly, I recommend that defendants Jakob and Saltsman not be granted qualified immunity from suit at this juncture with regard to plaintiff's retaliation claims.[20]

## IV.   SUMMARY AND RECOMMENDATION

Now that discovery in this case is complete, both the plaintiff and defendants have moved for summary judgment in their favor.   Plaintiff's motion is clearly deficient in that, by his own account, there are genuine issues of material fact that must be determined at trial before a finding in his favor can be made on any of his claims.   Turning to defendants' motion, I first note that, based upon plaintiff's misuse of the litigation process, including his material misrepresentations in a sworn document filed with the court and his submission of an improper response to defendants' statement

---

[20]      Because I have recommended dismissal of plaintiff's other causes of action elsewhere in this report, I have opted not to analyze defendants' qualified immunity argument as it relates to them.

of undisputed material facts, pursuant to local rule 7.1(a)(3), dismissal of his complaint is warranted on that basis.   Turning to the merits, I conclude that, with the exception of his retaliation claim against defendants Jakob and Saltsman, no reasonable factfinder could find in plaintiff's favor on his various causes of action.   Accordingly, it is hereby respectfully

RECOMMENDED that the plaintiff's motion for summary judgment (Dkt. No. 37) be DENIED; and it is further

RECOMMENDED that plaintiff's complaint be DISMISSED in its entirety based upon his material misrepresentations to the court and abuse of the litigation process; and it is further hereby respectfully

RECOMMENDED that, if the portion of the court's report recommending dismissal based on plaintiff's misrepresentation to the court is not adopted, then defendants' motion for summary judgment (Dkt. No. 45) be GRANTED in part and DENIED in part, and that all of plaintiff's claims, with the exception of his cause of action for retaliation against defendants Jakob and Saltsman, be DISMISSED on the merits.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.   Such objections must be filed with the clerk of the court within FOURTEEN days of service of this report. FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE

APPELLATE REVIEW.   28 U.S.C. § 636(b)(1); Fed. R. Civ. P.   6(a), 6(d), 72; *Roldan v. Racette,* 984 F.2d 85 (2d Cir. 1993).

It is hereby ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

_____

David E. Peebles
U.S. Magistrate Judge

Dated:      February 28, 2014
            Syracuse, New York

New York State ≣ State Agencies                    ⊞ Search all of NY.gov

# Department of Corrections and Community Supervision

SKIP TO CONTENT

Google™ Custom Search

**About DOCCS**
DOCCS Home Page
Community Supervision
Find a Facility
Language Access
Contact DOCCS
**Inmate Info**
Inmate Lookup
Inmate Info
Family Guide
Guía para la Familia
Program Services
PREA
**Victim Services**
Victim Services
Servicios Victima
**News**
News Room
Reports/Publications
Jobs Available
Directives
Rules & Regulations
Contracts
**Related Info**
Related Links
Corcraft
Criminal Justice



## Commitment History for DUBERRY, ANDRE
## 08A0273 - MALE - Born 02/02/1967

### As of 02/28/14

The inmate you have chosen has multiple commitments to NYS DOCCS. The commitments are listed below, most recent first. Inmate names are taken from court documents and so may vary.

### Click on a DIN to view Inmate Information.

| DIN | Inmate name | Status | Facility |
|---|---|---|---|
| | DUBERRY, ANDRE | CR TO PAROLE | AUBURN |
| | DOLBERRY, ANDRE | PAR PAROLE | CLINTON |
| | DOLBERRY, ANDRE | DISCH M E | ELMIRA |
| | DOLBERRY, ANDRE | CR TO PAROLE | RIVERVIEW |

Home      Privacy Policy      Accessibility Information      Contact DOCCS      Disclaimer



Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. New York.
George M. CHAVIS, Plaintiff,
v.
K. CURLEE, Prison Counselor, Great Meadow C.F.,
e.g., Defendants.

No. 9:06-CV-0049 (LEK/GHL).
Feb. 21, 2008.

George M. Chavis, Dannemora, NY, pro se.

Hon. Andrew M. Cuomo, Attorney General for the State of New York, Adele M. Taylor-Scott, Esq., Assistant Attorney General, of Counsel, Albany, NY.

### DECISION AND ORDER
LAWRENCE E. KAHN, District Judge.

**\*1** This matter comes before the Court following a Report-Recommendation filed on January 28, 2008 by the Honorable George H. Lowe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b) and L.R. 72.3 of the Northern District of New York. Report-Rec. (Dkt. No. 36). After ten days from the service thereof, the Clerk has sent the entire file to the undersigned, including the objections by Plaintiff George M. Chavis, which were filed on February 13, 2008. Objections (Dkt. No. 37).

It is the duty of this Court to "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b). "A [district] judge ... may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* This Court has considered the objections and has undertaken a de novo review of the record and has determined that the Report-Recommendation should be approved for the reasons stated therein.

Accordingly, it is hereby

**ORDERED,** that the Report-Recommendation (Dkt. No. 36) is **APPROVED** and **ADOPTED** in its **ENTIRETY;** and it is further

**ORDERED,** that Plaintiff's *in forma pauperis* status is **revoked as having been improvidently granted** and that Plaintiff is given **TEN (10) DAYS** from the date of this Order to pay the Court's filing fee of $250. Should Plaintiff fail to make that payment, his Complaint will be dismissed without further order of this Court; and it is further

**ORDERED,** that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED.**

### REPORT-RECOMMENDATION
GEORGE H. LOWE, United States Magistrate Judge.

This prisoner civil rights action, commenced *pro se* pursuant to 42 U.S.C. § 1983, has been referred to me for Report and Recommendation by the Honorable Lawrence E. Kahn, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Generally, Plaintiff's Amended Complaint alleges that, between July of 2005, and July of 2006, at Auburn C.F., and Great Meadow C.F., fourteen employees of the New York State Department of Correctional Services ("Defendants") violated his constitutional rights by retaliating against him or subjecting him to cruel and unusual prison conditions. (*See generally* Dkt. No. 6 [Plf.'s Am. Compl.].) Currently pending before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint on the ground that the action is barred by the "three strikes" rule established by 28 U.S.C. § 1915(g). (Dkt. No. 31.) For the reasons that follow, I recommend that Defendants' motion be granted or, in the alternative, that Plaintiff's Amended Complaint be *sua sponte* dismissed as a sanction pursuant to Fed.R.Civ.P. 11 for making a material misrepresentation to the Court in his sworn pleadings about his prior litigation history.

# I. ANALYSIS OF DEFENDANTS' MOTION

## A. Acquisition of "Three Strikes" Warranting Dismissal

**\*2** Under the so-called "Three Strikes Rule" set forth in the federal statute governing *in forma pauperis* proceedings,

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is *frivolous, malicious, or fails to state a claim upon which relief may be granted,* unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g) [emphasis added]. Defendants are correct when they argue that the power of a federal district court to invoke this rule is not limited to the outset of a litigation but extends all throughout the pendency of the proceeding. (Dkt. No. 31, Part 13, at 2-3.) In other words, a federal district court has the authority to rescind or revoke the *in forma pauperis* status that it has previously bestowed upon a plaintiff, if the court discovers that the status had been improvidently granted.FN1

> FN1. *See, e.g., Eady v. Lappin,* 05-CV-0824, 2007 WL 1531879, at \*1 & n. 1 (N.D.N.Y. May 22, 2007) (Mordue, C.J., adopting Report-Recommendation by Lowe, M.J.); *Gill v. Pidlypchak,* 02-CV-1460, 2006 WL 3751340, at \*5 (N.D.N.Y. Dec.19, 2006) (Scullin, J.); *Polanco v. Burge,* 05-CV-0651, 2006 WL 2806574, at \*2 (N.D.N.Y. Sept.28, 2006) (Kahn, J., adopting Report-Recommendation by Homer, M.J.); *Demos v. John Doe,* 118 F.Supp.2d 172, 174 (D.Conn.2000); *McFadden v. Parpan,* 16 F. Supp.2d 246, 247 (E.D.N.Y.1998); *see also Rolle v. Garcia,* 04-CV-0312, Report-Recommendation (N.D.N.Y. Jan. 29, 2007) (Lowe, M.J.), *adopted on other grounds,* 04-CV-0312, 2007

WL 672679 (N.D.N.Y. Feb.28, 2007) (Kahn, J.).

The first thing we must do is determine the date when Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g). The Complaint in this action was signed by Plaintiff on September 12, 2005, postmarked on January 12, 2006, and received (and docketed) by the Clerk's Office on January 13, 2006. (Dkt. No. 1.) Ordinarily, under the "prison mailbox rule," the date of *filing* is deemed to be the date that the prisoner-plaintiff is presumed to have handed his complaint to a prison guard for *mailing,* which is the date that the complaint was *signed.*FN2 The problem here is that there appears to have been a four-month delay between the date of signing of the Complaint and the date of mailing (or post-marking) of the Complaint. As a result, the question arises: was Plaintiffs Complaint "filed" on the date of signing (i.e., September 12, 2005) or on the date of mailing (i.e., January 12, 2006)? Fortunately, the Court need not decide whether Plaintiff's action was "brought," for purposes of 28 U.S.C. § 1915(g)-on September 12, 2005, or on January 12, 2006-because an analysis under either finding would yield the same conclusion.

> FN2. *See Shaw v. Superint., Attica Corr. Facility,* 03-CV-0610, 2007 WL 951459, at \*3 n. 3 (N.D.N.Y. March 28, 2007) (McCurn, J.) (habeas corpus proceeding) [citations omitted]; *Garraway v. Broome County, N.Y.,* 03-CV-0681, 2006 WL 931729, at \*3-4 (N.D.N.Y. Apr.7, 2006) (McAvoy, J.) (prisoner civil rights action) [citation omitted].

After carefully reviewing Plaintiff's litigation history on the Federal Judiciary's Public Access to Court Electronic Records ("PACER") Service, I have determined that, as of September 12, 2005 (the earlier of the two aforementioned dates), he had acquired at least three "strikes" for purposes of 28 U.S.C. § 1915(g).

Plaintiffs "first strike" came in the case of *Chavis v. Charnes,* 99-CV-5072 (S.D.N.Y.). In *Charnes,* Plaintiff's *pro se* prisoner rights complaint was

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

dismissed by the Southern District of New York *sua sponte,* on July 14, 1999. *See Chavis v. Charnes,* 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation). The Docket Sheet does not expressly state whether the dismissal was for frivolousness, maliciousness or merely failure to state a claim. *Id.* However, clearly the dismissal was for one of those three reasons since the Order of Dismissal expressly cited 28 U.S.C. § 1915 and was issued *sua sponte* immediately after filing. *Id.* The only authority under 28 U.S.C. § 1915 to issue such an order *sua sponte* immediately after filing is if the dismissal is frivolousness, maliciousness or failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(a), (b). Furthermore, the Chief District Judge issuing the Order (Thomas P. Griesa) certified that any appeal from his Order of Dismissal would not be taken in good faith for purposes of 28 U.S.C. § 1915(a)(3). *See Chavis v. Charnes,* 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation). Such a certification, which occurs when a district judge finds the lack of an arguable basis in law or fact in the losing party's claims or arguments, indicates a finding of frivolousness with regard to Plaintiff's claims.[FN3] Thus, there was clearly at least one "strike" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005.

> FN3. *See Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962) ("We consider a [losing party's] good faith ... demonstrated when he seeks appellate review of any issue not frivolous. In so doing, we note that if in forma pauperis litigation is attempted for reasons that may genuinely be characterized as the litigant's 'bad faith,' express authority exists in 28 U.S.C.1915(d) for dismissal of the cause as frivolous."); *accord, Pytel v. U.S.,* 378 F.Supp. 294, 296-97 (N.D.N.Y.1974) (MacMahon, J.) ("This Court will not authorize an appeal *in forma pauperis* under 28 U.S.C. § 1915(a) and hereby certifies that any appeal is not taken in good faith. In this context, good faith is judged by an objective standard, and where, as here, an appeal would be frivolous, it

is not taken in good faith.") [citations omitted]; *S.E.C v. Broadwell Securities, Inc.,* 64-CV-3995, 1981 WL 1655, at *1 (S.D.N.Y. July 8, 1981)* ("An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith. 28 U.S.C. § 1915. Good faith, in this context, is an objective standard that measures whether the issues on appeal are frivolous.") [internal quotation marks and citations omitted].

**\*3** Plaintiff's "second strike" came during his appeal from the aforementioned order of dismissal. Despite Chief Judge Griesa's certification that any appeal from his Order of Dismissal would not be taken in good faith for purposes of 28 U.S.C. § 1915(a)(3), Plaintiff took an appeal anyway, on August 12, 1999. *See Chavis v. Charnes,* 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation). The appeal, which was to the Second Circuit, was assigned docket number 99-265. *Id; see also Chavis v. Charnes,* No. 99-265, Docket Sheet (2d Cir.) (attached as Exhibit 2 to this Report-Recommendation). On February 25, 2000, the Second Circuit issued an Order denying Plaintiff's request to proceed *in forma pauperis* during the appeal, and dismissed Plaintiff's appeal. (*Id.*) Although the copy of the Order of Dismissal is not available on-line, the Second Circuit Docket Sheet expressly quotes the Order. *See Chavis v. Charnes,* No. 99-265, Docket Sheet (2d Cir.) (attached as Exhibit 2 to this Report-Recommendation). According to the Docket Sheet, the Order stated:

> Motions having been made by appellant pro se for in forma pauperis status and for damages, upon due consideration it is ordered that said motions be and hereby are denied, and the appeal is dismissed as frivolous. See 28 U.S.C.1915(e); *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

(*Id.*) [FN4] I can find no record of any appeal pending (or having been actually filed) with the Supreme Court. Thus, there was clearly a "second strike" for purposes of 28 U.S.C. § 1915(g) before

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Plaintiff "brought" this action on September 12, 2005. I note that a second strike may result from the dismissal of a federal appeal, even though the appellant had already incurred a strike during the dismissal of the federal district court action underlying the appeal.FN5

> FN4. I note that this express finding of "frivolousness" is also reflected in the district court docket sheet's identification of the Second Circuit's Order of Dismissal. *See Chavis v. Chames,* 99-CV-5072, Docket Sheet (S.D.N.Y.) (attached as Exhibit 1 to this Report-Recommendation).

> FN5. *See Cait v. Beto I Unit,* 04-CV-40848, 126 Fed. App'x 645, 646 (5th Cir. Feb.23, 2005) ("The magistrate judge's dismissal of Cain's complaint as frivolous and for failure to state a claim and our dismissal of Cain's appeal both count as strikes for purposes of 28 U.S.C. § 1915(g)."); *Smith v. Bruce,* No. 04-3043, 103 Fed. App'x 324, 344 (10th Cir. June 29, 2004) ("Dismissal of Smith's appeal as frivolous counts as a strike against him, as does the district court's dismissal of his complaint.") [citations omitted]; *Mains v. Washington,* 131 F.3d 1248, 1250 (7th Cir.1997) ("A frivolous complaint (or as in this case a complaint that is dismissed under § 1915 A for failure to state a claim) followed by a frivolous appeal leads to two 'strikes' under 28 U.S.C. § 1915(g)."); *cf. Bea v. Doe,* 401 F.Supp.2d 538, 540 & n. 5 (E.D.Va.2005) (because district court proceeding and appellate proceeding arising out of district court proceedings were "distinct" for purposes of PLRA's "three strikes" rule, the plaintiffs voluntary withdrawal of his appeal did not effect the fact that the dismissal of the district court action constituted a "strike").

Plaintiffs "third strike" came in the case of *Chavis v. Streubel,* No. 04-2814 (2d Cir.). In *Streubel,* Plaintiff's *pro se* prisoner rights complaint was dismissed by the Western District of New York on March 29, 2004, for failure to state claim *and* failure to adduce evidence pursuant to Fed.R.Civ.P. 56. *Chavis v.*

*Struebel,* 317 F.Supp.2d 232, 236-39 (W.D.N.Y. March 29, 2004). As a result, no strike resulted from that dismissal. However, during the dismissal, the United States Magistrate Judge (assignment to whom the parties had consented) certified that any appeal from his order of dismissal would not be taken in good faith, for purposes of 28 U.S.C. § 1915(a)(3). *Struebel,* 317 F.Supp.2d at 239. Plaintiff took an appeal anyway. On June 2, 2005, the Second Circuit dismissed the appeal because it "lack[ed] an arguable basis in law or fact" pursuant to 28 U.S.C. § 1915(e)(2) (B)(l), expressly citing that statute and *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). *Chavis v. Struebel,* No. 04-2814, Mandate (2d Cir. filed March 11, 2005) (attached as Exhibit 3 to this Report-Recommendation). *Neitzke v. Williams,* and its progeny, explain that use of such language is an unequivocal finding of frivolousness for purposes of 28 U.S.C. § 1915.FN6 I can find no record of any appeal pending (or having been filed) with the Supreme Court. Thus, there was clearly a "third strike" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005.

> FN6. *See Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) ("[A]n appeal on a matter of law is frivolous where none of the legal points are arguable on their merits.... By logical extension, a complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or fact.") [internal quotation marks and citation omitted]; *Tavarez v. Reno,* 54 F.3d 109, 109 (2d Cir.1995) ("An appeal is frivolous where it lacks an arguable basis in law or fact.") (citing *Neitzke v. Williams,* 490 U.S. 319, 325 [1989] ).

**\*4** Even if one of the above dismissals did not constitute a "strike" for some reason, Plaintiff incurred yet another strike before he filed the current action. Plaintiff's "fourth strike" came in the case of *Chavis v. New York,* UID 2001-013-019 (N.Y.Ct.CI.). In *Chavis v. New York,* Plaintiff, as a prisoner proceeding *pro se,*

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

filed a claim against New York State for the "loss of travel expenses [incurred] by [his] family members" as a result of "false information given them over the phone by [his] vindictive SHU-Counselor" regarding the authorized time during which they could visit Plaintiff at Lakeview Prison. *Chavis v. New York,* UID 2001-013-019, Decision (N.Y. Ct. CI. filed Sept. 19, 2001) (Patti, J.) (attached as Exhibit 4 to this Report-Recommendation). The defendant moved to dismiss on the ground that the claim was inappropriately brought in that (1) Plaintiff was not the one who incurred the property loss and (2) he was not authorized to represent them in court (as a practicing attorney). *Id.* The Court of Claims judge assigned to the case, Judge Philip J. Patti, agreed with defendant and dismissed Plaintiffs claim on September 19, 2001. *Id.* Notably missing from the decision is any mention of evidence. This is because the decision was based solely on the allegations of Plaintiff's complaint. As a result, the dismissal was much like one for failure to state a claim upon which relief may be granted under Fed.R.Civ.P. 12(b)(6).FN7 I can find no record of any appeal from this decision anywhere pending (or having been filed). Thus, there appears to have been a "fourth strike" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005.

> FN7. I note that, even if the dismissal of Plaintiff's claim in *Chavis v. New York* was not simply caused by a failure to state a claim but was also caused partially by a lack of standing, case law exist holding that such a dismissal would still constitute a "strike" for purposes of 28 U.S.C. § 1915(g). *See Jones v. Edgar,* 3 F.Supp.2d 979, 981-82 (C.D.Ill.1998) (dismissal of prisoner's claim relating to alleged Fifteenth Amendment violation for failure to state claim, coupled with dismissal of prisoner's judicial-voting-districts claim for lack of standing, counted as a "strike" for purposes of PLRA), cited with approval in *Eady v. Lappin,* 05-CV-0824, 2007 WL 1531879, at *2, n. 4 (N.D.N.Y. May 22, 2007) (Mordue, C.J., adopting Report-Recommendation by Lowe, M.J.) [collecting

cases]; *cf. Comeaux v. Cockrell,* 72 F. App'x 54, 55 (5th Cir.2003) ("The district court could dismiss part of [the plaintiff's] complaint as malicious, which counted as a strike under 28 U.S.C. § 1915(g), even though the case was ultimately dismissed for failure to comply with court orders."); *Cross v. Harris,* 06-CV-0236, 2006 WL 3834270, at *3 & n. 1 (E.D.Ark. Dec.29, 2006) (counting as a strike a prior partial dismissal on ground of frivolousness, even though rest of action was dismissed for failure to exhaust administrative remedies); *President v. Duplichan,* 05-CV-1178,2006 WL 2540362, at *5 (W.D.La. June 14, 2006) (considering fact that "Plaintiff has had at least three previous civil actions filed in this Court dismissed in whole *or in part* as frivolous, malicious, or for failing to state a claim" in determining whether he had acquired "three strikes" pursuant to Section 1915[g] ) [emphasis added]; *Townsend v. Walker,* 06-CV-0361, 2006 U.S. Dist. LEXIS 37723, at *3-4, 2006 WL 1663713 (S.D. Ill. June 8, 2006) (rejecting plaintiff's argument that "[b]ecause [his] entire case was not dismissed for failure to state a claim, ... the ... [partial dismissal] should not count as a strike."); *Shaw v. Weaks,* 06-CV-2024, 2006 WL 1049307, at *6 n. 13 (W.D.Tenn. Apr.20, 2006) (counting as a strike a prior partial dismissal on ground of firivolousness or failure to state claim, even though rest of action was dismissed for failure to exhaust administrative remedies); *demons v. Young,* 240 F.Supp.2d 639, 640-641 (E.D.Mich.2003) (ruling that "a complaint dismissed in part as frivolous and in part without prejudice because of the failure to exhaust administrative remedies is ... a 'strike' for purposes of 28 U.S.C. § 1915(g)").

Having said all of this, I note that, for the most part, I am not persuaded by Defendants' argument that various of Plaintiffs actions or appeals resulted in "strikes" for purposes of 28 U.S.C. § 1915(g). (Dkt. No. 31, Part 13, at 4-5.) Generally, either the particular

dismissals cited by Defendants occurred after the "bringing" of Plaintiff's action (on September 12, 2005, or perhaps January 12, 2006), or those dismissals simply did not occur on the ground that the action was "frivolous, malicious, or fails to state a claim" under 28 U.S.C. § 1915(g). I note that I do not read 42 U.S.C. § 1915(g), or the cases applying it, as suggesting that a dismissal solely because of discovery abuses pursuant to Fed.R.Civ.P. 37, or a failure to serve pursuant to Fed.R.Civ.P. 41, constitutes a dismissal for frivolousness, maliciousness or failure to state a claim. FN8 Failures during discovery and failures to serve are failures based on something other than the four corners of a plaintiff's complaint-which is essentially the only thing looked at when determining frivolousness, maliciousness and failure to state a claim. Finally, I read 42 U.S.C. § 1915(g) as not encompassing a dismissal that is based partially upon the absence of genuine issues of material fact determined after a review of record evidence pursuant to Fed.R.Civ.P. 56. Apart from the fact that 28 U.S.C. § 1915(g), which is very specific, does not speak of such dismissals, such a review of record evidence generally only occurs when a litigant has survived any argument that his claim is frivolous, malicious or fails to state a claim.

> FN8. *See, e.g.,* Marjorie A. Shields, "Validity and Construction of 'Three Strikes' Rule Under 28 U.S.C.A. § 1915(g) Barring Prisoners from In Pauperis Filing of Civil Suit After Three Dismissals for Frivolity," 168 A.L.R. Fed. 433, §§ III.5. III.6 (2001 & Cumulative Supplement) (discussing cases addressing what constitutes a "frivolous" or "malicious" action for purposes of 28 U.S.C.A. § 1915[g] ).

**\*5** For all of these reasons, I find that Plaintiff had earned at least three "strikes" for purposes of 28 U.S.C. § 1915(g) before he "brought" this action on September 12, 2005. However, that does not end our inquiry, because the "Three Strikes Rule" contains an exception for prisoners who are "in imminent danger of serious physical injury" when they bring their action. 28 U.S.C. § 1915(g).

**B. Non-Applicability of Imminent Danger Exception**

As stated earlier, the "Three Strikes Rule," set forth in the federal statute governing *in forma pauperis* proceedings, reads,

> *In no event shall a prisoner bring a civil action* or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, *unless the prisoner is under imminent danger of serious physical injury.*

28 U.S.C. § 1915(g) [emphasis added].

Because 28 U.S.C. § 1915(g) creates an exception for prisoners who are under imminent danger of serious physical injury when they "bring a civil action," the imminent-danger exception applies only when such danger exists *at the time the action is brought. See Malik v. McGinnis,* 293 F.3d 559, 562-63 (2d Cir.2002). As the Second Circuit explained in *Malik,*

> We agree with our sister circuits that § 1915(g) allows prisoners to escape the three strikes rule only if "the prisoner *is* under imminent danger of serious physical injury." (emphasis added). Because § 1915(g) uses the present tense in setting forth the imminent danger exception, it is clear from the face of the statute that the danger must exist at the time the complaint is filed. Further, "[b]y using the term 'imminent,' Congress indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred." *Abdul-Akbar [v. McKelvie],* 239 F.3d [307] at 315 [3d Cir.2001]. Accordingly, the language of § 1915(g) makes clear that the "imminent danger" exception only applies to danger existing at the time the complaint is filed.

*Malik v. McGinnis,* 293 F.3d 559, 562-63 (2d Cir.2002), *accord, Polanco v. Hopkins,* No. 07-1739, 2007 WL 4258724, at \*2-3 (2d Cir. Dec.6, 2007) (declining to overturn the Second Circuit's time-of-filing interpretation set forth in *Malik* ).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

As a result, as in the Court's analysis of the assessment-of-strikes issue, the first thing the Court must do when analyzing the imminent-danger issue is to determine the date when Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g). As explained above in Part I.A. of this Report-Recommendation, because of the "prison mailbox rule," an issue exists regarding precisely when Plaintiff "brought" this action for purposes of 28 U.S.C. § 1915(g). He signed his original Complaint on September 12, 2005. However, he apparently did not mail that Complaint until on January 12, 2006. What further complicates matters is the fact that Plaintiff signed what he characterized as an "Amended" Complaint in this action on July 24, 2006. (Dkt. No. 6.) Ordinarily, this fact would not present a real problem, since an amended complaint contains allegations arising out of the same events as the events giving rise to the allegations contained in the original complaint. However, here, the "Amended" Complaint was, in actuality, an Amended and *Supplemental* Complaint, asserting, for the first time, allegations arising out of events occurring *after* the date he originally "brought" the action, specifically events occurring between May and July of 2006, at Auburn C.F. (*Compare* Dkt. No. 1 *with* Dkt. No. 6.) As a result, a sort of paradox arises: If a court considers the new allegations presented in a plaintiff's supplemental complaint when resolving the imminent-danger issue (presented by 28 U.S.C. § 1915 [g] ), the court will be determining whether the plaintiff was in imminent danger *after,* not before, he brought the action-unless the court re-characterizes the date on which the action was "brought" to coincide with the filing of the supplemental complaint.

**\*6** Fortunately, again, the Court need not resolve this issue because the Court would reach the same conclusion about the applicability of the imminent-danger exception regardless of whether the Court assumed Plaintiff "brought" this action on July 24, 2006, on January 12, 2006, or on September 12, 2005. This is because Plaintiff has not, in either his original Complaint or his Amended Complaint, alleged facts plausibly suggesting that he was under imminent danger of serious physical injury on any of the referenced dates. FN9

FN9. I note that, when determining whether a prisoner has qualified for the "imminent danger" exception, courts look at the non-conclusory allegations in the prisoner's complaint. *Welch v. Fisher,* 07-CV-0929, 2007 WL 3231992, at \*1-2 (N.D.N.Y. Oct.30, 2007) (McAvoy, J.) (concluding that plaintiff had failed to allege imminent danger of serious physical injury) [citations omitted]; *see also Abdrews v. Cervantes,* 493 F.3d 1047, 1053 (9th Cir.2007) ("[A]ll [circuits] maintain a singular focus on the facts alleged in the complaint in deciding whether a prisoner faced the requisite harm.") [collecting cases]; *Ibrahim v. Dist., of Columbia,* 463 F.3d 3, 6 (D.C.Cir.2006) ("In determining whether he qualifies [for the 'imminent danger' exception], we look to the complaint"); *Brown v. Johnson,* 387 F.3d 1344, 1350 (11th Cir.2004) ("[T]he issue [under § 1915(g) ] is whether his complaint, as a whole, alleges imminent danger of serious physical injury."); *Ciarpaglini v. Saini,* 352 F.3d 328, 330 (7th Cir.2003) ("Before denying leave to proceed IFP, courts must review a frequent filer's well-pled allegations to ensure that the prisoner is not in imminent danger.") [citation omitted]; *Rivera v. Allin,* 144 F.3d 719, 726 (11th Cir.1998) ("Prior to denying leave to proceed IFP, courts must review a frequent filer prisoner's well-pled allegations to ensure that the prisoner is not under imminent danger of serious physical injury.") [internal quotation marks and citation omitted], *abrogated on other grounds, Jones v. Block,* 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007).

For example, liberally construed, Plaintiff's Amended Complaint (signed on July 24, 2006) alleges that, between July of 2005, and July of 2006, at Auburn C.F., and Great Meadow C.F., the fourteen Defendants in this action violated his constitutional rights in the following ways:

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

(1) **Defendant Curlee** (a) filed false disciplinary charges against Plaintiff on July 7, 2005, in retaliation for his providing her with written notice that he intended to take legal action against her, at Auburn C.F., and (b) intentionally ignored Plaintiff's "mandatory program" request on or about July 11, 2005, at Auburn C.F.;

(2) **Defendant Young** denied Plaintiff a legal assistant prior to his disciplinary hearing on the referenced July 7, 2005, disciplinary charges, at Great Meadow C.F.;

(3) **Defendant Jackowski** (a) also denied Plaintiff a legal assistant prior to his disciplinary hearing on the referenced July 7, 2005, disciplinary charges, at Great Meadow C.F., (b) wrongfully convicted Plaintiff of the referenced charges, and excessively sentenced him to nine months' confinement in the Great Meadow C.F. SHU, and (c) Defendant Jackowski also excessively punished Plaintiff to six months' confinement in the Great Meadow C.F. SHU following another wrongful conviction of false and retaliatory charges filed by Defendant Curlee in July of 2005;

(4) **Defendant Selsky** failed to completely reverse these disciplinary convictions, in September or October of 2005;

(5) **Defendant Green** intentionally ordered wrongful disciplinary hearings against Plaintiff on false disciplinary charges in July and August of 2005, at Great Meadow C.F.;

(6) **Defendant Campbell** (a) filed false disciplinary charges against Plaintiff in July of 2005, in retaliation for his providing her with written notice that he intended to take legal action against her, at Great Meadow C.F., and (b) intentionally ignored Plaintiff's "mandatory program" request five or six months before his Parole Board interview in 2005, at Great Meadow C.F., resulting in his denial of release to parole;

(7) **Defendant Atkinson** wrongfully and intentionally denied Plaintiff's "mandatory program" requests between February and August of 2005, at Great Meadow C.F., resulting in his denial of release to parole;

(8) **Defendant Beebe,** in retaliation against Plaintiff for having provided Defendant Curlee with written notice that he intended to take legal action against her, at Auburn C.F., (a) wrongfully and intentionally inhibited Plaintiff's practice of the Islamic religion by denying him "all religious materials including [his] study lessons" between July and August of 2005, at Great Meadow C.F., (b) wrongfully and intentionally denied Plaintiff his legal work, which was inside his "property bags," at Great Meadow C.F., and (c) wrongfully and intentionally placed him in a Great Meadow C.F. SHU cell that was "dirty, grimy and unsanitized" for a month prior to his transfer to another prison;

**\*7** (9) **Defendant McGuire** either committed the same violations as did Defendant Beebe during the same time period at Great Meadow C.F., or he helped Defendant Beebe commit those violations;

(10) **Defendant Nesmith** callously (a) denied Plaintiff Benadryl over-the-counter allergy medication on "numerous dates" between June of 2005 and August 8, 2005, even though Plaintiff had had an outbreak of hives during that time period, at Great Meadow C.F., which had caused "eye and facial swelling," and (b) visited Plaintiff's cell without actually performing a sick call on several dates during the referenced time period;

(11) **Defendant Laux** denied Plaintiff "all multi-vitamin, Vitamin C and E supplements" on May 23, 2006, without first giving him a personal examination, despite knowing that he suffered from a Hepatitis-B condition, at Auburn C.F.;

(12) **Defendant Hai** filed false disciplinary charges against Plaintiff on June 13, 2006, and June 14, 2006, in retaliation for the grievances that he had filed against Defendant Hai on June 2, 2006, and June 13, 2006, at Auburn C.F.;

(13) **Defendant Wolgzyk** (a) intentionally denied Plaintiff a legal assistant prior to his disciplinary

hearings on June 19, 2006, and June 20, 2006, at Auburn C.F., (b) wrongfully convicted him of the charges against him at those hearings, at Auburn C.F., and (c) callously sentenced him to incarceration in the Auburn C.F. SHU; and

(14) **Defendant Graham** caused Plaintiff to be incarcerated in an Auburn C.F. SHU cell that was dirty and flooded, and where he was deprived of running water, cleaning supplies, personal hygiene items, and his legal papers, in June and July of 2006. (*See generally* Dkt. No. 6.)

I find that these alleged facts do not plausibly suggest that Plaintiff was under an *imminent danger of serious physical injury* when he brought this action. (Indeed, I would have difficulty finding that these allegations plausibly suggest any *deliberate indifference to a serious medical need.*) The closest Plaintiff comes to asserting such factual allegations is when he alleges that (1) Defendant Nesmith denied Plaintiff Benadryl over-the-counter allergy medication on "numerous dates" *between June of 2005 and August 8, 2005,* even though Plaintiff had had an outbreak of hives during that time period at Great Meadow C.F., which had caused "eye and facial swelling," and (2) Defendant Laux denied Plaintiff "all multi-vitamin, Vitamin C and E supplements" *on May 23, 2006,* without first giving him a personal examination, despite knowing that he suffered from a Hepatitis-B condition, at Auburn C.F.

The first problem with these allegations is they do not plausibly suggest that the injuries Defendants Nesmith and Laux caused Plaintiff *between June of 2005 and August 8, 2005,* and *on May 23, 2006,* somehow continued to cause Plaintiff adverse health consequences *at the time this action was "brought"* - whether that date was when Plaintiff dated his original Complaint, on *September 12, 2005,* or when that original Complaint was postmarked, on *January 12, 2006,* or when Plaintiff signed his "Amended" Complaint in this action, *on July 24, 2006,*

**\*8** The Second Circuit recently affirmed a district court's finding of no-imminent-danger under circumstances involving an analogous temporal

disconnect. *See Polanco v. Hopkins,* No. 07-1739, 2007 WL 4258724 (2d Cir. Dec.6, 2007). In *Polanco v. Hopkins,* the plaintiff alleged that (1) defendants were effectively forcing him to breathe "black mold" in a prison shower, exacerbating both his AIDS condition and his Hepatitis-B condition, and (2) defendants had deprived him of hygienic items and a proper diet while in the prison SHU, causing him to lose weight. *Polanco v. Hopkins,* 03-CV-6661, 2007 WL 914023, at \*3-5 (W.D.N.Y. March 23, 2007). With respect to the first claim (regarding the moldy shower), the Western District of New York ruled that the plaintiff had not alleged facts plausibly suggesting that he was in imminent danger of serious physical injury *at the time be "brought" the action,* because he filed the action on December 29, 2003 (while he was incarcerated at Auburn C.F.) long after he had been subjected to the moldy shower on October 10, 2002 (while he was incarcerated at Elmira C.F.). *Polanco,* 2007 WL 914023, at \*3-4. With respect to the second claim (regarding his proper hygiene and diet while in SHU), the Western District ruled there was no "imminent danger" alleged due to a similar temporal disconnect between the date of the injury (on March 25-27, 2003) and the date of the filing (on December 29, 2003). *Id.* at \*5 & n. 1. On appeal, the Second Circuit agreed, affirming the Western District's ruling. *See Polanco v. Hopkins,* No. 07-1739, 2007 WL 4258724, at \*2 (2d Cir. Dec.6, 2007) ("Nor did the District Court err in determining that Polanco's 'allegations cannot support a determination that he was in imminent danger' of serious physical injury with respect to his claims relating to the health risks associated with his exposure to mold or to his claim of unjust discipline.' ").

In any event, even if this temporal disconnect did not plague Plaintiff's allegations, his allegations would still not plausibly suggest "imminent danger" because they lack several critical details. For example, with respect to his Benadryl claim, Plaintiff alleges no physical injury greater than "eye and facial swelling." Nor does Plaintiff allege how many times Defendant Nesmith deprived him of the Benadryl-a number closer to four or forty? With respect to his vitamin claim, Plaintiff alleges no specific physical injury *at all.* How

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

did Defendant Laux's alleged vitamin deprivation on one day exacerbate Plaintiff's pre-existing Hepatitis-B condition? And how did any such exacerbated condition rise to the level of an *imminent danger of serious physical injury?*

Analogous circuit court decisions exist finding that a prisoner had not alleged such an imminent danger due to his failure to provide such critical details. *See, e.g., Skillern v. Paul,* 06-CV-11440, 202 Fed. App'x 343, 344 (11th Cir. Oct.4, 2006) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915[g], where he alleged merely that the deprivation of his heart medication "may result" in his suffering serious physical injury, without "present[ing] any description of the condition giving rise to the prescription for heart disease medication," and without "alleg[ing] that he suffered any physical injury as a result of not receiving the medication"); *White v. Colorado,* 157 F.3d 1226, 1231-32 (10th Cir.1998) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915 [g], where he merely alleged "vague and utterly conclusory assertions" of withheld medical treatment, specifically, that he "ha [s] been deprived of life sustaining medication and medical attention/treatment, ha[s] been beaten, and/or otherwise tortured and allowed to suffer great pain, so that [his] health degenerated to a[n] extremely life threatening degree"). FN10

> FN10. *See also Martin v. Shelton,* 319 F.3d 1048, 1050 (8th Cir.2003) (prisoner was not in imminent danger of serious physical injury for purposes of 28 U.S.C. § 1915[g], where he merely asserted conclusory allegations that prison officials were trying to kill him by forcing him to work in extreme weather conditions despite "his blood pressure condition").

**\*9** Finally, I note that Plaintiff, in an obvious attempt to respond to Defendants' imminent-danger argument, has asserted some allegations of physical injury in his Opposition Memorandum of Law (described below). As an initial matter, I find that only

the allegations of a prisoner's *pleading* (not a memorandum of law) should be considered in deciding whether such imminent danger existed at the time an action was brought, for the reasons discussed above. FN11 In any event, these allegations asserted in Plaintiff's Opposition Memorandum of Law are, like the allegations asserted in his pleadings, wholly conclusory. (*See* Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 4, 26 [alleging that an excessive use of force, by unidentified Defendants on unidentified dates, caused Plaintiff to experience "internal organ trauma with bleeding-swelling to head and body with lacerations"]; Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 20 [alleging that Defendant Laux caused "a deterioration of Plaintiff's physical condition]; Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 21-22 [alleging that, on July 17, 2006, unidentified correctional officers, physically assaulted Plaintiff]; Dkt. No. 33, Plf.'s Opp. Mem. of Law, at 25 [alleging that, during an unspecified time, unspecified Defendants denied Plaintiff "emergency medical treatment for 2 1/2 weeks"].)

> FN11. *See, supra,* note 9 of this Report-Recommendation.

For these reasons, I find that Plaintiff has not alleged facts plausibly suggesting that he was under imminent danger of serious physical injury when he brought this action. As a result, I recommend that Plaintiff's *in forma pauperis* status be revoked or rescinded as having been improvidently granted, and that Plaintiff be given ten (10) days from the date of the Court's final order with regard to Defendants' motion by which to pay the Court's filing fee of $250 (the fee applicable at the time of filing), upon penalty of dismissal.

Finally, I note that I specifically reject Plaintiff's argument that the Court is somehow estopped from revoking or rescinding his *in forma pauperis* status because it granted that status on July 5, 2006. (Dkt. No. 33, at 24-25 [Plf.'s Opp. Mem. of Law].) It is true that, in my Report-Recommendation of July 5, 2006, I noted, in a footnote, that Plaintiff had filed five other actions in the Northern District. (Dkt. No. 5, at 2.) However, before so noting, I had no occasion to look outside of

the Northern District of New York for other cases filed by, or "strikes" earned by, Plaintiff. Simply stated, I was relying on Plaintiff's misrepresentation, in his sworn Complaint, about his litigation history. (*See, infra,* Part II of this Report-Recommendation [describing Plaintiff's misrepresentation].) Having misled the Court about his previous litigation history, Plaintiff cannot be heard to complain about the Court's reconsideration of his entitlement to proceed *in forma pauperis.*

## II. ALTERNATIVE GROUND FOR DISMISSAL

In the alternative, I find that Plaintiff should be sanctioned for making a material misrepresentation to the Court, in both his sworn Complaint and his sworn Amended Complaint, about his previous litigation history.

**\*10** Specifically, in Paragraph 5 of Plaintiff's sworn Complaint, he answered "Yes" to the question, "Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?" (Dkt. No. 1, ¶ 5[a] [Plf.'s Compl.].) He then listed only *one* case when identifying those cases, even though he was specifically instructed, "If your answer to 5(a) is YES you must describe any and all lawsuits, currently pending or closed, in the space provided on the next page." (Dkt. No. 1, ¶ 5[b] [Plf.'s Compl.].) Paragraph 5 of Plaintiff's sworn Amended Complaint contains the exact same question and answer. (*See* Dkt. No. 6, ¶ 5 [Plf.'s Am. Compl.].)

The problem is that, in answering this question, Plaintiff failed to disclose to the Court *any* of the *fourteen* state and federal court actions relating to his imprisonment that he had filed before the date on which he signed his original Complaint, on September 12, 2005, and/or before the date on which he signed his Amended Complaint, on July 24, 2006. *See Chavis v. Charnes,* 99-CV-5070 (S.D.N.Y.) (filed 7/14/99); *Chavis v. Cunningham,* 00-CV-0097 (W.D.N.Y.) (filed 1/28/00); *Chavis v. Flagler,* 01-CV-0510 (W.D.N.Y.) (filed 7/19/01); *Chavis v. VonHagan,* 02-CV-0119 (W.D.N.Y.) (filed 2/11/02); *Chavis v. Zodlow,* 02-CV-0637 (N.D.N.Y.) (filed 5/9/02); *Chavis v. Kienert,* 03-CV-0039 (N.D.N.Y) (filed 1/9/03); *Chavis*

*v. Ferris,* 03-CV-0743 (W.D.N.Y.) (filed 10/2/03); *Chavis v. Bennett,* 03-CV-0755 (N.D.N.Y.) (filed 6/18/03); *Chavis v. D.N.,* 04-CV-0158 (N.D.N.Y.) (filed 2/12/04); *Chavis v. Woods,* 05-CV-0429 (S.D.N.Y.) (filed 1/14/05); *Chavis v. Woods,* 05-CV-0768 (E.D.N.Y.) (filed 2/9/05); *Chavis v. Goord,* 8 A.D.3d 786, 777 N.Y.S.2d 918 (N.Y.App.Div., 3d Dept.) (appeal dismissed on 6/10/04); *Chavis v. New York,* UID 2001-013-019, Claim No. 100419 (N.Y. Ct CI.) (dismissed on 9/19/01).

Generally, information about a plaintiff's litigation history is material in prisoner civil rights actions since it enables the Court to determine one or more of the following issues: (1) whether any of the issues in the action have been previously litigated and decided (for purposes of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to being granted *in forma pauperis status* in this action, earned "three strikes" for purposes of 28 U.S.C. § 1915(g); (3) whether the plaintiff had a record of frivolous litigation sufficient to warrant either (a) what is known as a "bar order" (i.e., an order barring him from litigating further in that court without meeting certain preconditions) pursuant to 28 U.S.C. § 1651(a), or (b) an order declaring plaintiff to be a "vexatious" litigator pursuant to 28 U.S.C. § 1927; and (4) whether the plaintiff's litigation experience was so extraordinary that it effectively dispenses with the need to afford him special solicitude.

Here, the information omitted by Plaintiff was certainly material since the action proceeded for well over a year on the assumption that Plaintiff was telling the truth when he swore that, as of the dates on which he filed his Complaint and Amended Complaint, he had filed only one other lawsuit in state or federal court otherwise relating to his imprisonment. Had Plaintiff answered truthfully, it is highly likely that either the Court, or defense counsel, would have more promptly explored Plaintiff's prior litigation history and discovered the above-described "strikes." I note that, while a plaintiff is under no duty to provide this information in order to state an actionable civil rights claim, here, Plaintiff *chose* to answer a question on a

form complaint calling for such information, and *swore* to the truthfulness of his answer. No amount of special solicitude can excuse such a material misrepresentation to the Court.[FN12]

> FN12. I note that I am doubtful that Plaintiff is even entitled to such special solicitude, since the rationale for extending such solicitude is a *pro se* litigant's inexperience, and, here, Plaintiff is no stranger to the court system. *See Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) (declining to extend special solicitude to experienced *pro se* civil rights litigant); *see also Johnson v. Eggersdorf,* 8 F. App'x 140, 143 (2d Cir.2001) (unpublished opinion), *aff'g,* 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting,* Report-Recommendation, at 1, n.l (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson,* 201 F.3d 431, at *2 (2d Cir.1999) (unpublished opinion), *aff'g,* 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting,* Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.). Specifically, from my review of various on-line databases, including the Federal Judiciary's PACER Service, it appears that Plaintiff has filed at least 15 other federal court actions, most of which were followed by an appeal, and at least six state court actions or appeals. *See, supra,* Part II of this Report-Recommendation (listing cases); *see also Chavis v. Ryan,* 05-CV-0100 (N.D.N.Y.); *Chavis v. Goord,* No. 500537, 2007 WL 4335538 (N.Y.App.Div., 3d Dept); *Chavis v. Goord,* 45 A.D.3d 1063, 845 N.Y.S.2d 866 (N.Y.App.Div., 3d Dept.); *Chavis v. Goord,* 43 A.D.3d 1235, 841 N.Y.S.2d 720 (N.Y.App.Div., 3d Dept.).

**\*11** District judges from this Court have recently indicated a willingness to sanction *pro se* litigants for making such material misrepresentations. *See, e.g., Standley v. Dennison,* 05-CV-1033,2007 WL 2406909, at *13-14 (N.D.N.Y. Aug.21, 2007) (Sharpe, J.,

adopting, on *de novo* review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Muniz v. Goord,* 04-CV-0479, 2007 WL 2027912, at *6 & n. 32 (N.D.N.Y. July 11, 2007) (McAcoy, J., adopting, on plain-error review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint) [collecting cases].

Certainly, numerous other federal courts have so sanctioned *pro se* litigants. *See, e.g., Greer v. Schriro,* No. 06-15537, 2007 WL 4163413, at *1 (9th Cir. Nov.26, 2007) (affirming district court dismissal that was based on this ground); *Mathis v. Smith,* No. 05-13124, 181 Fed. App'x 808, 809-10 (11th Cir. May 17, 2006) (affirming district court dismissal that was based partially on this ground); *Hudson v. Fuller,* No. 02-1396, 59 Fed. App'x 855, 856-57 (7th Cir. Feb.25, 2003) (affirming district court dismissal that was based on this ground); *Albright v. Holden,,* 99 F.3d 1145, 1145 (9th Cir.1996) (affirming district court dismissal that was based on this ground).[FN13]

> FN13. *See also Hood v. Tompkins,* No. 05-16358, 197 Fed. App'x 818, 819 (11* Cir. Aug.7, 2006) (affirming district court dismissal on this ground), *accord, Dinkins v. Smalley,* 07-CV-0043, 2008 WL 160699, at *3 & n. 3 (S.D.Ga. Jan.14, 2008) (adopting, on *de novo* review, magistrate judge's recommendation that plaintiff's complaint should be dismissed on this ground) [citing cases]. I note that the dismissals in *Hood v. Tompkins* and *Dinkins v. Smalley* were without prejudice since the plaintiffs in those cases had not yet had an opportunity to file an amended complaint. However, here, Plaintiff has had such an opportunity. (*See* Dkt. No. 6.) As a result, the dismissal should be *with prejudice.*

I note that I have carefully considered all less drastic sanctions and found them to be inadequate and inappropriate remedies, given the particular

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

circumstances of this case, and Plaintiff's incorrigible propensity for abusing the litigation process.[FN14] As a result, I recommend that, in the alternative, Plaintiff's Amended Complaint should be dismissed with prejudice as a sanction under Fed.R.Civ.P. 11 for making a material misrepresentation to the Court, in both his sworn Complaint and his sworn Amended Complaint, about his previous litigation history.

> FN14. For example, in addition to the numerous baseless actions that Plaintiff has filed in federal court, and the numerous misrepresentations he has made in those actions about his then-previous litigation history, I note that Plaintiff has, in this action, used abusive language, calling various Defendants "devils" and "satanic," and calling defense counsel "sneaky, wicked, [and] manipulative." (*See, e.g.,* Dkt. No. 6, ¶ 6 at 1, 16 [Plf.'s Am. Compl.]; Dkt. No. 33, at 15 [Plf.'s Opp. Mem. of Law].)

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 31) be **GRANTED.** that Plaintiff's *in forma pauperis* status be revoked or rescinded as having been improvidently granted, and that Plaintiff be given **TEN (10) DAYS** from the date of the Court's final order with regard to Defendants' motion by which to pay the Court's filing fee of $250 (the fee applicable at the time of filing), upon penalty of **DISMISSAL;** and it is further

**RECOMMENDED** that, in the alternative, Plaintiff's Complaint be *sua sponte* **DISMISSED with prejudice** as a sanction pursuant to Fed.R.Civ.P. 11 for making a material misrepresentation to the Court in his sworn pleadings about his prior litigation history; and it is further

**RECOMMENDED** that the Court certify in writing, for purposes of 28 U.S.C. § 1915(a)(3), that any appeal taken from the Court's final judgment in this action would not be taken in good faith.

*\*12* Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Servs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

*Exhibit 1*
**U.S. District Court**
**United States District Court for the Southern**
**District of New York (Foley Square)**
**CIVIL DOCKET FOR CASE # : 1:99-cv-05072-TPG**
*Chavis v. Charnes,* et al

Assigned to: Judge Thomas P. Griesa

Demand: $0

Cause: 42:1983 Prisoner Civil Rights

Date Filed: 07/14/1999

Date Terminated: 07/14/1999

Jury Demand: Plaintiff

Nature of Suit: 550 Prisoner: Civil

Rights

Jurisdiction: Federal Question

*Plaintiff*

**George M. Chavis**

V.

*Defendant*

**Mr. Allen Charnes**

*Defendant*

**Ms. Irene Springer**

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

represented by **George M. Chavis**                    Pine City, N.Y. 14871-2000

(91-A-3261)                                            PROSE

Southport Correctional Facility

P.O. Box 2000

| Date Filed | # Docket Text |
| --- | --- |
| 07/14/1999 | 1 DECLARATION IN SUPPORT OF REQUEST TO PROCEED IN FORMA PAUPERIS by George M. Chavis (jp) (Entered: 07/19/1999) |
| 07/14/1999 | 2 COMPLAINT filed (jp) (Entered: 07/19/1999) |
| 07/14/1999 | Magistrate Judge Dolinger is so Designated. (jp) (Entered: 07/19/1999) |
| 07/14/1999 | 3 ORDER OF DISMISSAL Accordingly, the complaint, filed in forma pauperis under 28 U.S.C.1915(a), is dismissed pursuant to 28 U.S.C.1915(d). We certify pursuant to 28 U.S.C.1915(a) that any appeal from this order would not be taken in good faith. SO ORDERED. (signed by Chief Judge Thomas P. Griesa) (jp) (Entered: 07/19/1999) |
| 07/14/1999 | 4 JUDGMENT for Allen Charnes, Irene Springer. Ordered, Adjudged and Decreed: That the complaint be and it is hereby dismissed. 28 U.S.C.1915(d). We certify that any appeal from the Court's order would not be taken in good faith. SO ORDERED. (signed by Chief Judge Thomas P. Griesa). entered on 7/19/99. (jp) (Entered: 07/19/1999) |
| 07/14/1999 | Case closed Op) (Entered: 07/19/1999) |
| 08/12/1999 | NOTICE OF APPEAL by George M. Chavis; from [4-1] judgment. Copies of notice of appeal mailed to |

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

| | |
|---|---|
| | Attorney(s) of Record: .FEES DUE, IFP revoked 7/14/99. (as) (Entered: 09/02/1999) |
| 08/12/1999 | Notice of appeal and certified copy of docket to USCA: [5-1] appeal by George M. Chavis; Copy of notice of appeal sent to District Judge. (as) (Entered: 09/02/1999) |
| 09/08/1999 | 6 Notice that the record on appeal has been certified and transmitted to the U.S. Court of Appeals: [5-1] appeal by George M. Chavis (as) (Entered: 09/08/1999) |
| 03/01/2000 | 7 MANDATE OF USCA (certified copy) Re: Dismiss [5-1] appeal by George M. Chavis. Motions having been made by appellant pro se for in forma pauperis status and for damages, upon consideration it is ordered that said motions be and hereby are denied, and the appeal is dismissed as frivolous. 99-0265 Roseann B. MacKechnie, Clerk (sl) (Entered: 03/02/2000) |
| 05/11/2000 | Record on appeal files (99-265) returned from U.S. Court of Appeals: [5-1] appeal by George M. Chavis. (dt) (Entered: 05/11/2000) |

**PACER Service Center**

**Transaction Receipt**

01/17/2008 11:48:19

| | | | |
|---|---|---|---|
| **PACER Login:** | us4417 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:99-cv-05072-TPG |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

*Exhibit 2*
GENERAL DOCKET FOR
Second Circuit Court of Appeals
**\*13** Filed: 9/14/99

Court of Appeals Docket # :99-265

Nsuit: 3550 PRISONER PET-Civil Rights

*Chavis v. Charnes,* et al

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Appeal from: U.S. District Court SDNY

Case type information:

1) Prisoner Petition

2) State

3) Civil Rights

Lower court information:

District: 0208-01: 99-cv-5072

Trial Judge: Thomas P. Griesa, Chief Judge

Date Filed: 7/14/99

Date order/judgment: 7/14/99

Date NOA filed: 8/12/99

Fee status: IFP denied in CA

Prior cases:

None

Current cases:

None

Panel Assignment:

GEORGE M. CHAVIS, Plaintiff-Appellant

George M. Chavis

# 91-A-3261

[COR LD NTC]

Coxsackie Correctional Facility

P.O. Box 2000

Coxsackie, N.Y. 12051

ALLEN CHARNES, Mr., Defendant-Appellee

# 990265, Esq.

[COR LD NTC ret]

Attorney General's Office

State of New York

The Capitol

Albany, N.Y. 12224

IRENE SPRINGER, Ms., Defendant-Appellee

# 990265, Esq.

(See above)

[COR LD NTC ret]

Official Caption FN15

> FN15. Fed. R.App. P. Rule 12[a] and 32[a].

Docket No. [s]: 99-0265

GEORGE M. CHAVIS, Plaintiff-Appellant,

v.

MR. ALLEN CHARNES and MS. IRENE SPRINGER, Defendants-Appellees.

Authorized Abbreviated Caption FN16

> FN16. For use on correspondence and motions only.

Docket No. [s]: 99-0265

*CHAVIS v. CHARNES*

8/31/99 Copy of district court order RECEIVED.

(ag44)

9/14/99 Copy of notice of appeal and district court docket entries on behalf of Appellant George M. Chavis filed. (COANRQ state-cvrgt;fee due) [99-265] (ag44)

9/14/99 Record on appeal filed. (Original papers of district court.) Number of volumes: 1 (ag44)

9/17/99 Note: This appeal was PRO SE when filed. (ag44)

9/17/99 Letter sent to Appellant George M. Chavis giving 30 days from date to either pay the fee or file a motion for ifp. Fee due on 10/18/99. D Response due financial affidavit on 10/18/99. (ag44)

9/20/99 Appellant George M. Chavis motion to proceed in forma pauperis Satisfy fee or motion for ifp. FILED (w/pfs). [1555668-1] (ag44) 10/6/99 Letter from appellant, regarding submission of pre-argument materials, received. (ag44)

10/12/99 Letter sent to Appellant George M. Chavis instructing him to forward his prisoner fee letter to this court as soon as possible. (ag44)

10/18/99 Appellant George M. Chavis motion to allow damages FILED (w/pfs). [1490706-1] (ag40)

11/24/99 Letter from apellant, regarding the status of his appeal, received. (ag44)

1/4/00 Letter sent to Appellant George M. Chavis informing him of the status of his appeal. (ag44)

2/25/00 Order FILED DENYING motion to allow [1490706-1] by Appellant George M. Chavis, endorsed on motion dated 10/18/99., DENYING motion to proceed in forma pauperis [1555668-1] by Appellant George M. Chavis, endorsed on motion dated 9/20/99. Order states, "Motions having been made by appellant pro se for in forma pauperis status and for damages, upon due consideration it is ordered that said motions be and hereby are denied, and the appeal is dismissed as frivolous. See 28 U.S.C.

S.1915 (e); *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). For the Court: LC." (ag44)

**\*14** 2/25/00 Notice, regarding motion order dated 2/25/00, issued to counsel. (ag44)

2/25/00 Certified copy of order dated 2/25/00 disposing of the appeal issued to district court. (ag44)

3/9/00 Letter from appellant, regarding reinstatement of the appeal, received. (ag44)

3/16/00 Letter sent to Appellant George M. Chavis stating that if he wants to reinstate the appeal, he must file a motion. (ag44)

3/31/00 Appellant George M. Chavis motion for: 2.5 million dollars RECEIVED. (ag44)

5/1/00 Record on appeal RETURNED to lower court. No. of volumes: 1(ref)

5/25/00 Letter from appellant, regarding motion for appointment of counsel and review of medical papers, received. (ag44)

6/22/00 Appellant George M. Chavis motion to reconsider decision FILED (w/pfs). [1652956-1](hh)

7/18/00 Appellant George M. Chavis papers supporting motion # for reconsideration [1652956-1] by Appellant George M. Chavis filed. (ag44)

8/2/00 Order FILED DENYING motion to reconsider decision [1652956-1] by Appellant George M. Chavis, endorsed on motion dated 6/22/00. Order states, "Before CJS, SS, DN Hurd, It is hereby ordered that the motion for reconsideration be and it hereby is denied. For the Court: BJM" (ag44)

8/3/00 Notice, regarding motion order dated 8/2/00, issued to counsel. (ag44)

8/18/00 Appellant George M. Chavis motion to reconsider decision FILED (w/pfs). [1691931-1](hh)

10/6/00 Letter received from G. Chavis re: appeal to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

the Supreme Court. (ag42)

11/9/00 Letter from appellant, regarding denial of his motion for reconsideration, received. (ag44)

12/8/00 Letter sent to Appellant George M. Chavis re: Letter received on 10/06/00. (ag42)

6/25/01 Order FILED DENYING motion to reconsider decision [1691931-1] by Appellant George M. Chavis, endorsed on motion dated 8/18/00. (Before: CJS, SS, CJJ, Hurd, DJ) (BJM, AA FOR THE COURT) (ag40)

6/25/01 Notice of motion to denying reconsideration issued to counsel and pro se. (ag40)

6/25/01 Letter sent to Appellant George M. Chavis: reagrding letter he sent to this court. (ag40)

*Exhibit 3*
United States Court of Appeals
FOR THE
SECOND CIRCUIT

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at Foley Square, in the City of New York, on the 11th Day of MARCH Two thousand and five.

Present:

Hon. Thomas J.

Meskill, Hon. Dennis Jacobs,

Hon. Chester J. Straub,

*Circuit Judges.*

_____

George M. Chavis, Plaintiff-Appellant,

v.

Robert Cunningham, George Struebel, Defendants-Appellees,

D. Waiter, T. Brekon, Wright, John Doe, Glenn S. Goord, Anthony J. Annuci, Walter R. Kelly, Frank McCray, James Conway, Edward Donnerly, Defendants,

_____

Appellant, *pro se,* moves for *in forma pauperis* status. Upon due consideration, it is ORDERED that the motion is DENIED, and the appeal is dismissed, because the appeal "lacks an arguable basis in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see also* 28 U.S.C. § 1915(e)(2)(B)(i).

**\*15** FOR THE COURT:

Roseann B. MacKechnie, Clerk

By: Lucille Carr

*Exhibit 4*
**New York State Court of Claims**

***CHAVIS v. THE STATE OF NEW YORK,* #
2001-013-019, Claim No. 100419, Motion No. M-
63721**
**Synopsis**
A claim brought by a non-attorney which asserts a cause of action on behalf of family members is dismissed as improperly brought.

**Case Information**

| | |
|---|---|
| **UID:** | 2001-013-019 |
| **Claimant(s):** | GEORGE CHAVIS |
| **Claimant short name:** | CHAVIS |

| | |
|---|---|
| **Footnote (claimant name):** | |
| **Defendant(s):** | THE STATE OF NEW YORK |
| **Footnote (defendant name):** | |
| **Third-party claimant(s):** | |
| **Third-party defendant(s):** | |
| **Claim number(s):** | 100419 |
| **Motion number(s):** | M-63721 |
| **Cross-motion number(s):** | |
| **Judge:** | Philip J. Patti |
| **Claimant's attorney:** | GEORGE CHAVIS, Pro Se |
| | HON. ELIOT SPITZER |
| **Defendant's attorney:** | Attorney General of the State of New York |
| | BY: William D. Lonergan, Esq. Assistant Attorney General |
| **Third-party defendant's attorney:** | |
| **Signature date:** | September 19, 2001 |
| **City:** | Rochester |
| **Comments:** | |
| **Official citation:** | |
| **Appellate results:** | |
| **See also** | |
| **(multicaptioned case)** | |

Decision

On August 15, 2001, the following papers were read on Defendant's motion for an order of dismissal:

1. Notice of Motion and Supporting Affidavit of William D. Lonergan, Esq. ("Lonergan Affidavit")

2. Affidavit in Opposition: None Received

3. Filed Papers: Claim; Answer

The substantive portion of this claim, which was filed by *pro se* Claimant George Chavis, reads as follows:

On date of 8-22-98, my mother and brothers (2), had visited me at Lakeview Prison, at an "unauthorized" time, due to false information given them over the phone by my vindictive SHU-Counselor, on 8-11-98, resulting in loss of travel expenses by my family members.

Claimant served a Notice of Intention on September 11, 1998 (Lonergan Affidavit, Exhibit A), and the Claim was filed and served in May 1999. In its answer, the State raised the following as its fifth affirmative defense:

The claim is inappropriately brought, as the Claimant is not authorized to practice law under the New York State Judiciary Law. As such, Claimant cannot bring an action on behalf of his family members.

Defendant now moves for an order dismiss the claim on this ground.

CPLR 321(a) provides that an adult party "may prosecute or defend a civil action in person or by attorney," and Judiciary Law § 478 makes it unlawful

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)
**(Cite as: 2008 WL 508694 (N.D.N.Y.))**

for persons who have not been admitted to practice law to appear as or hold themselves out as attorneys. Claimant has made no submission in opposition to Defendant's motion and, because he expressly indicates that he has brought this action *"pro se,"* I have no option but to conclude that he has neither the authority to represent his family members in this matter nor a claim to assert on his own behalf.

**\*16** Defendant's motion is granted, and Claim No. 100419 is dismissed.

September 19, 2001

Rochester, New York

HON. PHILIP J. PATTI Judge of the Court of Claims

N.D.N.Y.,2008.
Chavis v. Curlee
Not Reported in F.Supp.2d, 2008 WL 508694 (N.D.N.Y.)

END OF DOCUMENT

99 F.3d 400, 1995 WL 732686 (C.A.2 (N.Y.)), 77 A.F.T.R.2d 96-447
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 99 F.3d 400, 1995 WL 732686 (C.A.2 (N.Y.)))**



NOTICE: THIS IS AN UNPUBLISHED
OPINION.

(The Court's decision is referenced in a "Table of
Decisions Without Reported Opinions" appearing
in the Federal Reporter. See Federal Rule of
Appellate Procedure 32.1 and this court's local Rule
32.1.1. for rules regarding the citation of
unpublished opinions.)

United States Court of Appeals, Second Circuit.
Ram P. MANWANI, Plaintiff-Appellant
v.
George BRUNELLE; Robert Paglia; Fahnestock &
Co., Inc.; Internal Revenue Service; United States,
Defendants-Appellees

No. 95-6080.
Dec. 8, 1995.

Appearing For Appellant: Ram P. Manwani,
Flushing, NY, pro se.

Appearing For Federal Appellees: Jonathan A.
Wasserman, Tax Division, U.S. Dep't of Justice,
Washington, DC.

Appearing For Appellees George Brunelle, Robert
Paglia, and Fahnestock & Co.: George Brunelle,
NY, NY.

E.D.N.Y.

AFFIRMED.

Present: FEINBERG, OAKES, and CALABRESI,
Circuit Judges.

**\*1** UPON CONSIDERATION of this appeal
from a judgment of the United States District Court
for the Eastern District of New York (Eugene H.
Nickerson, *Judge* ), it is hereby

ORDERED, ADJUDGED AND DECREED

that the judgment of the District Court is
AFFIRMED.

In a complaint brought in October 1994,
plaintiff alleged that George Brunelle, Robert
Paglia, and Fahnestock & Co. (Fahnestock)
engaged in fraudulent conduct. In particular,
plaintiff contends that Fahnestock, a registered
broker dealer, charged him greater commissions
than had been agreed upon. Plaintiff also sued
Robert Paglia, alleged to be the data processing
manager at Fahnestock. Plaintiff also sought
sanctions against Brunelle, an attorney who
represented both Fahnestock and another individual
previously sued by the plaintiff. Manwani
additionally sued the Internal Revenue Service
(IRS) and the United States because of the
government's allegedly wrongful levies against
Manwani's accounts at Fahnestock and other
brokerage firms.

The complaint before us seeks to relitigate
several prior lawsuits brought by Manwani in the
state and federal courts, and to reargue claims that
have already been before this Court two times. In
1990, Manwani sued Fahnestock and one of its
employees in the New York Supreme Court,
alleging fraud and misappropriation in connection
with Manwani's securities transactions and
accounts. Manwani's 1988 written agreement with
Fahnestock, however, included a clause requiring
arbitration of any claims that did not arise under
federal securities law. The New York Supreme
Court granted the defendants' motion to compel
arbitration in accordance with the written
agreement, and its decision was affirmed by the
Appellate Division. *Manwani v. Reuter and
Fahnestock & Co., Inc.,* 168 A.D.2d 340, 563
N.Y.S.2d 624 (1st Dep't 1990). In 1991, Manwani
filed a similar suit in the United States District
Court for the Eastern District of New York. The
district court granted defendants' motion to compel
arbitration and stayed all proceedings pending the
completion of arbitration. The district court later

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 2

99 F.3d 400, 1995 WL 732686 (C.A.2 (N.Y.)), 77 A.F.T.R.2d 96-447
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 99 F.3d 400, 1995 WL 732686 (C.A.2 (N.Y.)))**

awarded defendants $2500 for fees pursuant to Fed.R.Civ.P. 11. Manwani appealed these district court rulings, but this Court dismissed the appeal *sua sponte* for lack of appellate jurisdiction because no final order or partial final judgment had been entered. *Manwani v. Reuter, Fahnestock & Co.,* No. 92-7368 (2d Cir. April 26, 1993). Manwani, however, never submitted to arbitration. He instead filed a new action in New York Supreme Court in 1994, seeking to dismiss the 1990 New York Supreme Court order that compelled arbitration. In May 1994, the New York Supreme Court denied the motion and stated that the defendants need not respond to any further motions brought by Manwani in connection with this subject matter. Manwani was also warned not to file further frivolous motions because sanctions would be imposed.

In January 1991, Manwani sued the IRS and the United States, in the U.S. District Court for the Eastern District of New York, seeking an injunction to prevent enforcement of tax levies against his accounts at several brokerage firms. In July of that year, Manwani notified the district court that the IRS had levied his accounts. Because the levy had already occurred, the IRS moved to dismiss the complaint as moot, and the district court granted this motion in March 1993. This Court affirmed the district court's judgment in 1994. *Manwani v. Internal Revenue Service and United States of America,* No. 93-6098 (2d Cir. January 3, 1994).

**\*2** In October 1994, Manwani filed the complaint in the case before us. In a Memorandum and Order filed in March 1995, the district court dismissed the action with prejudice, stating that "Manwani appears to be addicted to vexatious litigation." In April 1995, the court further ordered that Manwani pay Rule 11 sanctions. Fahnestock was awarded $8,112.50 for attorneys' fees incurred since January 1994 and the United States was awarded $1,376.16 for costs incurred. The district court also ordered that Manwani "shall not initiate any further action before any federal court within

the State of New York against these defendants relating to any of the matters he has been directed to arbitrate unless he obtains prior approval from a Magistrate Judge of this Court." On appeal, Manwani argues that the claims in the instant action are separate from those in the earlier actions, that his claims against the IRS and the United States are not moot, and that the district court abused its discretion by imposing sanctions. We review both the district court's dismissal of the complaint and its imposition of sanctions for abuse of discretion. *Sussman v. Bank of Israel,* 56 F.3d 450, 456 (2d Cir.1995).

We agree with the district court that Manwani is making the same claims against the IRS and United States that he litigated previously. Moreover, Manwani's claims against the United States and IRS fail because of sovereign immunity. *See United States v. Dalm,* 494 U.S. 596, 601-02, 608 (1990). He has not met the conditions under any of the potentially applicable waiver provisions, I.R.C. §§ 7422, 7432, 7433. In particular, plaintiff has not alleged that he has exhausted the required administrative remedies under § 7422 and § 7432(d), or that he has filed the necessary claim with the IRS for damages under § 7433. We therefore find no merit to plaintiff's claims against the government.

In addition, plaintiff has provided no reasonable explanation of how his present claims against the private parties differ from those he has previously asserted. The instant action simply seeks to avoid the district court's previous orders by filing a fresh complaint. The district court awarded Rule 11 sanctions only as to attorneys' fees and costs that occurred after Manwani threatened to relitigate his old claims. Despite Manwani's *pro se* status, given his history of frivolous and vexatious litigation, we cannot say that the district court abused its discretion in dismissing the lawsuit and awarding these sanctions. The district court also did not abuse its discretion in restricting Manwani's future access to the courts regarding this matter. *Safir v.*

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

99 F.3d 400, 1995 WL 732686 (C.A.2 (N.Y.)), 77 A.F.T.R.2d 96-447
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 99 F.3d 400, 1995 WL 732686 (C.A.2 (N.Y.)))**

*United States Lines,* 792 F.2d 19, 23 (2d Cir.1986) (holding that such restrictions are justified if the litigant "has a history of vexatious litigation [and] is likely to continue to abuse the judicial process").

We have examined all of Appellant's arguments and find them to be without merit. Accordingly, we affirm the decision of the district court.

C.A.2 (N.Y.),1995.
Manwani v. Brunelle
99 F.3d 400, 1995 WL 732686 (C.A.2 (N.Y.)), 77 A.F.T.R.2d 96-447

END OF DOCUMENT

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 1032857 (W.D.N.Y.)
**(Cite as: 2009 WL 1032857 (W.D.N.Y.))**



Only the Westlaw citation is currently available.

United States District Court,
W.D. New York.
Elijah BELL,
v.
LASACELI, et all, Defendants.

No. 08–CV–0278A.
April 15, 2009.

Elijah Bell, Napanoch, NY, pro se.

DECISION AND ORDER
DAVID G. LARIMERM, District Judge.

*INTRODUCTION*

**\*1** Plaintiff, Elijah Bell, currently an inmate at the Eastern Correctional Facility, who at the time of the events alleged in this action was an inmate at the Wende Correctional Facility, filed this *pro se* action seeking relief under 42 U.S.C. § 1983 (Docket No. 1) and the Americans with Disabilities Act, 42 U.S.C. 12131 *et seq* ., and was granted permission to proceed *in forma pauperis.* (Docket No.3).

Upon review of the original Complaint (Docket No. 1), pursuant to 28 U.S.C. § 1915e(2)(B) and 1915A, the Court found that, based on the manner in which the complaint was written, it was virtually impossible to read and understand and to determine whether the Plaintiff stated a claim upon which relief could be granted against any of the Defendants. The Court therefore directed Plaintiff to file an Amended Complaint that was legible and complied with Rules 8 and 10 of the Federal Rules of Civil Procedure, and logically and coherently set forth the factual bases of his claims. The Plaintiff was placed on notice that his failure to file an amended complaint as directed—*i.e.,* legibly and in compliance with Rules 8 and 10—, would result in the dismissal of this action pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A. (Docket No. 3, Order)

(citing *Simmons v. Abruzzo,* 49 F.3d 83, 88 (2d Cir.1995); *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988)).

Plaintiff filed a First Amended Complaint (Docket No. 4), which "completely ignored in all respects the instructions and directions provided in the Court's initial Order (Docket No. 3) and was twice as lengthy (at least two to three inches thick and un-paginated) and, again, mostly illegible and indiscernible." (Docket No. 8, Order at 2). The Court, rather than dismissing the Amended Complaint, pursuant to 28 U.S.C. § 1915e(2)(B) and 1915A, for again failing to comply with Rule 8 's "short and plain statement" rule, opted to provide the Plaintiff with an additional opportunity to amend his complaint to ameliorate its deficiencies and attempt to state a claim upon which relief could be granted. (Docket No. 8, Order at 3). *See Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185 (2d Cir.2008) (stating that *pro se* litigants' complaints should be viewed liberally and that said litigants should be given the chance to amend their complaints as needed). The Court again directed that the Plaintiff's next (Second) Amended Complaint must comply with Rules 8 and 10 and set forth a short and plain statement of the claims against the Defendants. (Docket No. 8, Order).

*SECOND AMENDED COMPLAINT*

Plaintiff has now filed a Second Amended Complaint (Docket No. 9), which, among other deficiencies, is prolix and mostly unintelligible. It is over 200 pages—100 plus pages longer than the First Amended Complaint—and purports to allege, as best the Court can discern, that the Defendants—employees and officials of the New York State Department of Correctional Services ("DOCS")—violated his constitutional rights stemming from a whole host of complaints or grievances by way of "harassment, retaliations, discriminations, assaults...." The Second Amended Complaint names forty-two Defendants, and is an inordinately lengthy, impenetrable wall of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

convoluted dates and grievances. To the extent the Court can even read and understand it, the Second Amended Complaint seems to allege that Plaintiff's mail, grievances, and grievance appeals are stolen and thrown away once he places them in the proper mailbox in retaliation for his recurring grievances against the staff at Wende.

**\*2** Moreover, despite heeding the Court's directions to paginate the complaint, and include separate paragraphs and relevant dates, the sheer volume and lack of any logical or coherent organization of the Second Amended Complaint makes it, in the Court's opinion, simply impossible for either the Defendants or the Court to discern what the claims are.[FN1] *See Salahuddin,* 861 F.2d at 42 (The purpose of Rule 8's "short and plain statement" rule is to provide defendant with fair notice of the claims against him and to enable him to answer the complaint and prepare for trial). A complaint fails to comply with Rule 8(a)(2) if it is "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin,* 861 F.2d at 42. The Second Amended Complaint (Docket No. 9) certainly fits this criteria, even more so than the first two complaints.

> FN1. For example, Plaintiff will often claim that his grievances concern the "same old discriminations and lies" made by Correctional Officers at the prison, yet, as far as the Court can determine, never signifies what the specific "lies" are.

While a court cannot dismiss a *pro se* complaint based solely on the plaintiff's failure to follow a court's specific instructions as to the complaint's "content and format," *Sealed Plaintiff,* 537 F.3d 185 at 191, it must be noted that the Second Amended Complaint (Docket No. 9), again, and emphatically fails to correct any of the fatal flaws of the original and First Amended Complaint. All it does is add page numbers and paragraphs, and provide a litany of dates for each of the over two hundred complaints and grievances made by

Plaintiff against the staff at Wende. The Second Amended Complaint, after two earlier failed attempts, remains a continuous and unending stream of mostly illegible and unitelligible writing that the Court is simply unable to decipher or to make any real sense of.[FN2]

> FN2. As addressed below, Plaintiff is no stranger to the litigation process, and just recently in an action filed in the Northern District of New York Plaintiff was, like here, directed to file an amended complaint on the basis that the original complaint was
>
> > nearly illegible ... and [did] not set forth a short and plain statement of the relief of the facts ... but, rather, [was] a listing of more than thirty grievances [plaintiff] filed at Eastern Correctional Facility since his arrival there on July 15, 2008 ... Notwithstanding the Court's careful review of these pleadings, which are exceedingly difficult to read, it is impossible for the Court to determine if plaintiff can state a claim against each of the named defendants for the violation of his constitutional or statutory rights.
>
> *Bell v. Fischer, Commissioner, et al.,* 9:09–CV–0008 (LEK) (Docket No. 7, Order, at 4). The Court also notes in said Order that several of plaintiff's grievances relate to his "mail being picked up by staff "while light off." (*Id.* at 4, n. 2). Some of the grievances set forth in the instant matter relate to the staff taking Plaintiff's mail and the lights being turned off.

Because the Second Amended Complaint again, after two previous attempts, fails to even remotely comply with Rule 8's short and plain statement rule, his complaint must dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) and 1915A. *See Simmons,* 49 F.3d at 88; *Salahuddin,* 861 F.2d at 42.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

It is well within a district court's discretion to deny leave to amend a prolix complaint if it is so voluminous and incomprehensible that no claims can be gleaned from it. *See Jones v. National Communications and Surveillance Networks,* No. 06–CV–1220, 266 Fed.Appx.31, 2008 WL 482599 (2d Cir.2008) (Summary Order) (stating that dismissing, pursuant to Rule 8, a plaintiff's 58 page, single-spaced complaint with 87 pages of attachments, alleging over twenty separate causes of action against more than 40 defendants was not an abuse of discretion). Plaintiff's Second Amended Complaint is similarly lengthy and rambling. *See also In re Merrill Lynch & Co., Inc. .,* 218 F.R.D. 76, 77–78 (S.D.N.Y.2003) ("When a complaint is not short and plain, or its averments are not concise and direct, 'the district court has the power, on motion or *sua sponte,* to dismiss the complaint or to strike such parts as are redundant or immaterial.' ") (quoting *Simmons,* 49 F.3d at 86).

**\*3** Again, while the Court is fully cognizant that "the dismissal of a *pro se* claim as insufficiently pled is appropriate only in the most unsustainable of cases[,]" *Boykin v. KeyCorp.,* 521 F.3d 202, 216 (2d Cir.2008), Plaintiff has been afforded two opportunities to amend his complaint and his most recent effort falls even further short of meeting Rule 8's pleading requirements than his earlier ones. Accordingly, the Second Amended Complaint must be dismissed. *See Higgins v. Plumbers and Gas Fitters, Local Union No. 1,* 08–CV–2521 (RRM)(LB), 2008 U.S. Dist. LEXIS 76610, at \*3 (E.D.N.Y., Sept. 18, 2008).

## MATERIAL MISREPRESENTATIONS

In addition to the issues discussed above related to Plaintiff's repeated failures to present a coherent, logical and understandable pleading, Plaintiff made a fatal error in all three complaints, subjecting this action to dismissal pursuant to Fed.R.Civ.P. 11. All three complaints submitted by plaintiff (Docket Nos. 1, 4 and 9), make materially false representations regarding Plaintiff's litigation history. Section 4B of the form complaint Plaintiff

had utilized for all three complaints in this action, asked Plaintiff: "Have you begun any other lawsuits in federal court which relate to your imprisonment?." Plaintiff answered "no" to this question each time. This answer is utterly and totally false.

While not mentioned by the Court in its first two Orders issued in this action, upon further review it has come to the Court's attention through its use of DOCS' Inmate Locator (http://nysdocslookup.docs.state.ny.us/GCA00P00/WIQ3/WINQ130) and the PACER electronic database, U.S. Party/Case Index (https://pacer.uspi.uscourts.gov/cgi-bin/dquery.pl), that Plaintiff, Elijah Bell, has had three different DIN numbers (Department Identification Numbers) assigned to him during three different periods of incarceration and has filed *at least* eight other cases in the United States District Courts in New York from 1989 until the filing of this action.[FN3] It should also be noted also that two of these cases were dismissed pursuant to U.S.C. § 1915(d), the predecessor to 28 U.S.C. § 1915(e), for failure to state a claim, as well as two others for failure to prosecute under Fed.R.Civ.P. 41(b).

> FN3. The following cases were filed while plaintiff was incarcerated by DOCS under DIN Number 94–A–5230: *Bell v. New York City Dept. of Corr.,* 94–CV–06562 (TPG); *Bell v. Officer, Female,* 94–CV–06478 (TPG); *Bell v. Rosario,* 94–CV–04593 (KMW)(NRB); *Bell v. New York City Dept. of Corr.,* 94–CV–05137 (RWS); *and Bell v. Warden, O.B.C.C. Corr. Fac.,* 94–CV–06125 (KMW). The following case was filed while plaintiff was incarcerated by DOCS under DIN Number 05–A–1436: *Bell v. Coughlin,* 89–CV–01403 (RJA). The other two were filed presumably while Plaintiff was detained in a Local Jail under identification number 4410101699: *Bell v. Captain William,* 01–CV–08712 (MBM);

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

and *Bell v. Captain William*, 01–CV–06656 (JG) (LB).

> The Docket Sheets in each of these cases note the DIN number of the plaintiff and the DIN numbers match the DIN numbers assigned to Elijah Bell by DOCS as noted on the New York State Department of Correctional Services Website.

Generally, information about a *pro se* litigant's previous cases is material since it allows the Court to review any one the following issues: (1) if any of the issues in the current case had been previously litigated and decided, (2) if the plaintiff had, prior to being granted in forma pauperis status, garnered "three strikes" for purposes of 28 U.S.C. § 1915(g), (3) if plaintiffhas a record of frivolous litigation sufficient to warrant a "bar order" (an order preventing plaintiff from litigating further in that court without first meeting certain preconditions), and (4) if the plaintiff's litigation experience is so extraordinary that it dispenses of the need to afford him the full measure of special solicitude that is normally otherwise afforded to *pro se* litigants due to their inexperience in legal matters. *See Ifill v. Patterson, et al.*, 9:08–CV–1022 (GLS)(GHL) (Docket No. 4, Order and Report and Recommendation (N.D.N.Y., October 9, 2008).

**\*4** While answering question 4B on the Form Complaint is not necessary to state a claim, Plaintiff, on three separate occasions, answered the question falsely and "swore" to the answer's truthfulness in each complaint. *See* Fed.R.Civ.P. 11 . Such a prevarication is an inexcusable misrepresentation to the Court and, in similar circumstances, other district courts have had no reservations about sanctioning *pro se* litigants for making such false statements.[FN4] Because Plaintiff has repeatedly misrepresented his litigation history to the Court—a significant one at that—, the Court finds that he has violated Fed.R.Civ.P. 11 and, therefore, this action will be dismissed, in the alternative, on that basis.

FN4. *See, e.g., Crum v. Dodrill*, 06–CV–0586, 2008 WL 2357074, at \*10 (N.D.N.Y. June 4, 2008) (Hurd, J., adopting, on *de novo* review, Report–Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *McChud v. Tureglio*, 07–CV–0650, 2008 WL 1772305, at \*16 (N.D.N.Y. Apr.15, 2008) (Mordue, C.J., adopting, on plain-error review, Report–Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Johnson v. Connolly*, 07–CV–0158, 2008 WL 724167, at \*12 (N.D.N.Y. March 17, 2008) (Kahn, J., adopting, on *de novo* review, Report–Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Standley v. Dennison*, 05–CV–1033, 2007 WL 2406909, at \*13–14 (N.D.N.Y. Aug.21, 2007) (Sharpe, J., adopting, on *de novo* review, Report–Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Muniz v. Goord*, 04–CV–0479, 2007 WL 2027912, at \*6, n. 32 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting, on plain-error review, Report–Recommendation premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint) (collecting cases). *See also Greer v. Schriro*, No. 06–15537, 2007 WL 4163413, at \*1 (9th Cir. Nov.26, 2007) (affirming district court dismissal that was based on this ground); *Mathis v. Smith*, No.

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

05–13124, 181 Fed. Appx 808, 809–10 (11th Cir. May 17, 2006) (affirming district court dismissal that was based partially on this ground); *Hood v. Tompkins,* No. 05–16358, 197 Fed. Appx 818, 819 (11th Cir. Aug.7, 2006) (affirming district court dismissal on this ground); *Hudson v. Fuller,* No. 02–1396, 59 Fed. Appx 855, 856–57 (7th Cir. Feb.25, 2003) (affirming district court dismissal that was based on this ground); *Albright v. Holden,* 99 F.3d 1145 (9th Cir.1996) (affirming district court th dismissal that was based on this ground); *accord, Dinkins v. Smalley,* 07–CV–0043, 2008 WL 160699, at *3, n. 3 (S.D.Ga. Jan, 14, 2008) (adopting, on *de novo* review, magistrate judge's recommendation that plaintiffs complaint should be dismissed on this ground) (citing cases).

### CONCLUSION

For the reasons set forth above, Plaintiff's Second Amended Complaint (Docket No. 9) is dismissed pursuant 28 U.S.C. § 1915(e) (2)(B) and 1915A. In the alternative, the Second Amended Complaint is dismissed on the basis that Plaintiff made repeated misrepresentations to the Court related to his prior litigation history.

Plaintiff is forewarned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals dismissed under the provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. *See* 28 U.S.C. § 1915(g).

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States,* 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21(1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

### ORDER

IT HEREBY IS ORDERED that this action is dismissed with prejudice; and

FURTHER, that leave to appeal to the Court of Appeals as a poor person is denied.

IT IS SO ORDERED.

W.D.N.Y.,2009.
Bell v. Lasaceli
Not Reported in F.Supp.2d, 2009 WL 1032857 (W.D.N.Y.)

END OF DOCUMENT



Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

H

Only the Westlaw citation is currently available.
United States District Court,

N.D. New York.
Efrain J. MUNIZ, Plaintiff,
v.
Glenn S. GOORD, et al., Defendants.
No. 9:04-CV-0479.

July 11, 2007.
Efrain J. Muniz, Gouverneur, NY, pro se.

Steven H. Schwartz, Esq., Assistant Attorney General, of Counsel, Hon. Andrew M. Cuomo, Attorney General for the State of New York, Albany, NY, for Defendants.

### DECISION and ORDER

THOMAS J. McAVOY, United States District Judge.

**\*1** This matter brought pursuant to 42 U.S.C. § 1983 was referred to the Hon. George H. Lowe, United States Magistrate Judge, for a Report-Recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).

No objections to the May 2, 2007 Report-Recommendation have been raised. After examining the record, this Court has determined that the Report-Recommendation is not subject to attack for plain error or manifest injustice. Accordingly, this Court adopts the Report-Recommendation for the reasons stated therein. It is, therefore, Ordered that:

(1) Defendants' motion for judgment on the pleadings is DENIED;

(2) Plaintiff's claims under the Ninth Amendment is DISMISSED;

(3) Plaintiff's claims under the Fourteenth Amendment are DISMISSED; and

(4) The claims against Defendant Taylor are DISMISSED.

IT IS SO ORDERED.

### REPORT-RECOMMENDATION

GEORGE H. LOWE, United States Magistrate Judge.

This action has been referred to me for Report and Recommendation by the Honorable Thomas J. McAvoy, Senior United States District Judge, pursuant to Local Rule 72.3(c) and 28 U.S.C. § 636(b). Efrain J. Muniz ("Plaintiff") commenced this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against three employees of the New York State Department of Correctional Services ("DOCS")-DOCS Commissioner Glenn S. Goord, DOCS Chief Medical Officer Dr. Lester Wright, and Gouverneur Correctional Facility ("Gouverneur C.F.") Superintendent Justin Taylor. (Dkt. No. 1.) Generally, Plaintiff alleges that Defendants violated his rights under the Eighth, Ninth and Fourteenth Amendments by denying him medical treatment for, and routine testing with regard to the progress of, his Hepatitis C medical condition because he refused, in or around October and November of 2003, to participate in the Residential Substance Abuse Treatment ("RSAT") Program at Gouverneur C.F. (*See generally* Dkt. No. 1 and Exs. A-D; Dkt. No. 29, Rebuttal Mem. of Law, ¶ 3.) Currently before the Court is Defendants' motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). (Dkt. No. 27.) For the reasons that follow, I recommend that Defendants' motion be denied, but that Plaintiff's Ninth Amendment claim and Fourteenth Amendment claim should be *sua sponte* dismissed pursuant to the Court's authority under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A, and Rule 12(h)(3) of the Federal Rules of Civil Procedure.

### I. STANDARD OF REVIEW

Rule 12(c) of the Federal Rules of Civil Procedure provides, in pertinent part: "After the pleadings are closed ... any party may move for judgment on the pleadings." Fed.R.Civ.P. 12(c). "In deciding a Rule 12(c) motion, [courts] apply the same standard as that applicable to a motion under Rule 12(b)(6)." [FN1]

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

FN1. *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.), *cert. denied,* 513 U.S. 816 (1994) (citations omitted); *accord, Patel v. Contemporary Classics of Beverly Hills,* 259 F.3d 123, 126 (2d Cir.2001) (citations omitted) ("The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim.").

A defendant may move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). To prevail on a motion to dismiss under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted," a defendant must show "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief," [FN2] or the defendant must show that the plaintiff's claim "fails as a matter of law." [FN3] Thus, a defendant may base a Rule 12(b)(6) motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2); [FN4] or (2) a challenge to the legal cognizability of the claim.[FN5]

FN2. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957) (citations omitted); *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002) ("[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.") (internal quotations and citation omitted).

FN3. *Phelps v. Kapnolis,* 308 F.3d 180, 187 (2d Cir.2002) (citing *Estelle v. Gamble,* 429 U.S. 97, 108, n. 16 [1976].)

FN4. *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v. Rem,* 39 B.R. 140, 143 (Bankr.S.D.N.Y.1984) ("The motion

under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello,* 55 F.R.D. 72, 74 (S.D.N.Y.1972) ("This motion under Fed.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.' ").

FN5. *See Swierkiewicz* 534 U.S. at 514 ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.... In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon,* 360 F.3d 73, 80 (2d Cir.2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas,* 308 F.3d 180, 187 (2d Cir.2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation ... fails as a matter of law.") (citation omitted); *Kittay v. Kornstein,* 230 F.3d 531, 541 (2d Cir.2000) (distinguishing between a failure to meet Rule 12[b] [6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig .,* 2005 U.S. Dist. LEXIS 6686 (S.D.N.Y. Apr. 20, 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim.") (citation omitted); *Util. Metal Research & Generac Power Sys.,* 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a] ); *accord, Straker v. Metro Trans. Auth.,* 331 F.Supp.2d 91,

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

101-102 (E.D.N.Y.2004); *Tangorre v. Mako's, Inc.,* 01 Civ. 4430, 2002 U.S. Dist. LEXIS 1658, *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion-one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

**\*2** Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Although Rule 8(a)(2) does not require a pleading to state the elements of a prima facie case,[FN6] it does require the pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." [FN7] The purpose of this rule is to "facilitate a proper decision on the merits." [FN8] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims." [FN9]

FN6. *See Swierkiewicz,* 534 U.S. at 511-512, 515.

FN7. *Dura Pharmaceuticals, Inc. v. Broudo,* 125 S.Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley,* 355 U.S. at 47); *see also Swierkiewicz,* 534 U.S. at 512 (quoting *Conley,* 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U .S. 163, 168 (1993) (quoting *Conley,* 355 U.S. at 47).

FN8. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514 (2002) (quoting *Conley,* 355 U.S. at 48).

FN9. *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y.1996) (McAvoy, J.), *aff'd,* 113 F.3d 1229 (2d Cir.1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential

authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.,* 335 F.3d 152, 156 (2d Cir.2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.,* 104 F.3d 355 [2d Cir.1996] ).

The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has rejected judicially established pleading requirements that exceed this liberal requirement. *See Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513-514 (2002) (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake."). However, even this liberal notice pleading standard "has its limits." [FN10]

FN10. 2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed.2003); *see, e.g., Dura Pharmaceuticals,* 125 S.Ct. at 1634-1635 (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord, Christopher v. Harbury,* 536 U.S. 403, 416-422 (2002), *Freedom Holdings v. Spitzer,* 357 F.3d 205, 234-235 (2d Cir.2004), *Gmurzynska v. Hutton,* 355 F.3d 206, 208-209 (2d Cir.2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz. See, e.g., Salvador v. Adirondack Park Agency of the State of N.Y.,* No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2] ). Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz,* of certain cases from within the Second Circuit interpreting Rule 8(a)(2). *See Khan v. Ashcroft,* 352 F.3d 521, 525 (2d Cir.2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS,* 244 F.3d 81 [2d Cir.2001],

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr,* 533 U.S. 289 [2001] ).

"In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor ." [FN11] "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*"[FN12] Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest arguments that they suggest." [FN13]

> FN11. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman,* 18 F.3d 147, 150 (2d Cir.1994).

> FN12. *Hernandez,* 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik,* 335 F.3d 195, 200 (2d Cir.2003) (citations omitted); *Vital v. Interfaith Med. Ctr.,* 168 F.3d 615, 619 (2d Cir.1999) (citation omitted).

> FN13. *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

Moreover, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." [FN14] However, "all normal rules of pleading are not absolutely suspended." [FN15] For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it." [FN16]

> FN14. *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir.2000) (internal quotation and citation omitted); *see also* Fed.R.Civ.P. 15(a) (leave to amend "shall be freely given when justice so requires"). Of course, granting a *pro se* plaintiff

an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading.

> FN15. *Stinson v. Sheriff's Dep't of Sullivan Cty.,* 499 F.Supp. 259, 262 & n. 9 (S.D.N.Y.1980) (citations omitted), *accord, Gil v. Vogilano,* 131 F.Supp.2d 486, 491 (S.D.N.Y.2001).

> FN16. *Cuoco,* 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 48 (2d Cir.1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

Finally, as with a Rule 12(b)(6) motion, Rule 12(c) motions are limited to the facts alleged in the complaint and must be converted into a motion for summary judgment if the court considers materials outside the pleadings. [FN17] Having said that, it should be emphasized that, on a motion to dismiss, the court may, without converting the motion to dismiss into a motion for summary judgment, consider (1) any documents relied on and/or referenced in the complaint (even if those documents are not attached to the complaint, if those documents are provided by defendants in their motion to dismiss), [FN18] and (2) any documents provided by the plaintiff in opposition to defendants' motion to dismiss, to the extent those documents are consistent with the allegations in the complaint.[FN19]

> FN17. *See* Fed.R.Civ.P. 12(c) ("If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.").

> FN18. *See Chambers v. Time Warner,* 282 F.3d

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

147, 153 & n. 3 (2d Cir.2002) (district court's consideration of certain contracts attached to defendant's motion to dismiss was appropriate where plaintiff relied on documents in drafting his complaint) [collecting cases]; *Levy v. Southbrook Int'l Invest., Ltd.,* 263, F.3d 10, 13, n. 3 (2d Cir.2001) (noting that "it was appropriate for the district court to refer to documents attached to the motion to dismiss since the documents were referred to in the complaint") [citation omitted]; *San Leandro Emergency Med. Group v. Philip Morris Co., Inc.,* 75 F.3d 801, 808 (2d Cir.1996) (a document that is "intergral" to the complaint may be considered by the district court on a motion to dismiss "despite the fact that the complaint only contains limited quotations from that document") [collecting cases]; *Harsco Corp. v. Segui,* 91 F.3d 337, 341, n. 1 (2d Cir.1996) ("This letter, though cited to and described in the complaint, was not attached to the complaint. We may nonetheless review the letter in its entirety [in deciding defendants' motion to dismiss].") [citation omitted]; *Cortec Indus., Inc. v. Sum Holding LP,* 949 F.2d 42, 48 (2d Cir.1991) ("When plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."); *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 762 (2d Cir.1991) ("We ... decline to close our eyes to the contents of the prospectus and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference.") [citations omitted].

FN19. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."

*Gadson v. Goord,* 96 Civ. 7544, 1997 WL 714878, *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia,* *Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004).

**II. ANALYSIS**

**A. Failure to Exhaust Administrative Remedies**

*3 Defendants argue that Plaintiff's action should be dismissed because his Complaint acknowledges that he failed to exhaust his available administrative remedies before filing suit in April of 2004. (Dkt. No. 27, Part 3.) Specifically, Defendants argue that Plaintiff's Complaint alleges that the "final result" of Plaintiff's Inmate Grievance Complaint regarding the matters in question (i.e., Grievance No. GOV-10351/03) was that the Gouverneur C.F. Inmate Grievance Resolution Committee's ("IGRC's") denial of that grievance was, on appeal, affirmed by Defendant Taylor. (*Id.*) Defendants argue that, through this allegation, Plaintiff implicitly concedes that he subsequently failed to appeal Defendant Taylor's decision to DOCS' Central Office Review Committee ("CORC"), as required by the Prison Litigation Reform Act of 1996. (*Id.*) Finally, Defendants argue that, because Plaintiff had been (at the time in question) an inmate within DOCS for 26 years, it is inconceivable that he was unaware of his right to appeal to CORC (which fact was, incidentally, stated on the written decision issued by Defendant Taylor). (*Id.*)

Liberally construed, Plaintiff's response asserts what is, in essence, a four-prong argument. First, he argues, it would have been "fruitless" (or futile) to appeal to CORC since Defendant Wright's policy pre-determined the outcome of any grievance regarding prison officials'

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

failure to provide Hepatitis C treatment due to the prisoner's failure to participate in a RSAT or ASAT (although Plaintiff concedes that on February 10, 2006, Defendant Wright ceased requiring such participation in a RSAT or ASAT). (Dkt. No. 29, Rebuttal Mem. of Law, ¶ 3.) Second, Plaintiff argues, he was not able to appeal to CORC due to the fact that he was suffering from the effects of Hepatitis C. (*Id.* at ¶ 3.) Third, he argues, he "reasonably" and "sincerely" believed that he was excused from having to appeal to CORC due to the health effects of his Hepatitis C condition (even if that belief was, ultimately, mistaken). (*Id.* at ¶¶ 4-5.) Fourth, he argues, any "technical mistakes" committed by him during the exhaustion process should be excused due to the special leniency that is to be afforded *pro se* litigants such as Plaintiff, who is "a layman in matters of law." (*Id.* at ¶¶ 1, 4-5.)

Defendants' reply asserts two arguments. First, argue Defendants, Plaintiff's response should be disregarded because it was filed and served between 15 and 17 days late, in violation of Local Rule 7.1(b)(1), (the "return date" of Defendants' motion being December 11, 2006, the date of filing of Plaintiff's response being December 8, 2006, and the date of service of Plaintiff's response being December 11, 2006). (Dkt. No. 28, Part 1.) Second, argue Defendants, Plaintiff's implication that his poor health precluded him from appealing Defendant Taylor's decision to CORC during the days following that decision (on November 26, 2003) is "disingenuous at best," given that Plaintiff's health was good enough for him to file a lengthy, coherent, and typed Complaint (complete with six exhibits) five months later, in April of 2004. (*Id.*)

**\*4** The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under § 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." [FN20] DOCS has available a well-established three-step grievance program:

FN20. 42 U.S.C. § 1997e.

First, an inmate is to file a complaint with the Grievance Clerk. An inmate grievance resolution committee ("IGRC") representative has seven working days to informally resolve the issue. If there is no resolution, then the full IGRC conducts a hearing and documents the decision. Second, a grievant may appeal the IGRC decision to the superintendent, whose decision is documented. Third, a grievant may appeal to the central office review committee ("CORC"), which must render a decision within twenty working days of receiving the appeal, and this decision is documented.

*White v. The State of New York,* 00-CV-3434, 2002 U.S. Dist. LEXIS 18791, at \*6 (S.D.N.Y. Oct 3, 2002) (citing N.Y. Comp.Codes R. & Regs. Tit. 7, § 701.7). Generally, if a prisoner has failed to follow each of these steps prior to commencing litigation, he has failed to exhaust his administrative remedies. [FN21]

FN21. *Rodriguez v. Hahn,* 209 F.Supp.2d 344, 347-48 (S.D.N.Y.2002); *Reyes v. Punzal,* 206 F.Supp.2d 431, 433 (W.D.N.Y.2002).

However, the Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *See Hemphill v. State of New York,* 380 F.3d 680, 686, 691 (2d Cir.2004). First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill,* 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should ... inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it ... or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* (citations omitted). Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* (citations and internal quotations omitted).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

Here, the parties' arguments raise several issues falling under Parts 1 and 3 of the above-described three-part test.[FN22] I note that no issue appears to exist under Part 2 of that test since (1) Defendants have preserved their affirmative defense of non-exhaustion by raising it in their Answer (Dkt. No. 16, Part 1, ¶ 16), and (2) no allegation (or evidence) exists that any Defendant engaged in conduct that hindered or prevented Plaintiff from being able to appeal to CORC sufficient to estop that Defendant from raising this defense (*see* Dkt. No. 29, Rebuttal Mem. of Law, ¶ 3 [arguing that it would have been "fruitless" to appeal to CORC, not that any Defendant took actions preventing Plaintiff from appealing to CORC] ).

> FN22. I reject Defendants' argument that the Court should disregard Plaintiff's response papers as late, because of (1) Defendants' failure to show prejudice as a result of the lateness, and (2) Plaintiff's special status as a *pro se* civil rights litigant (who was, during the time in which he was supposed to file his response papers, allegedly sick).

**\*5** The issue that falls under Part 1 of the above-described test is created by Plaintiff's argument that it would have been futile to appeal to CORC since Defendant Wright's policy pre-determined the outcome of any grievance regarding prison officials' failure to provide Hepatitis C treatment due to the prisoner's failure to participate in a RSAT or ASAT. I reject this argument for two reasons. First, Plaintiff confuses a prisoner's *ability* to appeal to CORC with a prisoner's *chances of success* during such an appeal. Simply because a prisoner might not stand a realistic chance of success during an appeal does not mean that the administrative appellate process is not "available" to the prisoner. (If so, then any prisoner with an unmeritorious or frivolous claim would not have the administrative appellate process "available" to him.) Second, Plaintiff concedes that on February 10, 2006, Defendant Wright ceased requiring such participation in a RSAT or ASAT. As a result, Plaintiff has alleged facts indicating that, in fact, it might not have been futile for him to appeal to CORC.

The issues that fall under Part 3 of the

above-described test are created by Plaintiff's remaining three arguments-(1) that he was not physically able to appeal to CORC due to the fact that he was suffering from the effects of Hepatitis C, (2) that he "reasonably" and "sincerely" believed that he was excused from having to appeal to CORC due to his Hepatitis C condition (even if that belief was, ultimately, mistaken), and (3) that any "technical mistakes" committed by him during the exhaustion process should be excused due to the special leniency that is to be afforded *pro se* litigants such as Plaintiff.

Taking the arguments out of order, I reject the second argument for three reasons. First, the test in question is not whether Plaintiff "sincerely" believed that he was excused from having to appeal to CORC due to his Hepatitis C condition but whether he "reasonably" believed he was so excused (i.e., the test is an objective one, not a subjective one). Second, Plaintiff does not allege any facts whatsoever indicating why he "reasonably" believed that he was excused from having to appeal to CORC due to his Hepatitis C condition. For example, Plaintiff does not allege any facts indicating that any New York State DOCS regulations were confusing.[FN23] Indeed, the regulation in question rather clearly provides that, if mitigating circumstances exist, a prisoner may request an exception to the time limit for filing an appeal to CORC (not that he be excused from having to file an appeal to CORC). *See* DOCS Directive No. 4040 § V(A)(1) (Aug. 22, 2003), codified at 7 N.Y.C.R.R. § 701.6(g) (2007) (formerly codified at 7 N .Y.C.R.R. § 701.7[a], which was repealed and amended on June 28, 2006). Third, Plaintiff's Complaint alleges facts indicating that he believed it necessary to file a grievance with the Gouverneur C.F. IGRC and to appeal the denial of that grievance to the Gouverneur C.F. Superintendent. Why would he not also believe it necessary to take the next step in the exhaustion process and appeal the Superintendent's decision to CORC? Simply stated, I can imagine no factual circumstances, consistent with the allegations of Plaintiff's Complaint (and his response papers), in which he reasonably believed that he was excused from having to appeal to CORC due to his Hepatitis C condition.

> FN23. *See Giano v. Goord,* 380 F.3d 670, 676, 678-679 & n. 9 (2d Cir.2004) (it was reasonable

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

for plaintiff to have raised his complaints through disciplinary appeals process rather than by filing a separate grievance because the relevant DOCS regulations permitted such conduct or were confusing, for example, being misinterpreted by "a learned federal district court judge not long ago"); *Hemphill v. New York Dep't of Corr. Servs.,* 380 F.3d 680, 690-691 (2d Cir.2004) (remanding to district court to determine, *inter alia,* whether the allegedly confusing nature of New York DOCS regulations justified plaintiff's failure to file a grievance in manner that DOCS officials now prescribe); *Johnson v. Testman,* 380 F.3d 691, 696-697 (2d Cir.2004) (remanding to district court to determine, *inter alia,* "whether ... the BOP grievance regulations were sufficiently confusing so that a prisoner like Johnson might reasonably have believed that he could raise his claim against Testman as part of his defense in disciplinary proceedings.").

**\*6** Moreover, I reject the third argument for two reasons. First, while special leniency might be sufficient to overcome a certain lack of specificity in a pleading and/or to excuse certain minor procedural mistakes, I am aware of no authority suggesting that it is sufficient to excuse a failure to comply with a federal statute such as the PLRA.[FN24] Second, special leniency is normally afforded *pro se* litigants because of their *inexperience* (or lack of familiarity with legal procedures or terminology).[FN25] However, here, Plaintiff has some experience,[FN26] especially when it comes to court actions in which he is alleged to have not exhausted his available administrative remedies prior to filing suit .[FN27] Moreover, I note that Plaintiff's papers in this action have been fairly good-being organized and cogent, and often being typed, supported by exhibits, affidavits, and memorandum of law. (*See* Dkt. Nos. 1, 2, 19, 23.) Indeed, Plaintiff knew enough about court procedure to apply for and receive both an order dismissing the current proceeding without prejudice and an order reopening the proceeding. (*See* Dkt. Nos. 19, 22, 23, 26.) Clearly, Plaintiff is a litigant of at least some level of experience and sophistication.[FN28] While I do not believe that Plaintiff's experience is so extensive that it warrants altogether *revoking* the special status normally afforded pro se civil rights litigants,[FN29] I believe that his

experience warrants somewhat *diminishing* his special status.[FN30] Moreover, I believe that this special leniency should be diminished as a sanction due to his apparent lack of candor with the Court. Specifically, Plaintiff apparently made a material misrepresentation to the Court in his Verified Complaint, wherein he made a sworn assertion that he had never "filed any other lawsuits in any state [or] federal court relating to [his] imprisonment" (Dkt. No. 1, ¶ 5[a] ), when, in fact, as of the date of the signing of his Complaint (April 28, 2004), Plaintiff had apparently done so.[FN31] Numerous cases exist from within the Third Circuit for sanctioning *pro se* litigants for abusing the litigation process, as well as some cases from within the Second Circuit.[FN32]

> **FN24.** *See Houze v. Segarra,* 217 F.Supp.2d 394, 395-396 (S.D.N.Y.2002) (dismissing prisoner's complaint for failure to exhaust administrative remedies, as required by PLRA, after acknowledging that prisoner, as *pro se* litigant, is afforded special leniency); *see also Smith v. Keane,* 96-CV-1629, 1998 U.S. Dist. LEXIS 3702, at \*6, 9-18 (S.D.N.Y.1998) (dismissing prisoner's complaint for failure to comply with applicable statute of limitations, after acknowledging that prisoner, as pro se litigant, is afforded special leniency); *Turner v. Johnson,* 177 F.3d 390, 391-392 (5th Cir.1999) ("[N]either a party's unfamiliarity with the legal process nor his lack of representation during the applicable filing period merits [excusing the party's failure to comply with a statute of limitations].").

> **FN25.** *See Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994) (affording special leniency to "a *pro se* litigant unfamiliar with the requirements of the legal system"); *Salahuddin v. Coughlin,* 781 F.2d 24, 29 (2d Cir.1986) (liberally construing *pro se* complaints benefits persons "unfamiliar with the lawyerlike method of pleading claims"); *Edwards v. Selsky,* 04-CV-1054, 2007 WL 748442, at \*2-3 (N.D.N.Y. March 6, 2007) (M o r d u e , C . J . , a d o p t i n g Report-Recommendation of Lowe, M.J.) (stating that pro se litigants' "lack of [experience] is the

reason for conferring the special status upon *pro se* litigants"); *see also Korsunskiy v. Gonzales, 461 F.3d 847, 850 (7th Cir.2006); Int'l Bus. Prop. v. ITT Sheraton Corp.,* 65 F.3d 175, at *2 (9th Cir.1995); *Collins v. Cundy,* 603 F.2d 825, 827 (10th Cir.1979); *Zaczek v. Fauquier County,* 764 F.Supp. 1071, 1078 (E.D.Va.1991); *Life Science Church v. U.S.,* 607 F.Supp. 1037, 1039 (N.D.Ohio 1985); John C. Rothermich, *Ethical and Procedural Implications of 'Ghostwriting' for Pro Se Litigants: Toward Increased Access to Civil Justice,* 67 FORDHAM L.REV. 2687, 2697 (Apr.1999) [citing cases].

FN26. Specifically, it appears that Plaintiff has filed between two and eight state court actions or appeals. *See, infra,* note 31 of this Report-Recommendation.

FN27. *Muniz v. David,* No. 96428, Memorandum and Order at 2 (N.Y.App.Div., 3d Dept., March 24, 2005) (indicating that defendants in that action had argued before the trial court, at some point before the issuance of its judgment on June 4, 2004, that Plaintiff had "failed to exhaust the administrative remedies through the available grievance procedures or establish any exceptions thereto").

FN28. When assessing a *pro se* litigant's experience for purposes of deciding whether or not to revoke his special status, courts sometimes examine things such as (1) the quality of his pleadings (e .g., whether they are typed, crafted in accordance with the relevant rules of civil procedure, etc.), (2) the cogency of his motion papers (e.g., whether they are supported by applicable legal authorities, filed in accordance with court rules, etc.), and (3) the ultimate success of any motions, actions or appeals he has previously filed (or the failure of any motions he has previously opposed). *See, e. g., Edwards,* 2007 WL 748442, at *3; *Rolle v. Garcia,* 04-CV-0312, 2007 WL 969576 (N.D.N.Y. March 28, 2007) (McAvoy, J.), adopting Report-Recommendation, 2007 WL 672679, at

*4 (N.D.N.Y. Feb. 28, 2007) (Lowe, M.J.); *Sledge v. Kooi,* 04-CV-1311, 2007 WL 951447, at *3-4 (N.D.N.Y. Feb. 12, 2007) (McAvoy, J., adopting Report-Recommendation of Lowe, M.J.); *Saunders v. Ricks,* 03-CV-0598, 2006 WL 3051792, at *2 & n. 11 (N.D.N.Y. Oct. 18, 2006) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.); *see also Farmer v. Haas,* 990 F.2d 319, 322 (7th Cir.1993); *Ab v. Sekendur,* 03-CV-4723, 2004 WL 2434220, at *5 (N.D.Ill. Oct. 28, 2004). Such a practice seems appropriate in that it is consistent with the standard often used by courts to decide whether or not to appoint counsel to a *pro se* litigant. *See, e.g., Hodge v. Police Officers,* 802 F.2d 58, 61 (2d Cir.1986); *see also Tabron v. Grace,* 6 F.3d 147, 155-156 (3d Cir.1993); *Farmer,* 990 F.2d at 322; *Terrell v. Brewer,* 935 F.2d 1015, 1017 (9th Cir.1991); *Long v. Shillinger,* 927 F.2d 525, 527 (10th Cir.1991).

FN29. *See, e.g., Johnson v. Eggersdorf,* 8 Fed. App'x 140, 143 (2d Cir.2001) (unpublished opinion), *aff'g,* 97-CV-0938, Decision and Order (N.D.N.Y. filed May 28, 1999) (Kahn, J.), *adopting,* Report-Recommendation, at 1, n. 1 (N.D.N.Y. filed Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson,* 201 F.3d 431, *2 (2d Cir.1999) (unpublished opinion), *aff'g,* 97-CV-1727, Decision and Order (N.D.N.Y. filed June 11, 1999) (McAvoy, J.), *adopting,* Report-Recommendation (N.D.N.Y. filed April 28, 1999) (Smith, M.J.); *Davidson v. Flynn,* 32 F.3d 27, 31 (2d Cir.1994); *Gill v. Pidvlpchak,* 02-CV-1460, 2006 WL 3751340, at *2 (N.D.N.Y. Dec. 19, 2006) (Scullin, J., adopting report-recommendation of Treece, M.J.); *Davidson v. Talbot,* 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *20 (N.D.N.Y. March 31, 2005) (Treece, M.J.), *adopted by* 2006 U.S. Dist. LEXIS 47554 (N.D.N.Y. July 5, 2006) (Scullin, J.); *Gill v. Riddick,* 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 (N.D.N.Y. March 31, 2005) (Treece, M.J.); *Yip v. Bd. of Tr. of SUNY,* 03-CV-0959, 2004 WL 2202594, at *3

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

(W.D.N.Y. Sept. 29, 2004); *Davidson v. Dean,* 204 F.R.D. 251, 257 & n. 5 (S.D.N.Y.2001); *Santiago v. C.O. Campisi,* 91 F.Supp.2d 665, 670 (S.D.N.Y.2000); *McGann v. U.S.,* 98-CV-2192, 1999 WL 173596, at *2 (S.D.N.Y. March 29, 1999); *Hussein v. Pitta,* 88-CV-2549, 1991 WL 221033, at *4 (S.D.N.Y. Oct. 11, 1991).

FN30. My review of the applicable law suggests that courts need not treat special status as an "all or nothing" benefit but may confer special status to a semi-experienced *pro se* litigant on a "sliding scale," treating the litigant more leniently than represented litigants but not as leniently as wholly inexperienced *pro se* litigants. *See, e.g., Kilkenny v. Greenberg Traurig, LLP,* 05-CV-6578, 2006 23399, at *18 (S.D.N.Y. Apr. 26, 2006) ("While plaintiff's *pro se* status does not insulate him from the imposition of sanctions under Rule 11 ..., *pro se* litigants are held to a more lenient standard, and the application of Rule 11 may be determined on a sliding scale according to the litigant's level of sophistication.") [citations and internal quotation marks omitted]; *Holsey v. Bass,* 519 F.Supp. 395, 407 n. 27 (D.Md.1981) ("This Court is of the opinion that it is proper to apply a sliding scale of liberality in construing a *pro se* complaint.") [citation omitted]; *see also* Julie M. Bradlow, *Procedural Due Process Rights of Pro se Civil Litigants,* 55 U. CHI. L.REV.. 659, 660 (Spring 1988) (asserting that, in *pro se* civil litigation, a "sliding scale" of due process should be employed by judges to ensure that they give "such leniency and special attention as the particular case merits").

FN31. *See, e.g., Efrain Muniz v. David,* No. 96428, Memorandum and Order (N.Y.App.Div., 3d Dept., March 24, 2005) (stating, "This proceeding was commenced in October 2003"). I note that the plaintiff in the aforementioned prisoner action-"Efraim Muniz" of Governor C.F.-bears the same name of record as the prisoner of record bearing New York State

DOCS Inmate Number 80-A-0959, the inmate number claimed by Plaintiff in the current action. I note also that, according to the New York DOCS Inmate Locator System, no other prisoner in the New York State DOCS has ever been named "Efraim Muniz." In other words, either the DOCS Inmate Locator System contains a typographical error for Plaintiff's record entry or Plaintiff answers to both names.

Finally, I note that it is unclear whether several other prisoner actions and appeals were also brought by Plaintiff or the one other "Efrain Muniz" who has ever been incarcerated by the New York State DOCS. *See, e.g., Efrain J. Muniz v. N.Y.S. Div. of Parole,* 695 N.Y.S.2d 619 (N.Y.App.Div., 3d Dept., 1999); *Efrain Muniz v. Selsky,* No. 91967, Memorandum and Judgment (N.Y.App.Div., 3d Dept., Jan. 9, 2003); *Efrain J. Muniz v. Goord,* 820 N.Y.S.2d 368 (N.Y.App.Div., 3d Dept., 2006).

FN32. *See, e.g., Iwachiw v. N.Y.S. Dept. of Motor Veh.,* 396 F.3d at 528-529 & n. 1 (2d Cir.2005); *McDonald v. Head Crim. Ct. Supervis. Officer,* 850 F.2d 121, 124-125 (2d Cir.1988); *Mora v. Bockelmann,* 03-CV-1217, 2007 WL 603410, at *4 (N.D.N.Y. Feb. 22, 2007) (Mordue, C.J., adopting Report-Recommendation of Homer, M.J.); *Mitchell v. Harriman,* 04-CV-0937, 2007 WL 499619, at *3 (N.D.N.Y. Feb. 13, 2007) (Sharpe, J., adopting Report-Recommendation of Homer, M.J.); *Tibbetts v. Robinson,* 97-CV-2682, 2005 WL 2146079, at *7 (D.Conn. Aug. 31, 2005).

Finally, I am skeptical of the first arguments for two reasons. First, Plaintiff does not allege specific facts indicating why he was not able (presumably, physically able) to file an appeal to CORC during the days or weeks following November 26, 2003. (For example, was it because he did not have the strength to think clearly or write, or was it because he did not have access to paper and legal materials for some reason? Was he housed in the prison's infirmary during this time period, and how long was he allegedly incapacitated?) I note that Plaintiff's

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

allegation that he was unable to file an appeal to CORC during the days or weeks following November 26, 2003, appears undermined somewhat by Exhibit C to his Complaint, which indicates that, on January 12, 2004 (approximately six weeks after November 26, 2003), Plaintiff was in a good enough physical condition to write a letter to a DOCS official (apparently Brenda Tracy, a Nurse Administrator), regarding a doctor's decision to not prescribe vitamins for Plaintiff. (Dkt. No. 1, Ex. C.) FN33 Second, Plaintiff does not allege facts indicating why he did not, or was not able to, request an exception to the time limit for filing an appeal to CORC due to the "mitigating circumstances" created by his illness (and then, if necessary, file a separate grievance regarding any denial of that request for an exception). *See* DOCS Directive No. 4040 § V(A)(1) (Aug. 22, 2003), codified at 7 N.Y.C.R.R. § 701.6(g) (2007) (formerly codified at 7 N.Y.C.R.R. § 701.7[a], which was repealed and amended on June 28, 2006).

> FN33. However, I am not persuaded by Defendants' argument that Plaintiff must have been physically able to file an appeal to CORC during the days or weeks following November 26, 2003, because Plaintiff was able to file his Complaint in this action approximately five months later, in April of 2004. Setting aside the issue of whether the Court's consideration of such a fact would arguably necessitate converting Defendants' motion into a motion for summary judgment, I note the lengthy time lag between the two dates.

*7 However, despite this skepticism about Plaintiff's first argument, I am reluctant to recommend dismissal of Plaintiff's Complaint based on a failure to exhaust his administrative remedies. Specifically, I am mindful of how low the pleading standard is under Rules 8 and 12 of the Federal Rules of Civil Procedure and various Supreme Court precedents. *See, supra,* Part I of this Report-Recommendation. Moreover, I am mindful that, within the Second Circuit, "it may often be premature to decide the issue of exhaustion in the context of a motion to dismiss the complaint under Rule 12(b)(6); rather it may be necessary for the Court to address the issue at the summary judgment stage." *Flynn v. Wright,* 05-CV-1488, 2007 WL 241332, at *12 (S.D.N.Y. Jan. 26, 2007) (citing *Ziemba v. Wezner,* 366 F.3d 161, 163-164 [2d Cir.2004] [vacating magistrate judge's granting of defendants' motion for judgment on pleadings for failing to exhaust administrative remedies] ).FN34 Finally, I am mindful that, recently, the Supreme Court expressed disapproval of dismissing prisoner actions for failure to exhaust administrative remedies under a Rule 12(b)(6) analysis. *See Jones v. Block,* 127 S.Ct. 910, 919-923 (2007).

> FN34. *Accord, Larkins v. Selsky,* 04-CV-5900, 2006 WL 3548959, at *8 (S.D.N.Y. Dec. 6, 2006).

More specifically, I find that Plaintiff's assertions, in his response papers, FN35 that, in light of his Hepatitis C condition, he "did the very best [his] ability and health allowed [him] at the time" to grieve the matters at issue in this action "plausibly alleges" the existence of "special circumstances" justifying his failure to appeal to CORC (as permitted by *Hemphill v. State of New York,* 380 F.3d 680 [2d Cir.2004] and its companion cases), and meets-albeit *barely*-the "modest" pleading threshold set by Rules 8 and 12 of the Federal Rules of Civil Procedure and Supreme Court precedent such as *Jones v. Block,* 127 S.Ct. 910 (2007), *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506 (2002), and *Leatherman v. Tarrant County Narc. and Intell. Coord. Unit,* 507 U.S. 163 (1993). I note that at least one analogous case exists, from within the Second Circuit, in which a prisoner was found to have plausibly alleged special circumstances due to physical incapacitation. FN36

> FN35. "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum." *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney,* 824 F.2d 192, 195 [2d Cir.1987] [considering plaintiff's response affidavit on motion to dismiss] ). Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.' " *Donhauser v. Goord,* 314 F.Supp.2d 119, 212 (N.D.N.Y.2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds,* 317 F.Supp.2d 160 (N.D.N.Y.2004). This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading-which a motion to dismiss is not. *See Washington v. James,* 782 F.2d 1134, 1138-39 (2d Cir.1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) (citations omitted).

FN36. *See Barad v. Comstock,* 03-CV-0736, 2005 U.S. Dist. LEXIS 38418, at *10-11, 16-17, 21-23 (W.D.N.Y. June 30, 2005) (prisoner plausibly alleged special circumstances where he alleged, in part, that time to commence grievance had lapsed while he had been hospitalized due to kidney stones, although his complaint was ultimately dismissed under a summary judgment analysis); *cf. Bonilla v. Janovick,* 01-CV-3988, 2005 U.S. Dist. LEXIS 325, at *6-7 (E.D.N.Y. Jan. 7, 2005) ("[P]laintiff's hospitalization and physical injuries may have prevented the filing of an administrative complaint, [necessitating] further discovery and additional depositions ... to determine whether the admitted failure to exhaust should nevertheless be excused [due to the 'special circumstances' exception]."

As a result, I recommend that the Court deny Defendants' motion for judgment on the pleadings. However, I express no opinion about whether Plaintiff would or would not be able to survive a motion for *summary judgment* (premised on a failure to exhaust administrative remedies), should Defendants choose to file such a motion.FN37

FN37. *See Barad,* 2005 U.S. Dist. LEXIS 38418, at *21, 22, 25 (during summary judgment

analysis, accepting defendants' argument that plaintiff "was physically able to file a grievance" during his fourteen-day hospitalization due to kidney stones because "plaintiff testified that he was able to write [and attend a program] during his hospitalization," although ultimately finding that plaintiff had established other special circumstances, i.e., [1] that the correctional facility's medical staff had erroneously told plaintiff that his time to commence a grievance had lapsed, and [2] that plaintiff had relied on Second Circuit law at that time [in 1999] which did not require exhaustion of administrative remedies for such deliberate indifference claims); *cf. Goldenberg v. St. Barnabas Hosp.,* 01-CV-7435, 2005 U.S. Dist. LEXIS 2730, at *11-16 (S.D.N.Y. Feb. 22, 2005) (granting defendants' motion for summary judgment, in part because plaintiff adduced no evidence in support of his claim that administrative remedies were not "available" to him [i.e., during an analysis of Part 1 of the Second Circuit's three-part test] insofar as he was, during the relevant time period, in a physically and mentally debilitated state).

**B. Duty of Court to *Sua Sponte* Analyze Pleading Sufficiency of Claims**

An analysis of Defendants' failure-to-exhaust argument does not end the Court's review of Plaintiff's claims. This is because, under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A, and Rule 12(h)(3) of the Federal Rules of Civil Procedure, the Court has the authority (and duty) to *sua sponte* dismiss prisoner claims that fail to state a claim upon which relief may be granted or over which the Court lacks subject-matter jurisdiction. As a result, I will analyze Plaintiff's Eight, Ninth and Fourteenth Amendment claims for such defects.

**1. Failure to State a Claim Under the Eighth Amendment**

**\*8** Generally, to state a claim of inadequate medical care under the Eighth Amendment, Plaintiff must allege facts indicating two things: (1) that he had a sufficiently serious medical need; and (2) that Defendants were deliberately indifferent to that serious medical need.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

*Estelle v. Gamble,* 429 U.S. 97, 104 (1976); *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998). With regard to the second element, an official is "deliberately indifferent" (in other words, he has a sufficiently culpable state of mind) when he " 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Johnson v. Wright,* 412 F.3d 398, 403 (2d Cir.2005) (citing *Farmer v. Brennan,* 511 U.S. 825, 837 [1994] ).

Here, I will assume for the sake of argument that Plaintiff's Hepatitis C condition constitutes a "serious medical need" for purposes of the Eighth Amendment.[FN38] The more problematic question is whether Plaintiff has alleged facts indicating the sort of culpable state of mind (which is akin to criminal recklessness) necessary for liability under the Eighth Amendment.[FN39] It is arguable that he has simply alleged facts indicating a disagreement with his prescribed medical care, or perhaps negligence, neither of which is enough to make a defendant liable to a plaintiff under the Eighth Amendment.[FN40] For example, the documents relied on and/or referenced in Plaintiff's Complaint (and thus deemed part of Plaintiff's Complaint) *appear* to suggest that, at the time that Plaintiff was denied medical treatment for Hepatitis C, it was not deemed medically appropriate for Plaintiff to engage in such medical treatment without having first enrolled in the RSAT Program, due to the increased risk of liver damage.[FN41] If those documents more clearly indicated a medical rationale for the requirement that Plaintiff participate in the RSAT Program, I would be inclined to conclude that Plaintiff has not alleged facts indicating a violation of the Eighth Amendment.[FN42] However, they do not do so. Moreover, again, I am mindful of how low the pleading standard is under Rules 8 and 12 of the Federal Rules of Civil Procedure. I am also mindful that, unlike many similar cases brought by prisoners, Plaintiff alleges not only a denial of treatment for Hepatitis C but of *testing* for the progress of that disease (which denial appears to be more difficult to justify under the rationale apparently proffered in Exhibits A2 and D to Plaintiff's Complaint).

**FN38.** Some district court decisions from within the Second Circuit have found Hepatitis C to not constitute a serious medical need. *See Vondette*

*v. McDonald,* 00-CV-6874, 2001 WL 1551152, at *4-5 (S.D.N.Y. Dec. 5, 2001). However, it appears that the bulk of district court decisions addressing the issue finds that Hepatitis C is a serious medical need. *See Rose v. Alvees,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *10 n. 11 (S.D.N.Y. Jan. 23, 2004); *Johnson v. Wright,* 234 F.Supp.2d 352, 360 (S.D.N.Y.2002); *McKenna v. Wright,* 01-CV-6571, 2002 WL 338375, at *6 (S.D.N.Y. March 4, 2002); *Carbonell v. Goord,* 99-CV-3208, 2000 WL 760751, at *9 (S.D.N.Y. June 13, 2000).

**FN39.** " 'The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.' " *Evering v. Rielly,* 98-CV-6718, 2001 U.S. Dist. LEXIS 15549, at *30 (S.D.N.Y. Sept. 28, 2001) (quoting *Hemmings v. Gorczyk,* 134 F.3d 104, 108 [2d Cir.1998] ).

**FN40.** *See Estelle,* 429 U.S. at 106 ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Chance,* 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

**FN41.** (*See* Dkt. No. 1, Ex. A2 ["[T]he facility is acting in accordance with direction provided by

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

Central Office. The policy regarding Hepatitis C Treatment/Substance Abuse Treatment is addressed in a memorandum dated January 8, 2002, which states in part: 'Any inmate who is diagnosed with Hepatitis C and requires medical treatment must have completed or have enrolled in an Alcohol Substance Abuse Treatment, Comprehensive Alcohol Substance Abuse Treatment, Resident Substance Abuse Treatment, or Pre-Treatment Workbook Program ....''; Dkt. No. 1, Ex. D ["While to the general public hepatitis is simply a disease, the medical community views it more accurately as an inflamed liver.... Most new [Hepatitis C] infections are caused by intravenous drug use. Disease progression can ... occur more often if the person drinks alcohol."].)

FN42. *See Richards v. Goord,* 04-CV-1433, 2007 WL 201109, at *13-15 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting Report-Recommendation of Lowe, M.J.) (finding that prisoner's Eighth Amendment claim regarding denial of hepatitis treatment based on his non-participation in ASAT program should be dismissed on alternative ground that he failed to state a claim, given that the documents attached to prisoner's complaint and response papers clearly indicated that, at the time, it was not deemed medically appropriate for the plaintiff to engage in medical treatment for Hepatitis C without having first enrolled in the ASAT Program).

As a result, I am unable to conclude, without briefing by Defendants, that Plaintiff has failed to state an Eighth Amendment claim under the circumstances.[FN43] However, again, I express no opinion about whether Plaintiff would or would not be able to survive a motion for summary judgment (with respect to his Eighth Amendment claim), should Defendants choose to file such a motion. *See Lewis v. Alves,* 01-CV-0640, 2004 WL 941532, at *5-7 (W.D.N.Y. March 22, 2004) (granting defendants' motion for summary judgment with respect to plaintiff's Eighth Amendment claim alleging, *inter alia,* deliberate indifference to plaintiff's Hepatitis C condition due to his

non-participation in an ASAT Program), *accord, Rose v. Alves,* 01-CV-0648, 2004 WL 2026481, at *6 (W.D.N.Y. Sept. 9, 2004); *cf. Graham v. Wright,* 01-CV-9613, 2003 U.S. Dist. LEXIS 16106, at *6 n. 5 (S.D.N.Y. Sept. 12, 2003) ("[W]e note that the portions of the [DOCS] Guidelines challenged by plaintiff, namely that the inmate must successfully complete an ASAT program ... [before he receives treatment for Hepatitis C] appear to be highly rational in light of the fact that severe side effects, including death, may result from treatment of the patient with interferon-apha-2b or 2a combined with ribavirin for 6-12 months, and that active substance abuse, including alcohol abuse, can cause life threatening consequences to a patient following the treatment regimen.").

FN43. *See McKenna v. Wright,* 386 F.3d 432, 434, 437 (2d. Cir.2004) (prisoner stated Eighth Amendment claim for deliberate indifference to his Hepatitis C based on his non-participation in ASAT program where he alleged that he had been deemed "ineligible for the [ASAT] program because of his medical condition"); *Hatfield v. Goord,* 04-CV-0159, 2007 WL 700961, at *1-5 (N.D.N.Y. Feb. 28, 2007) (Mordue, C.J., adopting Report-Recommendation of Homer, M.J.) (prisoner stated First, Eighth and Fourteenth Amendment claims with regard to defendants' failure to treat his Hepatitis C condition based on his non-participation in RSAT/ASAT program where he alleged that his participation in the RSAT/ASAT program would have violated his religious beliefs); *Hilton v. Wright,* 235 F.R.D. 40, 44-55 (N.D.N.Y. Feb. 27, 2006) (Hurd, J.) (assuming, without specifically deciding, that class of prisoners had stated a viable Section 1983 claim regarding DOCS' policy of requiring prisoners' participation in ASAT/RSAT program before prisoners could receive treatment for Hepatitis C).

**2. Failure to State a Claim Under the Ninth Amendment**

**\*9** In one paragraph of his Complaint, Plaintiff states that his claims are brought pursuant to, *inter alia,* the Ninth Amendment. (Dkt. No. 1, ¶ 7.3.) The Ninth

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

Amendment to the United States Constitution provides, "The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. Const., amend. IX. I can find no factual allegations in Plaintiff's Complaint in support of his Ninth Amendment claim. (*See generally* Dkt. Nos. 1, 29.) Moreover, I can imagine no set of factual circumstances, consistent with the allegations of Plaintiff's Complaint, in which such a Ninth Amendment claim might exist. (*Id.*) As explained by the Tenth Circuit:

> Although the Ninth Amendment may restrict the activities of state actors ..., it has never been applied to prevent the denial of medical treatment to prisoners. Indeed, such an application would be inappropriate, since the Ninth Amendment only protects those rights not otherwise 'enumerat[ed] in the Constitution,' ... and the Eighth Amendment specifically addresses itself to the mistreatment of prisoners ....

*Parnisi v. Colo. State Hosp.,* No. 92-1368, 1993 U.S.App. LEXIS 9128, at *2, 4-5 (10th Cir. Apr. 15, 1993) (affirming district court's dismissal of prisoner's Ninth Amendment claim, arising from allegedly inadequate medical treatment) [citations omitted].[FN44] Courts from within the Second Circuit have similarly recognized the inapplicability of the Ninth Amendment to prisoner Section 1983 claims. *See, e.g., Diaz v. City of New York,* 00-CV-2944, 2006 U .S. Dist. LEXIS 93923, at *21-22 (E.D.N.Y. Dec. 29, 2006) ("[T]he Ninth Amendment is a rule of construction, not one that protects any specific right, and so no independent constitutional protection is recognized which derives from the Ninth Amendment and which may support a § 1983 cause of action.") [internal quotation marks and citations omitted], *accord, Bussey v. Phillips,* 419 F.Supp.2d 569, 586 (S.D.N.Y.2006) [citing case].

FN44. *See also Taylor v. Roper,* 83 F. App'x 142, 143 (8th Cir.2003) ("We also agree with the district court that [the prisoner's] allegations [regarding inadequate medical care] provided no basis for his claims ... under ... the Ninth Amendment ...."); *Gaberhart v. Chapleau,* No. 96-5050, 1997 U.S.App. LEXIS 6617, at *3 (6th Cir. Apr. 4, 1997) (dismissing the prisoner's Ninth Amendment claim, arising from allegedly inadequate medical treatment, in part because he "never explained the theory or at least the basis" for that claim).

The closest that Plaintiff comes to stating such a Ninth Amendment claim is when he alleges that prisoners are being "denied mental health services for Hapatitis C[-]related mental *disturbances* and anxiety," and that their "confidentiality is being violated." (Dkt. No. 1, "Third Cause of Action." [emphasis in original].) Granted, the Ninth Amendment may, in some circumstances, protect the disclosure of some personal information about a prisoner (e.g., regarding the prisoner's mental health). *See Morgan v. Rowland,* 01-CV-1107, 2006 U.S. Dist. LEXIS 11081, at *28-30 (D.Conn. March 17, 2006) (granting defendants' motion for summary judgment with regard to such a claim); *see also Hunnictt v.. Armstrong,* 152 F. App'x 34 (2d Cir.2005) (unpublished decision), *vacating in part,* 305 F.Supp.2d 175, 187-188 (D.Conn.2004) (presuming that prisoner was not alleging Ninth Amendment right-to-privacy claim).[FN45] However, again, Plaintiff asserts no factual allegations in support of this claim. For example, Plaintiff does not allege any facts indicating that Defendants discussed Plaintiff's private or personal mental health issues in front of other prisoners and DOCS employees, violating either the psychiatrist-patient privilege or psychologist-patient privilege. (*See generally* Dkt. Nos. 1, 29.) Furthermore, Plaintiff's request to litigate this matter as a class action was denied; thus, it is not relevant, *for purposes of this action,* what wrongs *other* prisoners (especially unidentified prisoners) are allegedly experiencing.

FN45. *But see In re State Police Litig.,* 888 F.Supp. 1235, 1258 (D.Conn.1995) ("[T]he [Ninth] [A]mendment does not guarantee any constitutional right [e.g., to privacy] sufficient to support a claim under 42 U.S.C. § 1983.") [citations omitted], *appeal dismissed,* 88 F.3d 127 (2d Cir.1996); *accord, Salaman v. Bullock,* 05-CV-0876, 2007 U.S. Dist. LEXIS 24432, at *8 (D.Conn. March 15, 2007), *DeLeon v. Little,* 981 F.Supp. 728, 734 (D.Conn.1997), *Doe v. Episcopal Soc. Servs.,* 94-CV-9171, 1996 U.S. Dist. LEXIS 1278, at *3-4 (S.D.N.Y. Feb. 7, 1996).

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

**\*10** As a result, I recommend that the Court *sua sponte* dismiss Plaintiff's Ninth Amendment claim. However, because the defect in any right-to-privacy claim that Plaintiff may be attempting to assert appears to be formal instead of substantive, I recommend that the dismissal of any such right-to-privacy claim be conditioned on Plaintiff's failure to file an Amended Complaint asserting a viable Ninth Amendment claim within 30 days of the Court's final decision on Defendants' motion.

**3. Failure to State a Claim Under the Fourteenth Amendment**

In one paragraph of his Complaint, Plaintiff states that his claims are brought pursuant to, *inter alia,* the Fourteenth Amendment. (Dkt. No. 1, ¶ 7.3.) Assuming that Plaintiff is not simply relying on the Fourteenth Amendment to the extent that it makes the Eighth Amendment applicable to the states, the only conceivable claims to which Plaintiff might be referring are his claims for a violation of his right to substantive due process, procedural due process, or equal protection. However, I can find no factual allegations in support of any such claims.

Specifically, to the extent that Plaintiff is attempting to assert some sort of due process claim, any such claim is in actuality an Eighth Amendment claim, which I have already analyzed above in Part II.B.1. of this Report-Recommendation. *See* [Hatzfield v. Goord,](#) 04-CV-0159, 2007 WL 700961, at *1 n. 3 (N.D.N.Y. Feb. 28, 2007) (Mordue, C.J., adopting Report-Recommendation of Homer, M.J.) (citing [Pabon v. Wright,](#) 459 F.3d 241, 253 [2d Cir.2006] ); [McKenna v. Wright,](#) 01-CV-6571, 2002 WL 338375, at *9 (S.D.N.Y. March 4, 2002).

To the extent that Plaintiff is attempting to assert some sort of equal protection claim, he has not alleged facts indicating that either (1) he was treated differently than other people in similar circumstances or (2) the unequal treatment was the result of intentional and purposeful discrimination. *See, e.g.,* [Verley,](#) 2004 WL 526740, at *20-21; [McKenna,](#) 2002 WL 338375, at *10-12. Furthermore, to the extent that Plaintiff is somehow implicitly alleging that he was treated differently than persons suffering from [cancer](#) or AIDS, I note that, as stated earlier, the exhibits to Plaintiff's own Complaint appear to suggest that, at the time that Plaintiff was denied medical treatment for [Hepatitis C,](#) he was being denied such treatment because of the possible damage such treatment would do to his liver (which was already being affected by [Hepatitis C](#)) if he was currently abusing alcohol or drugs.[FN46]

[FN46.](#) *See, supra,* note 41 of this Report-Recommendation.

As a result, I recommend that the Court *sua sponte* dismiss Plaintiff's Fourteenth Amendment claim. However, because the defect in any equal protection claim that Plaintiff may be attempting to assert appears to be formal instead of substantive, I recommend that the dismissal of any such equal protection claim be conditioned on Plaintiff's failure to file an Amended Complaint asserting a viable equal protection claim within 30 days of the Court's final decision on Defendants' motion.

**4. Lack of Personal Involvement**

**\*11** " '[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [§ 1983.](#)' " [Wright v. Smith,](#) 21 F.3d 496, 501 (2d Cir.1994) (quoting [Moffitt v. Town of Brookfield,](#) 950 F.2d 880, 885 [2d Cir.1991] ).[FN47] In order to prevail on a cause of action under [42 U.S.C. § 1983](#) against an individual, a plaintiff must show some tangible connection between the alleged unlawful conduct and the defendant.[FN48] If the defendant is a supervisory official, such as a DOCS Commissioner or correctional facility superintendent, a mere "linkage" to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of *respondeat superior* ) is insufficient to show his or her personal involvement in that unlawful conduct.[FN49] In other words, supervisory officials may not be held liable merely because they held a position of authority.[FN50] Rather, supervisory personnel may be considered "personally involved" only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring.[FN51]

FN47. *Accord, McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087 (1978).

FN48. *See Bass v. Jackson,* 790 F.2d 260, 263 (2d Cir.1986).

FN49. *Polk County v. Dodson,* 454 U.S. 312, 325 (1981); *Richardson v. Goord,* 347 F.3d 431, 435 (2d Cir.2003); *Wright,* 21 F.3d at 501; *Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir.1985).

FN50. *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996).

FN51. *Richardson,* 347 F.3d at 435; *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir.1995); *Wright,* 21 F.3d at 501; *Williams v. Smith,* 781 F.2d 319, 323-24 (2d Cir.1986) [citations omitted].

Here, liberally construed, Plaintiff's Complaint alleges that Defendant Goord (the DOCS Commissioner) and Defendant Wright (the DOCS Chief Medical Officer) approved and allowed the current policy of forced participation in RSAT prior to receiving treatment for Hepatitis C. (Dkt. No. 1, ¶ 6; Dkt. No. 29, Rebuttal Mem. of Law, ¶¶ 2-3.) More specifically, Plaintiff has alleged that Defendants Goord and Wright created an unconstitutional policy, or at least knowingly allowed such a policy to continue. (*Id.*) For these reasons, I am unable to conclude, without briefing by Defendants, that Plaintiff has failed to allege facts indicating the personal involvement of Defendants Goord and Wright in the constitutional violation(s) alleged. *See, e.g., Hatzfield,* 2007 WL 700961, at *3.

However, the same cannot be said of Plaintiff's allegations against Defendant Taylor. Plaintiff alleges that Defendant Taylor (the Gouverneur C.F. Superintendent) violated his constitutional rights when he affirmed the

IGRC's denial of Plaintiff's grievance and upheld the policy of forced participation in RSAT before receiving treatment for Hepatitis C. (Dkt. No. 1, ¶ 4.b. & Exs. A, A1, A2.) Two problems exist with regard to Plaintiff's claim(s) against Defendant Taylor.

First, the documents attached to Plaintiff's Complaint (and thus incorporated into that Complaint, *see* Fed.R.Civ.P. 10[c] ) indicate that it was not Defendant Justin Taylor but someone else (either a deputy superintendent or an acting superintendent) who personally affirmed the IGRC's denial of Plaintiff's grievance. (Dkt. No. 1, Ex. A.2.) It is well-established that when a "supervisory official like [a] ... prison [s]uperintendent receives letters or similar complaints from an inmate and does not personally respond, the supervisor is not personally involved and hence not liable." *Walker v. Pataro,* 99-CV-4607, 2002 WL 664040, at *12 (S.D.N.Y. Apr. 23, 2002), *accord, Hatzfield,* 2007 WL 700961, at *3; *Ramos v. Artuz,* 00-CV-0149, 2001 WL 840131, at *8 (S.D.N.Y. July 25, 2001). "Thus, receipt of the grievance alone, without more, cannot suffice to allege personal involvement." *Hatzfield,* 2007 WL 700961, at *3.

*12 Second, even if Defendant Taylor had personally affirmed the IGRC's decision, a fair reading of the Complaint reveals that Plaintiff is alleging that the policy of denying medical treatment for Hepatitis C was DOCS-wide rather than Gouverneur C.F.-specific. (Dkt. No. 1, ¶ 6; Dkt. No. 29, Rebuttal Mem. of Law, ¶¶ 2-3.) "There can be, therefore, no claim that [the superintendent] either created the policy [denying medical treatment for Hepatitis C] or allowed it to continue as there is no allegation that he had the power to create or to terminate the policy." *Hatzfield,* 2007 WL 700961, at *3; *see also Verley v. Goord,* 02-CV-1182, 2004 WL 526740, at *15-16 (S.D.N.Y. Jan. 23, 2004) (dismissing similar claims against prison superintendent based on failure to allege facts indicating personal involvement).

The closest Plaintiff comes to involving Defendant Taylor in the constitutional violations alleged is when Plaintiff alleges not simply a denial of medical *treatment* for his Hepatitis C condition but a denial of routine *testing* with regard to the progression of his Hepatitis C condition.

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

Specifically, Plaintiff alleges that "routine testing" of Hepatitis C in "numerous inmates" is not being conducted by "medical staff" at Gouverneur C.F. (Dkt. No. 1, ¶ 6[c].) The problem is that this claim of a denial-of-testing was not raised in the grievance that Plaintiff appealed to Defendant Taylor. (Dkt. No. 1, Ex. A.) Thus, there are no factual allegations indicating that Defendant Taylor either knew of the practice in question or that he allowed it to continue. However, it is conceivable to me that Plaintiff *might* be able to assert such factual allegations. *See, e.g. Johnson v. Wright,* 234 F.Supp.2d 352, 364 (S.D.N.Y.2002).

As a result, I recommend that Plaintiff's claims against Defendant Taylor should be dismissed *sua sponte.* However, because the defect in Plaintiff's denial-of-testing claim against Defendant Taylor appears to be formal instead of substantive, I recommend that the dismissal of that claim be conditioned on Plaintiff's failure to file an Amended Complaint asserting a viable such claim within 30 days of the Court's final decision on Defendants' motion.

**5. Mootness**

Plaintiff alleges that, on February 10, 2006 (after Plaintiff filed his Complaint on April 28, 2004), DOCS and Defendant Wright rescinded its policy of requiring that a prisoner participate in an ASAT/RSAT Program before receiving treatment for Hepatitis C. (Dkt. No. 29, Rebuttal Mem. of Law, ¶ 3.) [FN52]

> FN52. I note that, apparently, this decision was made as early as October 13, 2005. *See Hilton v. Wright,* 235 F.R.D. 40, 46 (N.D.N.Y. Feb. 27, 2006) (Hurd, J.) ("On October 13, 2005, Dr. Wright rescinded the ASAT/RSAT requirement from the [DOCS' Hepatitis C Primary Care Practice] Guideline.").

This factual allegation is significant because, as the relief requested in this action, Plaintiff seeks (1) "[i]mmediate comprehensive multi-vitamin treatment for those inmates that find themselves lacking the strength or ability to function normally due to their illness," (2) "[i]mmediate laboratory testing, and liver biopsies, etc ... to determine [the] stage of their illness, in accordance with Federal and National Institute of Health [requirements]," and (3) "[u]pon determination and diagnosis of the illness, immediate commencement of treatment without regard[ ] to any DOCS recommended program(s)." (Dkt. No. 1, ¶ 9.) In other words, Plaintiff does not seek any monetary relief. (*Id.*)

**\*13** However, given the Court's rather recent decision in *Wilton v. Wright,* 235 F.R.D. 40 (N.D.N.Y.2006) (Hurd, J.) (rejecting defendants' mootness argument under somewhat analogous circumstances), I am unable to conclude, without briefing by Defendants (and perhaps the occurrence of discovery), that Plaintiff's claims are mooted by DOCS' apparent decision to rescind the policy in question after Plaintiff filed suit. I note, however, that *Wilson* appears to be somewhat distinguishable from the instant case in that (1) the claims in *Wilson* were brought by a class of prisoners (including prisoners affected in the future), unlike the claims in this case, and (2) in any event, the plaintiffs in *Wilson* sought monetary relief in addition to injunctive relief, unlike Plaintiff in this case.

**ACCORDINGLY,** it is

**RECOMMENDED** that Defendants' motion for judgment on the pleadings (Dkt. No. 27) be ***DENIED;*** and it is

**RECOMMENDED** that, pursuant to the Court's authority under 28 U.S.C. § 1915(e)(2)(B)(ii), 28 U.S.C. § 1915A, and Rule 12(h)(3) of the Federal Rules of Civil Procedure,

(1) Plaintiff's Ninth Amendment inadequate-medical-care claim and Fourteenth Amendment due process claim be *sua sponte* ***DISMISSED*** **with prejudice,**

(2) Plaintiff's Ninth Amendment right-to-privacy claim and his Fourteenth Amendment equal protection claim be *sua sponte* ***DISMISSED*** **conditionally,** i.e., if Plaintiff fails to file an Amended Complaint asserting a viable right-to-privacy claim and equal protection claim within 30 days of the Court's final decision on Defendants' motion, and

(3) Plaintiff's claims against Defendant Taylor be *sua*

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)

(Cite as: 2007 WL 2027912 (N.D.N.Y.))

*sponte* **DISMISSED with prejudice** except his denial-of-testing claim, which should be *sua sponte* **DISMISSED conditionally,** i.e., on the same condition as mentioned above; and it is

**ORDERED** that the Clerk's Office shall serve a copy of this Report-Recommendation on Plaintiff at his address of record in this action (listed in the caption on the docket) and **also** at his apparent actual current address (listed on Dkt. No. 27, Part 4, Dkt. No. 28, and Dkt. No. 29, Part 2, as well as on the New York State DOCS Inmate Locator System), which is **Oneida Correctional Facility, 6100 School Road, Rome, N.Y. 13440.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Sec'y of Health and Human Svcs.,* 892 F.2d 15 [2d Cir.1989] ); 28 U.S.C. § 636(b); Fed.R.Civ.P. 6(a), 6(e), 72.

N.D.N.Y.,2007.

Muniz v. Goord
Not Reported in F.Supp.2d, 2007 WL 2027912 (N.D.N.Y.)
END OF DOCUMENT

© 2011 Thomson Reuters. No Claim to Orig. US Gov. Works.



255 Fed.Appx. 285, 2007 WL 4163413 (C.A.9 (Ariz.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 255 Fed.Appx. 285, 2007 WL 4163413 (C.A.9 (Ariz.)))**

C

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Ninth Circuit Rule 36-3. (Find CTA9 Rule 36-3)

United States Court of Appeals,
Ninth Circuit.
Loretta GREER, Plaintiff—Appellant,
v.
Dora B. SCHRIRO, Director; et al.,
Defendants—Appellees.

No. 06–15537.
Submitted Nov. 13, 2007 FN*.

FN* Because the panel unanimously finds this case suitable for decision without oral argument, Greer's request for oral argument is denied. *See* Fed. R.App. P. 34(a)(2).

Filed Nov. 26, 2007.

Loretta Greer, Goodyear, AZ, pro se.

Appeal from the United States District Court for the District of Arizona, James A. Teilborg, District Judge, Presiding. D.C. No. CV–05–04245–JAT.

Before: TROTT, W. FLETCHER, and CALLAHAN, Circuit Judges.

MEMORANDUM FN**

FN** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

**\*1** Arizona state prisoner Loretta Greer appeals

pro se from the district court's judgment dismissing her 42 U.S.C. § 1983 as a sanction for misrepresentations in her complaint and her application to proceed in forma pauperis. We have jurisdiction under 28 U.S.C. § 1291. We review for abuse of discretion a dismissal pursuant to the district court's inherent power, *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir.2006), and we affirm.

The district court did not abuse its discretion in dismissing Greer's action, because she failed to adequately explain misrepresentations, made under penalty of perjury, about her previous litigation history. *See id. at 961* ("We do not disturb the district court's choice of sanction unless we have a definite and firm conviction that the district court committed a clear error of judgment ...") (internal citations and quotations omitted); *see also Anheuser–Busch, Inc. v. Natural Beverage Distribs.,* 69 F.3d 337, 348 (9th Cir.1995) (district court's credibility determinations are entitled to special deference).

**AFFIRMED.**

C.A.9 (Ariz.),2007.
Greer v. Schriro
255 Fed.Appx. 285, 2007 WL 4163413 (C.A.9 (Ariz.))

END OF DOCUMENT



Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

**C** Only the Westlaw citation is currently available.

United States District Court, N.D. New York.
Jerome WALDO, Plaintiff,
v.
Glenn S. GOORD, Acting Commissioner of New York
State Department of Correctional Services; Peter J.
Lacy, Superintendent at Bare Hill Corr. Facility;
Wendell Babbie, Acting Superintendent at Altona Corr.
Facility; and John Doe, Corrections Officer at Bare Hill
Corr. Facility, Defendants.
**No. 97-CV-1385 LEK DRH.**

Oct. 1, 1998.

Jerome Waldo, Plaintiff, pro se, Mohawk Correctional
Facility, Rome, for Plaintiff.

Hon. Dennis C. Vacco, Attorney General of the State of
New York, Albany, Eric D. Handelman, Esq., Asst.
Attorney General, for Defendants.

DECISION AND ORDER

KAHN, District J.

**\*1** This matter comes before the Court following a
Report-Recommendation filed on August 21, 1998 by the
Honorable David R. Homer, Magistrate Judge, pursuant to
28 U.S.C. § 636(b) and L.R. 72.3(c) of the Northern
District of New York.

No objections to the Report-Recommendation have been
raised. Furthermore, after examining the record, the Court
has determined that the Report-Recommendation is not
clearly erroneous. See Fed.R.Civ.P. 72(b), Advisory

Committee Notes. Accordingly, the Court adopts the
Report-Recommendation for the reasons stated therein.

Accordingly, it is

ORDERED that the Report-Recommendation is
APPROVED and ADOPTED; and it is further

ORDERED that the motion to dismiss by defendants is
GRANTED; and it is further

ORDERED that the complaint is dismissed without
prejudice as to the unserved John Doe defendant pursuant
to Fed.R.Civ.P. 4(m), and the action is therefore dismissed
in its entirety; and it is further

ORDERED that the Clerk serve a copy of this order on all
parties by regular mail.

IT IS SO ORDERED.
HOMER, Magistrate J.

REPORT-RECOMMENDATION AND ORDER FN1

FN1. This matter was referred to the undersigned
pursuant to 28 U.S.C. § 636(b) and
N.D.N.Y.L.R. 72.3(c).

The plaintiff, an inmate in the New York Department of
Correctional Services ("DOCS"), brought this pro se
action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that
while incarcerated in Bare Hill Correctional Facility
("Bare Hill") and Altona Correctional Facility ("Altona"),
defendants violated his rights under the Eighth and
Fourteenth Amendments.FN2 In particular, plaintiff alleges
that prison officials maintained overcrowded facilities
resulting in physical and emotional injury to the plaintiff

© 2010 Thomson Reuters. No Claim to Orig. US Gov.
Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

and failed to provide adequate medical treatment for his injuries and drug problem. Plaintiff seeks declaratory relief and monetary damages. Presently pending is defendants' motion to dismiss pursuant to Fed.R.Civ.P. 12(b). Docket No. 18. For the reasons which follow, it is recommended that the motion be granted in its entirety.

FN2. The allegations as to Bare Hill are made against defendants Goord, Lacy, and Doe. Allegations as to Altona are made against Goord and Babbie.

I. Background

Plaintiff alleges that on August 21, 1997 at Bare Hill, while he and two other inmates were playing cards, an argument ensued, and one of the two assaulted him. Compl., ¶ 17. Plaintiff received medical treatment for facial injuries at the prison infirmary and at Malone County Hospital. *Id.* at ¶¶ 18-19. On September 11, 1997, plaintiff was transferred to Altona and went to Plattsburgh Hospital for x-rays several days later. *Id.* at ¶ 21.

Plaintiff's complaint asserts that the overcrowded conditions at Bare Hill created a tense environment which increased the likelihood of violence and caused the physical assault on him by another inmate. *Id.* at ¶¶ 10-11. Additionally, plaintiff contends that similar conditions at Altona caused him mental distress and that he received constitutionally deficient medical treatment for his injuries. *Id.* at ¶¶ 21-22. The complaint alleges that Altona's lack of a drug treatment program and a dentist or specialist to treat his facial injuries constitutes cruel and unusual punishment under the Eighth and Fourteenth Amendments. *Id.* at ¶¶ 22, 27-28.

II. Motion to Dismiss

**\*2** When considering a Rule 12(b) motion, a court must assume the truth of all factual allegations in the complaint and draw all reasonable inferences from these facts in favor of the plaintiff. *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir.1996). The complaint may be dismissed only when "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely, but that is not the test." *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995) (citations omitted). This standard receives especially careful application in cases such as this where a pro se plaintiff claims violations of his civil rights. *Hernandez v. Coughlin,* 18 F.3d 133, 136 (2d Cir.), *cert. denied,* 513 U.S. 836, 115 S.Ct. 117, 130 L.Ed.2d 63 (1994).

III. Discussion

A. Conditions of Confinement

Defendants assert that plaintiff fails to state a claim regarding the conditions of confinement at Bare Hill and Altona. For conditions of confinement to amount to cruel and unusual punishment, a two-prong test must be met. First, plaintiff must show a sufficiently serious deprivation. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citing *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *Rhodes v. Chapman,* 452 U.S. 347, 348 (1981)(denial of the "minimal civilized measure of life's necessities"). Second, plaintiff must show that the prison official involved was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and that the official drew the inference. *Farmer,* 511 U.S. at 837.

1. Bare Hill

In his Bare Hill claim, plaintiff alleges that the overcrowded and understaffed conditions in the dormitory-style housing "resulted in an increase in tension, mental anguish and frustration among prisoners, and dangerously increased the potential for violence." Compl.,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

¶ 11. Plaintiff asserts that these conditions violated his constitutional right to be free from cruel and unusual punishment and led to the attack on him by another prisoner. The Supreme Court has held that double-celling to manage prison overcrowding is not a per se violation of the Eighth Amendment. *Rhodes,* 452 U.S. at 347-48. The Third Circuit has recognized, though, that double-celling paired with other adverse circumstances can create a totality of conditions amounting to cruel and unusual punishment. *Nami v. Fauver,* 82 F.3d 63, 67 (3d Cir.1996). While plaintiff here does not specify double-celling as the source of his complaint, the concerns he raises are similar. Plaintiff alleges that overcrowding led to an increase in tension and danger which violated his rights. Plaintiff does not claim, however, that he was deprived of any basic needs such as food or clothing, nor does he assert any injury beyond the fear and tension allegedly engendered by the overcrowding. Further, a previous lawsuit by this plaintiff raised a similar complaint, that double-celling and fear of assault amounted to cruel and unusual punishment, which was rejected as insufficient by the court. *Bolton v. Goord,* 992 F.Supp. 604, 627 (S.D.N.Y.1998). The court there found that the fear created by the double-celling was not "an objectively serious enough injury to support a claim for damages." *Id.* (citing *Doe v. Welborn,* 110 F.3d 520, 524 (7th Cir.1997)).

**\*3** As in his prior complaint, plaintiff's limited allegations of overcrowding and fear, without more, are insufficient. *Compare Ingalls v. Florio,* 968 F.Supp. 193, 198 (D.N.J.1997) (Eighth Amendment overcrowding claim stated when five or six inmates are held in cell designed for one, inmates are required to sleep on floor, food is infested, and there is insufficient toilet paper) *and Zolnowski v. County of Erie,* 944 F.Supp. 1096, 1113 (W.D.N.Y.1996) (Eighth Amendment claim stated when overcrowding caused inmates to sleep on mattresses on floor, eat meals while sitting on floor, and endure vomit on the floor and toilets) *with Harris v. Murray,* 761 F.Supp. 409, 415 (E.D.Va.1990) (No Eighth Amendment claim when plaintiff makes only a generalized claim of overcrowding unaccompanied by any specific claim concerning the adverse effects of overcrowding). Thus, although overcrowding could create conditions which might state a violation of the Eighth Amendment, plaintiff has not alleged sufficient facts to support such a finding here. Plaintiff's conditions of confinement claim as to Bare

Hill should be dismissed.

2. Altona

Plaintiff also asserts a similar conditions of confinement claim regarding Altona. For the reasons discussed above, plaintiff's claim that he suffered anxiety and fear of other inmates in the overcrowded facility (Compl., ¶¶ 21-22) is insufficient to establish a serious injury or harm.

Plaintiff's second claim regarding Altona relates to the alleged inadequacies of the medical treatment he received. The government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The two-pronged *Farmer* standard applies in medical treatment cases as well. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998). Therefore, plaintiff must allege facts which would support a finding that he suffered a sufficiently serious deprivation of his rights and that the prison officials acted with deliberate indifference to his medical needs. *Farmer,* 511 U.S. at 834.

Plaintiff alleges that the medical treatment available at Altona was insufficient to address the injuries sustained in the altercation at Bare Hill. Specifically, plaintiff cites the lack of a dentist or specialist to treat his facial injuries as an unconstitutional deprivation. Plaintiff claims that the injuries continue to cause extreme pain, nosebleeds, and swelling. Compl., ¶¶ 22 & 26. For the purposes of the Rule 12(b) motion, plaintiff's allegations of extreme pain suffice for a sufficiently serious deprivation. *See Hathaway v. Coughlin,* 99 F.3d 550, 553 (2d Cir.1996).

Plaintiff does not, however, allege facts sufficient to support a claim of deliberate indifference by the named defendants. To satisfy this element, plaintiff must demonstrate that prison officials had knowledge of facts from which an inference could be drawn that a "substantial risk of serious harm" to the plaintiff existed and that the officials actually drew the inference. *Farmer,* 511 U.S. at 837. Plaintiff's complaint does not support, even when liberally construed, any such conclusion. Plaintiff offers

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

no evidence that the Altona Superintendent or DOCS Commissioner had any actual knowledge of his medical condition or that he made any attempts to notify them of his special needs. Where the plaintiff has not even alleged knowledge of his medical needs by the defendants, no reasonable jury could conclude that the defendants were deliberately indifferent to those needs. *See Amos v. Maryland Dep't of Public Safety and Corr. Services,* 126 F.3d 589, 610-11 (4th Cir.1997), *vacated on other grounds,*524 U.S. 935, 118 S.Ct. 2339, 141 L.Ed.2d 710 (1998).

**\*4** Plaintiff's second complaint about Altona is that it offers "no type of state drug treatment program for the plaintiff." Compl., ¶ 22. Constitutionally required medical treatment encompasses drug addiction therapy. *Fiallo v. de Batista,* 666 F.2d 729, 731 (1st Cir.1981); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 760-61 (3d Cir.1979). As in the *Fiallo* case, however, plaintiff falls short of stating an Eighth Amendment claim as he "clearly does not allege deprivation of essential treatment or indifference to serious need, only that he has not received the type of treatment which he desires." *Id.* at 731. Further, plaintiff alleges no harm or injury attributable to the charged deprivation. Plaintiff has not articulated his reasons for desiring drug treatment or how he was harmed by the alleged deprivation of this service. *See Guidry v. Jefferson County Detention Ctr.,* 868 F.Supp. 189, 192 (E.D.Tex.1994) (to state a section 1983 claim, plaintiff must allege that some injury has been suffered).

For these reasons, plaintiff's Altona claims should be dismissed.

### B. Failure to Protect

Defendants further assert that plaintiff has not established that any of the named defendants failed to protect the plaintiff from the attack by the other inmate at Bare Hill. Prison officials have a duty "to act reasonably to ensure a safe environment for a prisoner *when they are aware* that there is a significant risk of serious injury to that prisoner." *Heisler v. Kralik,* 981 F.Supp. 830, 837 (S.D.N.Y.1997) (emphasis added); *see also Villante v. Dep't of Corr. of City of N.Y.,* 786 F.2d 516, 519 (2d

Cir.1986). This duty is not absolute, however, as "not ... every injury suffered by one prisoner at the hands of another ... translates into constitutional liability." *Farmer,* 511 U.S. at 834. To establish this liability, *Farmer's* familiar two-prong standard must be satisfied.

As in the medical indifference claim discussed above, plaintiff's allegations of broken bones and severe pain from the complained of assault suffice to establish a "sufficiently serious" deprivation. *Id.* Plaintiff's claim fails, however, to raise the possibility that he will be able to prove deliberate indifference to any threat of harm to him by the Bare Hill Superintendent or the DOCS Commissioner. Again, plaintiff must allege facts which establish that these officials were aware of circumstances from which the inference could be drawn that the plaintiff was at risk of serious harm and that they actually inferred this. *Farmer,* 511 U.S. at 838.

To advance his claim, plaintiff alleges an increase in "unusual incidents, prisoner misbehaviors, and violence" (Compl., ¶ 12) and concludes that defendants' continued policy of overcrowding created the conditions which led to his injuries. Compl., ¶ 10. The thrust of plaintiff's claim seems to suggest that the defendants' awareness of the problems of overcrowding led to knowledge of a generalized risk to the prison population, thus establishing a legally culpable state of mind as to plaintiff's injuries. Plaintiff has not offered any evidence, however, to support the existence of any personal risk to himself about which the defendants could have known. According to his own complaint, plaintiff first encountered his assailant only minutes before the altercation occurred. Compl., ¶ 17. It is clear that the named defendants could not have known of a substantial risk to the plaintiff's safety if the plaintiff himself had no reason to believe he was in danger. *See Sims v. Bowen,* No. 96-CV-656, 1998 WL 146409, at *3 (N.D.N.Y. Mar.23, 1998)(Pooler, J.)("I conclude that an inmate must inform a correctional official of the basis for his belief that another inmate represents a substantial threat to his safety before the correctional official can be charged with deliberate indifference"); *Strano v. City of New York,* No. 97-CIV-0387, 1998 WL 338097, at *3-4 (S.D.N.Y. June 24, 1998) (when plaintiff acknowledged attack was "out of the blue" and no prior incidents had occurred to put defendants on notice of threat or danger, defendants could not be held aware of any substantial risk

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)
(Cite as: 1998 WL 713809 (N.D.N.Y.))

of harm to the plaintiff). Defendants' motion on this ground should, therefore, be granted.

### IV. Failure to Complete Service

**\*5** The complaint names four defendants, including one "John Doe" Correctional Officer at Bare Hill. Defendants acknowledge that service has been completed as to the three named defendants. Docket Nos. 12 & 13. The "John Doe" defendant has not been served with process or otherwise identified and it is unlikely that service on him will be completed in the near future. *See* Docket No. 6 (United States Marshal unable to complete service on "John Doe"). Since over nine months have passed since the complaint was filed (Docket No. 1) and summonses were last issued (Docket entry Oct. 21, 1997), the complaint as to the unserved defendant should be dismissed without prejudice pursuant to Fed.R.Civ.P. 4(m) and N.D .N.Y.L.R. 4.1(b).

### V. Conclusion

WHEREFORE, for the reasons stated above, it is

RECOMMENDED that defendants' motion to dismiss be GRANTED in all respects; and

IT IS FURTHER RECOMMENDED that the complaint be dismissed without prejudice as to the unserved John Doe defendant pursuant to Fed.R.Civ.P. 4(m) and N.D.N.Y.L.R. 4.1(b); and it is

ORDERED that the Clerk of the Court serve a copy of this Report-Recommendation and Order, by regular mail, upon parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. *Roldan v.*

*Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989); 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e).

N.D.N.Y.,1998.
Waldo v. Goord
Not Reported in F.Supp.2d, 1998 WL 713809 (N.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.



Not Reported in F.Supp.2d, 2012 WL 6055019 (E.D.N.Y.)

**(Cite as: 2012 WL 6055019 (E.D.N.Y.))**

**C**

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
James HANKERSON, Plaintiff,
v.
NASSAU COUNTY CORRECTIONAL
FACILITY, Defendant.

No. 12–CV–5282(SJF)(WDW).
Dec. 4, 2012.

James Hankerson, East Meadow, NY, pro se.

***ORDER***

FEUERSTEIN, District Judge.

I. Introduction

**\*1** On October 16, 2012, incarcerated *pro se* plaintiff James Hankerson ("plaintiff") filed a complaint pursuant to 42 U.S.C. § 1983 ("section 1983"). [Docket Entry No. 1] ("Compl."). Accompanying the complaint is an application to proceed *in forma pauperis.* Upon review of plaintiff's declaration in support of his application to proceed *in forma pauperis,* the Court finds that his financial position qualifies him to commence this action without prepayment of the filing fee. *See* 28 U.S.C. § 1915(a)(1). However, for the reasons discussed herein, plaintiff's complaint is *sua sponte* dismissed without prejudice pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(i)-(ii), 1915A(b)(1).

II. The Complaint

Plaintiff's brief, handwritten complaint, submitted on the Court's section 1983 complaint form, alleges that, on September 10, 2012, he was served "spoiled chicken salad" for lunch while he was incarcerated at the Nassau County Correctional Center. Compl. at ¶ IV.[FN1] Plaintiff claims that he alerted an officer who agreed that the food was spoiled and returned the food cart to the kitchen. *Id.* Plaintiff claims that he was not served anything else until dinner. *Id.* Although plaintiff left blank the

section of the complaint form that calls for a description of claimed injuries, he seeks to recover $250,000 for the violation "of [his] civil right & emotional distress." *Id.* at ¶¶ IV.A., V.

> FN1. The Court notes that plaintiff's complaint is nearly identical to a complaint brought by another inmate, Raymond Hyman, and assigned docket number 12–CV–5099 (SJF) (AKT).

III. Discussion

A. *In Forma Pauperis* Application

Upon review of plaintiff's declaration in support of his application to proceed *in forma pauperis,* the Court finds that plaintiffs financial status qualifies him to commence this action without prepayment of the filing fees. *See* 28 U.S.C. § 1915(a) (1). Therefore, plaintiff's application to proceed *in forma pauperis* is granted.

B. The Prison Litigation Reform Act

The Prison Litigation Reform Act requires a district court to dismiss an *in forma pauperis* complaint if the action is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) (i-iii), 1915A(a)-(b); *Abbas v. Dixon,* 480 F.3d 636, 639 (2d Cir.2007). The Court is required to dismiss the action as soon as it makes such a determination. 28 U.S.C. § 1915A(a).

It is axiomatic that the Court is required to read a *pro se* plaintiff's complaint liberally, *see Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), and to construe it " 'to raise the strongest arguments' " suggested. *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir.2010) (quoting *Harris v. City of N.Y.,* 607 F.3d 18, 24 (2d Cir.2010)). Moreover, the Court must assume the truth of "all well-pleaded, nonconclusory factual

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

allegations" in the complaint. *Kiobel v. Royal Dutch Petroleum Co.,* 621 F.3d 111, 124 (2d Cir.2010).

A complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Id.* (quoting *Twombly,* 550 U.S. at 555).

C. Section 1983 Standard
**\*2** Section 1983 provides as follows:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

To state a cognizable section 1983 claim, a plaintiff must allege that the challenged conduct was "committed by a person acting under color of state law" and that the conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell,* 592 F.3d 121, 127 (2d Cir.2010) (internal quotation marks omitted). Section 1983 does not create any independent substantive rights but rather is a vehicle to "redress ... the deprivation of [federal] rights established elsewhere." *Thomas v. Roach,* 165 F.3d 137, 142 (2d Cir.1999).

In addition, in order to state a claim for relief under section 1983, the plaintiff must allege the

personal involvement of a defendant in the purported constitutional deprivation. *Farid v. Ellen,* 593 F.3d 233, 249 (2d Cir.2010). Personal involvement may be established by evidence of direct participation by a supervisor in the challenged conduct, or by evidence of a supervisory official's "(1) failure to take corrective action after learning of a subordinate's unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates." *Hayut v. State Univ. of N.Y.,* 352 F.3d 733, 753 (2d Cir.2003). "An individual cannot be held liable for damages under Section 1983 'merely because he held a high position of authority'...." *Back v. Hastings on Hudson Union Free Sch. Dist.,* 365 F.3d 107, 127 (2d Cir.2004) (quoting *Black v. Coughlin,* 76 F.3d 72, 74 (2d Cir.1996)). A complaint based upon a violation under section 1983 that does not allege the personal involvement of a defendant fails as a matter of law. *See Johnson v. Barney,* 360 F. App'x 199 (2d Cir.2010) (summary order).

D. Entities Immune From Suit
"[U]nder New York law, departments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot sue or be sued." *Davis v. Lynbrook Police Dep't,* 224 F.Supp.2d 463, 477 (E.D.N.Y.2002); *see also, e.g., Lukes v. Nassau Cnty. Jail,* No. 12–CV–1139(SJF)(AKT), 2012 WL 1965663, at \*2 (E.D.N.Y. May 29, 2012) (dismissing claims against the Nassau County Jail because it is an "administrative arm of Nassau County, without a legal identity separate and apart from the County"); *Melendez v. Nassau Cnty.,* No. 10–CV–2516 (SJF)(WDW), 2010 WL 3748743, at \*5 (E.D.N.Y. Sept. 17, 2010) (dismissing claims against Nassau County Sheriff's Department because it lacks the capacity to be sued). Accordingly, plaintiff's claims against the Nassau County Correctional Facility are dismissed with

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

prejudice. However, given plaintiff's *pro se* status, the Court will construe his claims to be asserted against Nassau County.

E. Claims Against Nassau County

**\*3** It is well-established that a municipality or municipal entity, such as Nassau County, cannot be held liable under section 1983 on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of City of N.Y.,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To prevail on a section 1983 claim against a municipality, a plaintiff must "prove that action pursuant to official municipal policy caused the alleged constitutional injury." *Cash v. Cnty. of Erie,* 654 F.3d 324, 333 (2d Cir.2011), *cert. denied,* —— U.S. ——, 132 S.Ct. 1741, 182 L.Ed.2d 528 (2012) (internal quotation marks omitted). "A municipal policy may be pronounced or tacit and reflected in either action or inaction." *Id.* at 334. "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson,* —— U.S. ——, ——, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). Municipal liability may also lie where "a policymaking official exhibits deliberate indifference to constitutional deprivations caused by subordinates, such that the official's inaction constitutes a deliberate choice." *Cash,* 654 F.3d at 334 (internal quotation marks omitted).

Even liberally construing the complaint, plaintiff's allegations are insufficient to state a section 1983 cause of action against Nassau County. *See, e.g., White v. St. Joseph's Hosp.,* 369 F. App'x 225, 226 (2d Cir.2010) (affirming *sua sponte* dismissal of section 1983 claim for the plaintiff's failure "to allege that any of the allegedly unconstitutional actions were taken pursuant to an official policy or custom, as is required to state a § 1983 claim against a municipality."). Plaintiff fails to allege: (1) the existence of a formal policy which caused the alleged injury; (2) actions taken or

decisions made by policymaking officials which caused the alleged injury; (3) a practice so persistent and widespread as to practically have the force of law which caused the alleged injury; or (4) deliberate indifference on behalf of policymakers to the rights of those who come in contact with their employees. Accordingly, plaintiff's claims, as construed to be against Nassau County, are dismissed.

IV. Leave to Amend

Although "[t]he court should freely give leave [to amend] when justice so requires," FED. R. CIV. P. 15(a)(2), "motions to amend should generally be denied in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the non-moving party." *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir.2008) (citing *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)); *see also Ruotolo v. Cit y of N.Y.,* 514 F.3d 184, 191 (2d Cir.2008). Any amendment to plaintiff's complaint would be futile because, *inter alia,* his allegation that he was denied a single meal while incarcerated at the Nassau County Correctional Center does not give rise to a constitutional deprivation.

**\*4** The "Eighth Amendment prohibition against cruel and unusual punishment [ ] require[s] that prisoners be served nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Robles v. Coughlin,* 725 F.2d 12, 15 (2d Cir.1983) (internal quotation marks omitted). Even affording the *pro se* complaint a liberal construction, plaintiff has alleged only that he was deprived of a single meal and that he suffered no injury as a result. Although a "substantial deprivation of food" may implicate a prisoner's Constitutional rights, the denial of food to an inmate on one occasion is not a *per se* violation of the Constitution. *Robles,* 725 F.2d at 15–16. Plaintiff's allegation that he missed a single meal falls far short of a "substantial deprivation of

© 2014 Thomson Reuters. No Claim to Orig. US Gov. Works.

food" and does not rise to the level of a constitutional violation. Since plaintiff cannot establish that he was "deprived ... of rights, privileges, or immunities secured by the Constitution or laws of the United States," *Corneio v. Bell,* 592 F.3d 121, 127 (2d Cir.2010), he cannot state a claim under section 1983 as a matter of law.

Accordingly, any amendment to the complaint would be futile and the complaint is therefore dismissed in its entirety without leave to amend. Plaintiff may pursue any valid claims he may have in state court. The Clerk of the Court is respectfully directed to close this case.

IV. Conclusion
For the foregoing reasons, plaintiff's application to proceed *in forma pauperis* is granted and his complaint is *sua sponte* dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(ii) and 1915A(b)(1). The Clerk of the Court is directed to close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

**SO ORDERED.**

E.D.N.Y.,2012.
Hankerson v. Nassau County Correctional Facility
Not Reported in F.Supp.2d, 2012 WL 6055019 (E.D.N.Y.)

END OF DOCUMENT